Alex George Hanafi, State Bar No. 200418
**Environmental Defense Fund**
123 Mission Street
San Francisco, CA 94105
ahanafi@edf.org
Phone: (202) 572-3260
Fax: (415) 293-6051
*Local Counsel for Proposed-Intervenor*
*Environmental Defense Fund*

***Additional counsel listed below and on the following page***

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA,
## OAKLAND DIVISION

|  |  |
|---|---|
| STATE OF CALIFORNIA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,<br><br>Defendants. | ) Case No: 4:18-cv-03237-HSG<br>)<br>) **PROPOSED-INTERVENOR**<br>) **ENVIRONMENTAL DEFENSE FUND'S**<br>) **MOTION TO INTERVENE;**<br>) **MEMORANDUM IN SUPPORT**<br>) **THEREOF**<br>)<br>) [Filed Concurrently with Declaration of John<br>) Stith, In Support Thereof; Declaration of<br>) Denise Fort, In Support Thereof; Declaration<br>) of Trisha Sheehan, In Support Thereof;<br>) Appendix; [PROPOSED] Complaint;<br>) [PROPOSED] Order]<br>)<br>)  Date: October 25, 2018<br>)  Time: 2:00pm<br>)  Courtroom: 2, 4th Floor, 1301 Clay Street,<br>)  Oakland, CA |

Susannah L. Weaver– *Pro Hac Vice Pending*
**Donahue, Goldberg & Weaver, LLP**
1111 14th Street, NW, Suite 510A
Washington, DC 20005
Phone: (202) 569-3818 (Ms. Weaver)
susannah@donahuegoldberg.com

Peter Zalzal – *Pro Hac Vice Pending*
Rachel Fullmer – *Pro Hac Vice Pending*
**Environmental Defense Fund**
2060 Broadway, Suite 300
Boulder, CO 80302
Phone: (303) 447-7214 (Mr. Zalzal)
Phone: (303) 447-7208 (Ms. Fullmer)
pzalzal@edf.org
rfullmer@edf.org

Tomás Carbonell– *Pro Hac Vice Pending*
**Environmental Defense Fund**
1875 Connecticut Avenue, N.W., Suite 600
Washington, DC 20009
Phone: (202) 572-3610 (Mr. Carbonell)
tcarbonell@edf.org

CASE NO. 4:18-CV-03237-HSG
PROPOSED-INTERVENOR ENVIRONMENTAL DEFENSE FUND'S MOTION TO INTERVENE; MEMORANDUM
IN SUPPORT THEREOF

## NOTICE OF MOTION AND MOTION TO INTERVENE

**TO THE COURT, AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on October 25, 2018 at 2:00p.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Haywood S. Gilliam, Jr., Courtroom 2, 4th Floor, 1301 Clay Street, Oakland, California, Environmental Defense Fund will and hereby does move this Court for an Order granting the Proposed-Intervenor's Motion to Intervene in the above-titled action.

The Motion to Intervene is made pursuant to Federal Rule of Civil Procedure 24, on the ground that the Proposed-Intervenor's motion is timely, the Proposed-Intervenor has an interest in this action that will not be adequately represented by the current Plaintiffs in this action the State of California, by and through the Attorney General and the California Air Resources Board; the State of Illinois; the State of Maryland; the State of New Mexico; the State of Oregon; the Commonwealth of Pennsylvania; the State of Rhode Island; and the State of Vermont ("Plaintiffs"), and that this interest is sufficient to warrant intervention as a matter of right under Rule 24(a), or, alternatively, permissive intervention under Rule 24(b).

The Motion to Intervene is based on this Notice; the following Memorandum of Points and Authorities; the Declaration of John Stith; the Declaration of Denise Fort; the Declaration of Trisha Sheehan; the Appendix; the [Proposed] Complaint; and the [Proposed] Order filed concurrently herewith; and all pleadings and papers filed in this action.

Counsel for Plaintiffs have represented that they do not oppose Proposed-Intervenor's motion. Counsel for the Defendant Environmental Protection Agency, has represented that it reserves the right to take a position after review of our Motion and Memorandum of Points and Authorities.

1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

**STATEMENT OF ISSUES TO BE DECIDED**……………………………………….…...1

**STATEMENT OF RELEVANT FACTS**……………………………………………....1

**ARGUMENT**………………………………………………………………….......4

    **I.**       **LEGAL STANDARD**………………………………………………….4

    **II.**      **EDF IS ENTITLED TO INTERVENE AS OF RIGHT**……………………….…..5

        **A. EDF's motion to intervene is timely**……………………………………...…5

        **B. EDF has a "significantly protectable" interest in the subject matter of this litigation**………………………………………………………6

        **C. Disposing of this matter could impair or impede EDF's ability to protect its interest and its members' interests**……………..…..9

        **D. EDF's interests are not adequately represented by the States**…………………10

    **III.**     **ALTERNATIVELY, EDF SHOULD BE GRANTED PERMISSIVE INTERVENTION**……………………………………………………...12

**CONCLUSION**…………………………………………………………13

i

CASE NO. 4:18-CV-03237-HSG
PROPOSED-INTERVENOR ENVIRONMENTAL DEFENSE FUND'S MOTION TO INTERVENE; MEMORANDUM
IN SUPPORT THEREOF

## TABLE OF AUTHORITIES

**CASES:**

*Citizens for Balanced Use v. Mont. Wilderness Ass'n,*
 647 F.3d 893 (9th Cir. 2011) ....................................................... 6

*City of Emeryville v. Robinson,*
 621 F.3d 1251 (9th Cir. 2010) ...................................................... 6

*Environmental Defense Fund v. Perciasepe,*
No. 11-cv-04492-KBF (S.D.N.Y.)………………………………………..2, 11

*Freedom from Religion Found., Inc. v. Geithner,*
 644 F.3d 836 (9th Cir. 2011) ....................................................... 12

*Hill v. Volkswagen,*
 894 F.3d 1030 (9th Cir. 2018) ...................................................... 9

*Idaho Farm Bureau Fed'n v. Babbitt,*
 58 F.3d 1392 (9th Cir. 1995) ........................................................ 6

*Kootenai Tribe of Idaho v. Veneman,*
 313 F.3d 1094 (9th Cir. 2002) ...................................................... 12

*Nw. Forest Res. Council v. Glickman,*
 82 F.3d 825 (9th Cir. 1996) ........................................................ 5,6

*PEST Comm. v. Miller,*
 648 F. Supp. 2d 1202 (D. Nev. 2009) ............................................. 6

*Sagebrush Rebellion, Inc. v. Watt,*
 713 F.2d 525 (9th Cir. 1983) ....................................................... 10

*Sw. Ctr. for Biological Diversity v. Berg,*
 268 F.3d 810 (9th Cir. 2001) ....................................................... 9,10

*Town of Chester v. Laroe Estates, Inc.,*
 137 S. Ct. 1645 (2017) .............................................................. 9

*Washington State Bldg. & Const. Trades Council, AFL-CIO v. Spellman,*
 684 F.2d 627 (9th Cir. 1982) ........................................................ 5

*Wilderness Soc'v v. U.S. Forest Serv.,*
 630 F.3d 1173 (9th Cir. 2011) ...................................................... 5

**FEDERAL RULES:**

Fed. R. Civ. P. 24(a)(2)............................................................... 5
Fed. R. Civ. P. 24(b)(2)............................................................... 5

**STATUTES:**

ii

CASE NO. 4:18-CV-03237-HSG
PROPOSED-INTERVENOR ENVIRONMENTAL DEFENSE FUND'S MOTION TO INTERVENE; MEMORANDUM
IN SUPPORT THEREOF

42 U.S.C. § 7411(d) ................................................................................................. 1, 2
42 U.S.C. § 7604(a)(2) .......................................................................................... 1, 13

**REGULATIONS:**

40 C.F.R. § 60.27(b) .................................................................................................. 3
40 C.F.R. § 60.27(d) .................................................................................................. 3
40 C.F.R. § 60.30f(b) ................................................................................................ 3

*Emission Guidelines and Compliance Times for Municipal Solid Waste Landfills,*
    81 Fed. Reg. 59,276 (Aug. 29, 2016) ................................................................... 1

*Oil and Natural Gas Sector: Emission Standards for New, Reconstructed, and Modified Sources,*
    81 Fed. Reg. 35,823 (June 3, 2016). .................................................................... 7

*National Ambient Air Quality Standards for Ozone,*
    80 Fed. Reg. 65,292 (Oct. 26, 2015) .................................................................... 7

*Standards of Performance for New or Modified MSW Landfills,*
    81 Fed. Reg. 59,332 (Aug. 29, 2016) ................................................................... 2

*Standards of Performance for New Stationary Sources and Guidelines for Control of Existing Sources: Municipal Solid Waste Landfills,*
    61 Fed. Reg. 9,905 (Mar. 12, 1996) (codified at 40 C.F.R. Parts 51, 52, and 60) ........................... 2

**OTHER DOCUMENTS:**

Brian K. Lamb et al., Direct and Indirect Measurements and Modeling of Methane Emissions in
    Indianapolis, Indiana 50 ENVTL. SCI. & TECH. 8910 (2016) ............................................ 1

Comments of Peter Zalzal and Tomás Carbonell on "Standards of Performance for Municipal Solid
    Waste Landfills and Emission Guidelines and Compliance Times for Municipal Solid Waste
    Landfills: Proposed Rules" Document ID No. EPA-HQ-OAR-2014-0451-0038 ........................ 11

Comments of Peter Zalzal on "Standards of Performance for Municipal Solid Waste Landfills and
    Emission Guidelines and Compliance Times for Municipal Solid Waste Landfills: Proposed
    Rules" Document ID No. EPA-HQ-OAR-2014-0451-0181 ...................................................... 11

Environmental Defense Fund, Recommendations and Considerations for EPA's Forthcoming
    Revisions to Section 111 Standards for MSW Landfills, Docket ID No. EPA-HQ-OAR-2014-
    0451-0008 (Jan. 2, 2013) ................................................................................................. 11

Final Updates to Performance Standards for New, Modified And Reconstructed Landfills, And
    Updates To Emission Guidelines For Existing Landfills: Fact Sheet, *available at*
    https://www.epa.gov/sites/production/files/2016-09/documents/landfills-final-nsps-eg-
    factsheet.pdf. ...................................................................................................................... 3

U.S. Envtl. Prot. Agency, *EJ Screening Report for Municipal Solid Waste Landfills*
    (Apr. 22, 2015) .................................................................................................................. 8

iii

Press Release, EDF, EDF Announces Satellite Mission to Locate and Measure
Methane Emissions (Apr. 11, 2018), https://www.edf.org/media/edf-announces-satellite-mission-locate-and-measure-methane-emissions.............................................................................................................................12

CASE NO. 4:18-CV-03237-HSG
PROPOSED-INTERVENOR ENVIRONMENTAL DEFENSE FUND'S MOTION TO INTERVENE; MEMORANDUM
IN SUPPORT THEREOF

## MEMORANDUM OF POINTS AND AUTHORITIES

### STATEMENT OF ISSUES TO BE DECIDED

Whether Proposed-Intervenor Environmental Defense Fund ("EDF") meets the requirements of Federal Rule of Civil Procedure 24 to intervene in this lawsuit.

### STATEMENT OF RELEVANT FACTS

This case seeks to compel Andrew R. Wheeler, in his official capacity as Acting Administrator of the United States Environmental Protection Agency, and the United States Environmental Protection Agency (together, "EPA"), to fulfill the nondiscretionary duty to protect the public from harmful air emissions from existing municipal solid waste ("MSW") landfills as required by section 111(d), 42 U.S.C. § 7411(d), of the Clean Air Act and the Act's implementing regulations contained at 40 C.F.R. Part 60. The Act's citizen suit provision, section 304(a)(2), authorizes any person to commence a civil action when the Administrator has failed to "perform any act or duty under this chapter which is not discretionary." 42 U.S.C. § 7604(a)(2).

Landfills exacerbate local, regional, and global air pollution problems due to their release of significant amounts of landfill gas—a mixture produced by the decomposition of waste that includes methane, carbon dioxide, hazardous air pollutants, and volatile organic compounds. *Emission Guidelines and Compliance Times for Municipal Solid Waste Landfills*, 81 Fed. Reg. 59,276, 59,276 (Aug. 29, 2016) (codified at 40 C.F.R. Part 60, subpart Cf) ("Landfill Emissions Guidelines"). Landfills are the nation's third largest source of methane emissions, accounting for almost twenty percent of domestic methane emissions. *Id.* at 59,281.[1] Landfill gas also includes hazardous air

---

[1] Several recent studies evaluating emissions from individual landfills have found higher methane emissions than models and estimates would otherwise predict. For instance, tower and aircraft-based methane measurements for a large landfill in Indianapolis found methane emissions 2.3 times greater than reported to EPA's Greenhouse Gas Reporting Program. Brian K. Lamb et al., Direct and Indirect Measurements and Modeling of Methane Emissions in Indianapolis, Indiana 50 ENVTL.

pollutants ("HAPs"), known to cause cancer and other severe health impacts, and volatile organic compounds ("VOCs"), which react with sunlight to form ground-level ozone pollution, commonly known as smog.

In 1996, EPA issued new source performance standards under section 111(b) of the Act to reduce this pollution from new or modified landfills and emissions guidelines under section 111(d) to curb emissions from existing MSW landfills. *Standards of Performance for New Stationary Sources and Guidelines for Control of Existing Sources: Municipal Solid Waste Landfills*, 61 Fed. Reg. 9,905 (Mar. 12, 1996) (codified at 40 C.F.R. Parts 51, 52, and 60) ("1996 Rule"). Since EPA adopted those standards, technologies and best practices to reduce landfill emissions advanced, and in recognition of those advances, and to satisfy the agency's statutory obligations to review and revise its standards,[2] EPA promulgated revised emission guidelines on August 29, 2016. Landfill Emissions Guidelines, 81 Fed. Reg. at 59,276.[3] The rule became effective on October 28, 2016, and strengthens certain aspects of the 1996 Rule, including by lowering the emissions thresholds that landfills must apply to determine when to install or remove gas collection and control systems, 81 Fed. Reg. at 59,287, and clarifying and improving landfill emissions monitoring requirements, 81

SCI. & TECH. 8910 (2016).

[2] The Clean Air Act provides that "Administrator shall, at least every 8 years, review and, if appropriate, revise" standards established under section 111. 42 U.S.C. § 7411(b)(1)(B). EPA's long-overdue updates to the 1996 Rule came after twenty years had elapsed and in response to lawsuit seeking to compel the agency to update its standards. *Environmental Defense Fund v. Perciasepe*, No. 11-cv-04492-KBF (S.D.N.Y.).

[3] At the same time, EPA also finalized revised Standards of Performance for New or Modified MSW Landfills. 81 Fed. Reg. 59,332 (Aug. 29, 2016) ("NSPS"). The NSPS apply to landfills for which construction, reconstruction, or modification commenced after July 17, 2014; the Landfill Emissions Guidelines apply to landfills that accepted waste after November 8, 1987, and that commenced construction, reconstruction, or modification on or before July 17, 2014 (the date of publication of proposed revisions to the landfills NSPS, 40 CFR part 60, subpart XXX). The NSPS are not at issue in this case.

2

1  Fed. Reg. at 59,288. EPA projected that the pollution reductions achieved through implementation of

2  the Landfill Emissions Guidelines, together with the Landfills New Source Standards, will reduce

3  methane emissions by an estimated 334,000 metric tons and non-methane organic compounds by

4  more than 2,000 metric tons in 2025.[4]

5        EPA's implementing regulations for categories of sources under Section 111(d) provide the

6  specific timeframes by which states must submit plans implementing emission guidelines and by

7  which EPA must approve or disapprove those plans and promulgate any needed federal plans. 40

8  C.F.R. §§ 60.23, 60.27. As applied to the Landfill Emissions Guidelines, these regulations required

9  states to submit implementation plans by May 30, 2017, 40 C.F.R. § 60.30f(b), and EPA to approve

10  or disapprove these plan by September 30, 2017 (within four months of state plan submission), 40

11  C.F.R. § 60.27(b). The regulations provide EPA with up to six months from state plan submission, or

12  until November 30, 2017, to promulgate a federal plan for states that failed to timely submit an

13  approvable plan. 40 C.F.R. § 60.27(d).

14        EPA has conceded that is has failed to meet these deadlines. Proposed Complaint ¶ 31. EPA

15  admitted to the D.C. Circuit in January 2018 that "[t]hese deadlines have come and gone," and "EPA

16  has neither approved nor disapproved the state plans that were timely submitted, nor promulgated

17  any federal plans." *Id.* Likewise, in filings in the D.C. Circuit in January 2018, EPA noted that "any

18  remedy for EPA's failure to act in this regard would lie in district court," citing 42 U.S.C.

19  § 7604(a)(2). *Id.* On October 31, 2017, Waste Dive (an online news outlet for the waste industry)

20  reported that, through a written statement, an EPA spokesperson said that EPA "do[es] not plan to

---

[4] EPA, Final Updates to Performance Standards for New, Modified And Reconstructed Landfills,
And Updates To Emission Guidelines For Existing Landfills: Fact Sheet, *available at*
https://www.epa.gov/sites/production/files/2016-09/documents/landfills-final-nsps-eg-factsheet.pdf.

prioritize the review of . . . state plans . . . nor are we working to issue a Federal Plan for states that fail to submit a state plan," and that "any states that fail to submit plans for Emission Guidelines under Clean Air Act section 111(d) 'are not subject to sanctions,' and should not be concerned regarding any sanctions." Proposed Complaint at ¶ 32.

On May 31, 2018, the State of California, by and through the Attorney General and the California Air Resources Board; the State of Illinois; the State of Maryland; the State of New Mexico; the State of Oregon; the Commonwealth of Pennsylvania; the State of Rhode Island, and the State of Vermont (collectively, "Plaintiffs") filed this suit to compel EPA to fulfill its nondiscretionary duty to approve state plans and promulgate federal plans for states that have failed to timely submit plans or that have submitted plans that do not meet minimum requirements.

On June 19, 2018, Proposed Intervenor Environmental Defense Fund ("EDF") transmitted a notice of intent to sue EPA for the agency's failure to take the above-described, nondiscretionary actions implementing the Landfill Emissions Guidelines, and EDF now seeks to intervene in this suit to enforce EPA's mandatory duties. EPA's failure to fulfill these nondiscretionary duties will lead to increased methane, VOC, and HAP pollution, significantly impairing the interests of EDF's members nationwide and particularly threatening EDF's members who live, work, and recreate in close proximity to the over 1,000 existing landfills to which the strengthened Landfill Emission Guidelines apply.

## ARGUMENT

### I.    LEGAL STANDARD

Federal Rule of Civil Procedure 24(a) directs the district court to grant intervention if "(1) the motion [is] timely; (2) the applicant . . . claim[s] a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant [is] so situated that the

4

disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest [is] inadequately represented by the parties to the action." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (quoting *Sierra Club v. U.S. Envtl. Prot. Agency*, 995 F.2d 1478, 1481 (9th Cir. 1993)). *See also* Fed. R. Civ. P. 24(a)(2). Courts have underscored that Rule 24 traditionally "receive[s] a liberal construction in favor of applicants for intervention." *Washington State Bldg. & Const. Trades Council, AFL-CIO v. Spellman*, 684 F.2d 627, 630 (9th Cir. 1982). EDF meets all four prongs of the test for intervention as a matter of right and is entitled to intervene in this action. Alternatively, EDF readily meets Rule 24(b)'s standard for granting permissive intervention, which authorizes intervention for anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2).

## II.   EDF IS ENTITLED TO INTERVENE AS OF RIGHT

EDF satisfies each of the four Rule 24(a) factor and so should be permitted to intervene as a matter of right.

### A.   EDF's motion to intervene is timely.

Three criteria typically guide a district court's review of whether a motion to intervene under Rule 24(a) is timely: "(1) the stage of the proceedings; (2) whether the parties would be prejudiced; and (3) the reason for any delay in moving to intervene." *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 836-37 (9th Cir. 1996) (citation omitted). Here, EDF falls well within the established criteria for timeliness. The case is still in its early stages, neither party would be prejudiced by EDF's involvement in the proceedings, and EDF has moved to intervene as soon as practicable after 60 days had elapsed since EDF transmitted its notice of intent to sue EPA.

The States filed their complaint in this action on May 31, 2018. Soon thereafter, on June 19, 2018, EDF filed a notice of intent to sue EPA as required by Clean Air Act § 304(a), 42 U.S.C.

§ 7604(a), for the same failure, which matured on August 18, 2018. Since this time, EDF has diligently prepared its motion to intervene and associated filings and is now seeking intervention less than four months after the primary complaint was filed and less than four weeks after the 60-day notice of intent matured into a proper claim. EDF's motion comes at a "very early stage, before any hearings or rulings on substantive matters," *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995), and courts have routinely granted parties leave to intervene after a defendant has filed an answer to the complaint, which has not yet occurred here. *See, e.g., Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011); *PEST Comm. v. Miller*, 648 F. Supp. 2d 1202, 1212 (D. Nev. 2009).

EDF's intervention at this early stage would not adversely impact the current parties and promotes the interests of efficiency and judicial economy since EDF is otherwise entitled to file its own complaint now that it has satisfied the Clean Air Act's 60-day notice requirements. Instead, EDF intends to file a response to EPA's pending motion to dismiss, and will adhere to the current briefing and hearing schedule to ensure that its participation will not delay the proceedings or prejudice existing parties.

### B. EDF has a "significantly protectable" interest in the subject matter of this litigation.

While no bright line governs when an interest in a claim is "significantly protectable," to demonstrate this interest, a proposed intervenor must establish that "(1) the interest [asserted] is protectable under some law, and (2) there is a relationship between the legally protected interest and the claims at issue." *Glickman*, 82 F.3d at 837 (citation omitted). A proposed intervenor "has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation." *City of Emeryville v. Robinson,* 621 F.3d 1251, 1259 (9th Cir. 2010)

1    (internal quotations omitted).

2         EDF has multiple strong interests that will be impaired by EPA's failure to fulfill its

3    mandatory obligation to review and approve the state plans and promulgate federal plans to

4    implement the Landfill Emissions Guidelines as required by the Clean Air Act and its implementing

5    regulations.

6         EDF has interest in the subject matter of this litigation because the implementation of the

7    updated Landfill Emissions Guidelines will benefit its members (and failure to implement them

8    harms EDF's members). Landfills emit large quantities of VOCs and HAPs. 81 Fed. Reg. at 59,281-

9    82. Among other harmful effects, VOCs form ozone, exposure to which can lead to adverse

10   respiratory and cardiovascular effects. *Id.* at 59,281. People with lung diseases such as asthma and

11   chronic obstructive pulmonary disorder are particularly at risk, as are children and older adults.

12   *National Ambient Air Quality Standards for Ozone*, 80 Fed. Reg. 65,292, 65,322 (Oct. 26, 2015).

13   Long-term exposure to ozone can also lead to the development of asthma. 80 Fed. Reg. at 65,307.

14   HAPs, such as benzene, "can lead to a variety of health concerns such as cancer and noncancer

15   illnesses (e.g., respiratory, neurological)." *Oil and Natural Gas Sector: Emission Standards for New,*

16   *Reconstructed, and Modified Sources*, 81 Fed. Reg. 35,823, 35,837 (June 3, 2016). Landfills are also

17   the third-largest source of methane emissions domestically. Methane is a potent greenhouse gas that

18   is over 80 times more powerful than carbon dioxide over a 20-year period, and up to 36 times more

19   powerful over a 100-year period. Controlling methane emissions from landfills helps forestall the

20   serious detrimental impacts of climate change.

21        EDF's members suffer harm caused by these dangerous pollutants—and EPA's failure to

22   implement the Landfill Emissions Guidelines that would limit their emission—every day. EDF has

23   over 57,000 members living in counties that contain a landfill subject to the emissions guidelines

7

1   and that are also in nonattainment with EPA's 2015 health-based standard for ground-level ozone.

2   Decl. of John Stith ¶ 12. One of these EDF members, Trisha Sheehan, lives in an ozone

3   nonattainment area that contains one or more landfills subject to the Landfill Emissions Guidelines.

4   Decl. of Trisha Sheehan ¶¶ 6-7. Ms. Sheehan is the mother of three young boys and while her

5   children "enjoy riding their bikes, playing soccer, and being outside or in [their] backyard," Ms.

6   Sheehan must often limit her children's outdoor activities when ozone pollution levels are "unsafe to

7   breath" so that her children "are not exposed to this harmful pollution." Sheehan Decl. ¶ 9.

8          Further, EDF has at least 47 members living within a quarter-mile of a regulated landfill,

9   approximately 1,413 members living within one mile of a regulated landfill, and approximately

10  21,082 members living within three miles of a regulated landfill. Stith Decl. ¶ 12. These members

11  living in close proximity to landfills face increased risks from HAPs and other harmful air pollutants

12  contained in landfill emissions. In developing the Landfill Emissions Guidelines, EPA conducted a

13  proximity analysis of communities living within a 3-mile radius of affected landfills. U.S. Envtl.

14  Prot. Agency, *EJ Screening Report for Municipal Solid Waste Landfills* (Apr. 22, 2015), *available at*

15  *https://www.regulations.gov/contentStreamer?documentId=EPA-HQ-OAR-2014-0451-*

16  *0102&contentType=pdf.* EPA acknowledges, however, that "the impacts of landfill emission are not

17  limited to a 3-mile radius and both potential increases and decreases in landfill emission can be felt

18  many miles away." 81 Fed. Reg. at 59,312.

19         Other EDF members are particularly harmed by methane emissions from landfills. EDF

20  member Denise Fort lives in New Mexico and is threatened by forest fires that have become

21  increasingly frequent and severe due to climate change. Decl. of Denise Fort ¶ 11. This threat affects

22  her personal enjoyment of her property, as well as the property's value. *Id.* Ms. Fort is concerned

23  that climate change will also interfere with her recreational opportunities: reduced snowfall will limit

1    her ability to participate in winter sports and will result in less runoff and lower water levels in the

2    summer, interfering with her recreation on the river. *Id*. ¶¶ 12-13.

3          Similarly, EDF member Trisha Sheehan faces an uncertain future because of the impacts

4    climate change has upon her family's farm. Sheehan Decl. ¶ 11. Ms. Sheehan has experienced the

5    impacts of climate change on her family's 5,000-acre farm firsthand as the changing climate prompts

6    a "decrease in crop yield and an increase in pesticide and fungicide use." Sheehan Decl. ¶ 11. She

7    has further observed that "[w]armer temperatures and higher carbon dioxide concentration also

8    contribute to an increase in crop disease, resulting in higher concentrations and more frequent

9    spraying of toxic chemical pesticides." Sheehan Decl. ¶ 11. She fears that the "impacts of climate

10   change will negatively affect [her] family business and decrease the chances that [her] children can

11   continue operating our farm in the future." Sheehan Decl. ¶ 12.

12         These harms[5] to EDF's members will continue so long as EPA fails to implement the state

13   planning deadlines under the Landfill Emissions Guidelines.

### C.  Disposing of this matter could impair or impede EDF's ability to protect its interest and its members' interests.

16         EDF's interests and its members' interests may be impaired as a result of this litigation. If a

17   party would be "substantially affected in a practical sense by the determination made in an action, he

---

[5] An independent demonstration of EDF's Article III standing is not required here, as EDF is not seeking additional relief beyond what Plaintiffs request. *See Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1651 (2017) ("for all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right. Thus, at the least, an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests."); *Hill v. Volkswagen*, 894 F.3d 1030, 1044 (9th Cir. 2018). However, as demonstrated *supra* p. 7-12, EDF satisfies the test for Article III standing under the three-part test for associational standing. *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, n.3 (9th Cir. 2001). ("An association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.").

1    should, as a general rule, be entitled to intervene." *Sw. Ctr. for Biological Diversity v. Berg*, 268

2    F.3d 810, 822 (9th Cir. 2001). In addition to the risk of impairment of EDF's members' health and

3    welfare, discussed *supra* p. 7-9, because this litigation concerns questions of law under the Clean Air

4    Act, an adverse judgment may impair EDF's ability to fully pursue its own independent claims

5    resulting from its June 19 notice of intent in future litigation. Further, a settlement agreement or

6    consent decree entered into between the Plaintiffs and EPA could significantly alter and impair

7    EDF's ability to bring future claims concerning EPA's failure to fulfill its nondiscretionary duty to

8    act on state planning requirements for landfills.

9    **D.  EDF's interests are not adequately represented by the States.**

10

11        EDF satisfies the fourth and final Rule 24(a) requirement because its interests are not

12   adequately represented by the current Plaintiffs. In assessing the adequacy of representation by an

13   existing party, courts consider several factors, including whether the current parties will

14   "undoubtedly make all of the intervenor's arguments," whether the current parties are "capable of

15   and willing to make such arguments," and whether the intervenor "offers a necessary element to the

16   proceedings that would be neglected." *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir.

17   1983) (citations omitted); *see also Sw. Ctr. for Biological Diversity*, 268 F.3d at 822. Additionally,

18   courts have looked at whether the proposed intervenor provides "expertise apart from that" which is

19   represented by the current parties to the case. *Sagebrush Rebellion, Inc.*, 713 F.2d at 528.

20        Though EDF's desire to ensure EPA takes nondiscretionary actions to approve state plans

21   and promulgate federal plans to implement the Landfill Emissions Guidelines aligns with the

22   Plaintiffs' interest in pursuing this litigation, EDF's long history involvement with issues

23   surrounding MSW landfills, its technical expertise, and its environmental advocacy work on behalf

24   of its members are interests not adequately represented by the States in this case. In addition, while

1   the Plaintiff states are charged with representing the public interest of their residents broadly, EDF

2   may seek to protect more particularized interests regarding its members' health and interests in the

3   advancement of environmental protection.

4          EDF's subject matter expertise in both legal and technical aspects of the regulations, as well

5   as EDF's long history of involvement in representing its members in Clean Air Act matters more

6   generally, make it unlikely that the current parties could "undoubtedly" address the same arguments

7   and interests. For example, EDF engages in extensive scientific research and policy development to

8   better document the problem of methane emissions from landfills and advocate for policy solutions.

9   EDF has also engaged extensively in the rulemaking process with EPA to advocate for protective

10  MSW Landfill Emissions Guidelines. EDF's legal action to enforce EPA's duty to update the

11  landfill standards and guidelines resulted in the development and promulgation of the Landfill

12  Emissions Guidelines.[6] *See* Stith Decl. ¶ 9. EDF was a participant in the course of developing the

13  landfills rules, including participation in stakeholder meetings, researching and publishing a

14  Landfills White Paper in 2013 to provide detailed technical and policy commendations, and

15  submitting comments on the advanced notice of proposed rulemaking for the guidelines and

16  proposals for both rules in both 2014 and 2015."[7] *See, e.g.*, Stith Decl. ¶ 9. Last summer, EDF also

17  announced plans to develop and launch MethaneSAT, a new satellite that will identify and measure

---

[6] *Environmental Defense Fund v. Perciasepe*, No. 11-cv-04492-KBF (S.D.N.Y.).

[7] *See* Environmental Defense Fund, Recommendations and Considerations for EPA's Forthcoming Revisions to Section 111 Standards for MSW Landfills, Docket ID No. EPA-HQ-OAR-2014-0451-0008 (Jan. 2, 2013); Comments of Peter Zalzal on "Standards of Performance for Municipal Solid Waste Landfills and Emission Guidelines and Compliance Times for Municipal Solid Waste Landfills: Proposed Rules" Document ID No. EPA-HQ-OAR-2014-0451-0181; Comments of Peter Zalzal and Tomás Carbonell on "Standards of Performance for Municipal Solid Waste Landfills and Emission Guidelines and Compliance Times for Municipal Solid Waste Landfills: Proposed Rules" Document ID No. EPA-HQ-OAR-2014-0451-0038.

CASE NO. 4:18-CV-03237-HSG
PROPOSED-INTERVENOR ENVIRONMENTAL DEFENSE FUND'S MOTION TO INTERVENE; MEMORANDUM
IN SUPPORT THEREOF

anthropogenic methane emissions worldwide, a project that could eventually identify emissions from the landfills sector.[8]

EDF's technical expertise in environmental law and policy, and involvement in this precise regulatory area, along with its focus on protecting the health and welfare of its members throughout the United States, constitutes a significant addition "apart from" the states' interests in ensuring EPA fulfills its nondiscretionary duties on behalf of their residents and the public at large.

## III.   ALTERNATIVELY, EDF SHOULD BE GRANTED PERMISSIVE INTERVENTION

Alternatively, the Court should find that EDF has satisfied the requirements of permissive intervention. Rule 24(b) allows permissive intervention by anyone who "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). In the Ninth Circuit, permissive intervention is proper when: (1) the applicant's claim or defense shares a common question of law or fact with the main action; (2) the motion is timely; and (3) there is an independent ground for jurisdiction. *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011); *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1110-11 (9th Cir. 2002), *abrogated on other grounds by Wilderness Soc'y*, 630 F.3d at 1180. The Court must also determine whether intervention would unduly delay the main action or unfairly prejudice existing parties. Fed. R. Civ. P. 24(b)(3).

EDF satisfies the first requirement for permissive intervention because it intends to address the same question of law raised by the state Plaintiffs in their complaint: whether EPA failed to carry out its nondiscretionary duty to act on state planning requirements under the Clean Air Act and its

---

[8] Press Release, EDF, EDF Announces Satellite Mission to Locate and Measure Methane Emissions (Apr. 11, 2018), https://www.edf.org/media/edf-announces-satellite-mission-locate-and-measure-methane-emissions.

1   implementing regulations. *See* Complaint at ¶¶ 40-42. As discussed above, *supra* p. 12-13, EDF has

2   significant legal and technical expertise pertaining to the issues implicated in this case, expertise

3   gained from independent research and from years of engagement with EPA's development of

4   landfills standards. If permitted to intervene, EDF's expertise and its perspective as an affected party

5   will contribute to an effective and efficient resolution of the underlying legal issues.

6       EDF satisfies the second test for permissive intervention because, as discussed *supra* p. 5-6,

7   EDF's motion to intervene is timely.

8       EDF also satisfies the final element for permissive intervention because the court has an

9   independent ground for jurisdiction to address EDF's claims. EDF has filed a notice of intent to sue

10  EPA over the failure to perform nondiscretionary duties under the Clean Air Act and therefore EDF

11  has an independent claim to vindicate that right outside of the Plaintiffs' present case. The Court has

12  an independent basis of jurisdiction to entertain EDF's claims under the Clean Air Act's citizen suit

13  provision, section 304(a)(2), which authorizes any person to commence a civil action when the

14  Administrator has failed to "perform any act or duty under this chapter which is not discretionary."

15  42 U.S.C. § 7604(a)(2).

16      As discussed *supra* p. 6, EDF's intervention would not unfairly prejudice the existing parties

17  to this action.

18      EDF satisfies the requirements for permissive intervention, and if this Court does not grant

19  intervention as of right, permissive intervention is warranted.

20                                **CONCLUSION**

21      EDF meets each of the requirements under Rule 24(a) and therefore should be permitted to

22  intervene as of right. Alternatively, this Court should allow permissive intervention under Rule

23  24(b).

1
2

**DATED**: September 13, 2018

Peter Zalzal – *Pro Hac Vice Pending*
Rachel Fullmer – *Pro Hac Vice Pending*
**Environmental Defense Fund**
2060 Broadway, Suite 300
Boulder, CO 80302
Phone: (303) 447-7214 (Mr. Zalzal)
Phone: (303) 447-7208 (Ms. Fullmer)
pzalzal@edf.org
rfullmer@edf.org
*Counsel for Environmental Defense Fund*

Tomás Carbonell– *Pro Hac Vice Pending*
**Environmental Defense Fund**
1875 Connecticut Avenue, N.W. Suite 600
Washington, DC 20009
Phone: (202) 572-3610 (Mr. Carbonell)
tcarbonell@edf.org
*Counsel for Environmental Defense Fund*

Respectfully submitted,

*/s/ Alex George Hanafi*
Alex George Hanafi, State Bar No. 200418
**Environmental Defense Fund**
123 Mission Street
San Francisco, CA 94105
ahanafi@edf.org
Phone: (202) 572-3260 (Mr. Hanafi)
Fax: (415) 293-6051
*Local Counsel for Proposed-Intervenor
Environmental Defense Fund*

Susannah L. Weaver – *Pro Hac Vice Pending*
**Donahue, Goldberg & Weaver, LLP**
1111 14th Street, NW, Suite 510A
Washington, DC 20005
Phone: (202) 569-3818 (Ms. Weaver)
susannah@donahuegoldberg.com
*Counsel for Environmental Defense Fund*

CASE NO. 4:18-CV-03237-HSG
PROPOSED-INTERVENOR ENVIRONMENTAL DEFENSE FUND'S MOTION TO INTERVENE; MEMORANDUM
IN SUPPORT THEREOF