UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE OF CALIFORNIA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., <br><br> Defendants. | Case No. 18-cv-03237-HSG <br><br> **ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND MOTION TO STAY CASE** <br><br> Re: Dkt. Nos. 28, 70 |

Pending before the Court is a motion to dismiss Plaintiffs complaint,[1] *see* Dkt. No. 1. ("Compl"), filed by Defendants—U.S. Environmental Protection Agency and Andrew R. Wheeler, in his official capacity as Acting Administrator of the U.S. Environmental Protection Agency (collectively, "EPA"),[2] *see* Dkt. No. 28 ("MTD"). Briefing on this motion is complete. *See* Dkt. Nos. 48 ("MTD Opp."),[3] 65 ("MTD Reply"). The Court held a hearing on October 25, 2018. *See* Dkt. No. 69. Also pending before this Court is EPA's motion to stay proceedings through April 30, 2019, Dkt. No. 70 ("MTS"), briefing for which is also complete, *see* Dkt. Nos. 73 ("MTS

---

[1] Plaintiffs are eight states: the State of California, by and through the Attorney General and the California Air Resources Board; the State of Illinois; the State of Maryland; the State of New Mexico; the State of Oregon; the Commonwealth of Pennsylvania; the State of Rhode Island; and the State of Vermont. Dkt. No. 1 ¶¶ 1, 10–18. Plaintiffs now also include the Environmental Defense Fund ("EDF"), which the Court permitted to intervene on November 20, 2018. *See* Dkt. No. 78. EDF has represented to the Court that it only intends to proceed in this action under the existing complaint filed by the States. *See* Dkt. No. 78 at 7 n.3.

[2] Acting Administrator Wheeler is automatically substituted for former Administrator Scott Pruitt. *See* Fed. R. Civ. P. 25(d).

[3] EDF, which was a proposed-intervenor at the time, submitted an opposition to EPA's motion to dismiss. *See* Dkt. No. 47. Because EDF's opposition duplicates arguments raise in the States' opposition, the Court need not—and does not—separately discuss EDF's opposition here.

Opp."),[4] 76 ("MTS Reply").[5]

For the reasons set forth below, the Court **DENIES** both motions.

## I. BACKGROUND

The Clean Air Act ("CAA" or the "Act") "protect[s] and enhance[s] the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).[6] To that end, the Act directs the EPA Administrator to "publish . . . a list of categories of stationary sources" that "in [the Administrator's] judgment . . . cause[], or contribute[] significantly to, air pollution which may reasonably be anticipated to endanger public health or welfare." *Id.* § 7411(b)(1)(A). Once the agency includes a category of stationary sources in the list, the agency must "publish proposed regulations, establishing Federal standards of performance" for emission of pollutants from new or modified sources "within such category." *Id.* § 7411(b)(1)(B); *see also id.* § 7411(a)(2).

As relevant here, the Act also requires the regulation of "existing sources" that fall within the same category, provided that the emissions are not already covered by certain other CAA programs. *See id.* § 7411(d). Specifically, the CAA states that "[t]he Administrator shall prescribe regulations which shall establish a procedure similar to that provided by section 7410 of this title under which each State shall submit to the Administrator a plan [that] establishes standards of performance," and "provides for the implementation and enforcement of such standards of performance." *Id.* § 7411(d)(1). The Act further provides that the Administrator has authority to promulgate a federal implementation plan "in cases where [a] State fails to submit a satisfactory plan." *Id.* § 7411(d)(2); *see also id.* § 7410(c).

Consistent with the CAA's instruction, EPA promulgated regulations, which established deadlines for the implementation of emission guidelines. According to the regulations, once EPA

---

[4] EDF, which again was a proposed-intervenor at the time, submitted an opposition to EPA's motion to stay, which provided that EDF joins the States' opposition "[f]or all of the reasons detailed in Plaintiff States['] Opposition to EPA's Motion to Stay." *See* Dkt. No. 74. In turn, the Court need not—and does not—separately discuss EDF's opposition here.
[5] The Court finds the motion to stay appropriate for disposition without oral argument. *See* Civ. L.R. 7-1(b).
[6] All statutory citations are to the Clean Air Act, 42 U.S.C. § 7401 *et seq.*, unless otherwise stated.

2

published an emission guideline, each State to which the guideline pertained was required to "adopt and submit to the Administrator . . . a plan" to implement the guideline "[w]ithin nine months." 40 C.F.R. § 60.23(a)(1). The agency then was required to "approve or disapprove" such implementation plans "within four months after the date required for submission of a plan or a plan revision." *Id.* § 60.27(b). Last, if states to which the guideline pertained did not submit an implementation plan or EPA disapproved of a submitted plan, the Administrator was required, "within six months after the date required for submission of a plan or plan revision, [to] promulgate [a federal plan]" to implement the guideline. *Id.* § 60.27(d).

On August 29, 2016, EPA promulgated a final rule related to Municipal Solid Waste ("MSW") landfills. *Emission Guidelines and Compliance Times for Municipal Solid Waste Landfills*, 81 Fed. Reg. 59,276 (Aug. 29, 2016) ("Landfill Emissions Guidelines"). The Landfill Emissions Guidelines became effective on October 28, 2016. In turn, according to EPA's regulations:

1. States were required to submit implementation plans by May 30, 2017, *see* 40 C.F.R. § 60.23(a)(1);
2. EPA was required to approve or disapprove submitted plans by September 30, 2017, *see* 40 C.F.R. § 60.27(b); and
3. If either (i) states to which the guideline pertained did not submit implementation plans, or (ii) EPA disapproved a submitted plan, then EPA was required to promulgate a federal plan by November 30, 2017, *see* 40 C.F.R. § 60.27(d).

As of May 30, 2017, California and New Mexico submitted implementation plans as described by the regulations. Dkt. No. 58 ¶ 2. Arizona submitted an implementation plan on July 24, 2018. *Id.* To date, EPA has neither approved or disapproved of any submitted plans nor promulgated a federal plan. *Id.* ¶¶ 1–2. Accordingly, Plaintiffs brought this action, which seeks to have this Court "[i]ssue a declaratory judgment that, by failing to implement and enforce the Emission Guidelines, EPA has violated the Clean Air Act;" and "[i]ssue a mandatory injunction compelling EPA to implement and enforce the Emission Guidelines." Compl. at 19.

## II. MOTION TO DISMISS

EPA now moves to dismiss this case under Federal Rule of Civil Procedure 12(b)(1) because, according to EPA, there has been no unequivocal waiver of sovereign immunity. *See*

MTD at 6–9. EPA further argues that "Plaintiffs' claim that EPA failed to promulgate federal plans must be dismissed" under Rule 12(b)(6), because Plaintiffs failed to identify any specific state that should have submitted plans, which would have triggered EPA's duty to promulgate a federal plan under the relevant regulations. *Id.* at 12.

### A. The Court has Subject Matter Jurisdiction

The Court begins with the jurisdictional dispute, which is a threshold issue. EPA argues that dismissal under Rule 12(b)(1) is warranted because the citizen suit provision of the CAA does not "unequivocally waive[] the sovereign immunity of the United States" for duties imposed by agency regulations. *See* MTD at 6–9. Plaintiffs contend that the CAA waives sovereign immunity for duties imposed by agency regulations. MTD Opp. at 9–16. Alternatively, Plaintiffs argue that even if the CAA does not provide a remedy, either the Administrative Procedure Act ("APA") or mandamus would. *Id.* at 17–18.

#### i. Legal Standard

A defendant may move for dismissal on the ground that the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The burden of proof on a Rule 12(b)(1) motion rests with the party asserting jurisdiction, and courts presume the absence of jurisdiction until the pleading party proves otherwise. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) ("The party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists"). Moreover, the Court has "broad discretion to consider relevant and competent evidence on a motion to dismiss for lack of subject matter jurisdiction that raises factual issues." 5B Wright & Miller, Federal Practice and Procedure § 1350 (3d ed. 2018); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

A Rule 12(b)(1) motion is appropriate where a claim is barred by the doctrine of sovereign immunity. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206 (1983); *see also Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007) ("The United States, as a sovereign, is immune from suit unless it has waived its immunity."); 14 Wright & Miller, Fed. Prac. & Proc. Juris. § 3654 (4th ed.). In

4

addition, "[t]he United States must waive its sovereign immunity before a federal court may adjudicate a claim brought against a federal agency." *Rattlesnake Coal. v. U.S. EPA*, 509 F.3d 1095, 1103 (9th Cir. 2007). Otherwise, the court lacks subject matter jurisdiction over the claims. *Id.* A waiver of sovereign immunity "must be unequivocally expressed in the statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996). Although waiver must be "clearly discernable" from the statutory text, Congress need not employ particular "magic words" or "state its intent in any particular way." *F.A.A. v. Cooper*, 566 U.S. 284, 291 (2012). The party bringing suit has the burden of directing a court to the unmistakable waiver. *See Fifty Assocs. v. Prudential Ins. Co. of Am.*, 446 F.2d 1187, 1189 (9th Cir. 1970) ("A plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the existence of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected by amendment.").

In determining whether a statute clearly waives sovereign immunity, courts employ "traditional tools of statutory interpretation." *F.A.A.*, 566 U.S. at 291. If the scope of congressional waiver is not clearly discernable "in light of traditional interpretive tools," then courts interpret the statute as not waiving sovereign immunity. *Id.* ("If it is not, then we take the interpretation most favorable to the Government.").

### ii. Discussion

To determine whether the citizen suit provision of the CAA waives sovereign immunity such that this Court has subject matter jurisdiction, the Court turns to its interpretive tools. And as it must, the Court "start[s] with the plain meaning of the statute's text." *Father M v. Various Tort Claimants (In re Roman Catholic Archbishop of Portland in Or.)*, 661 F.3d 417, 432 (9th Cir. 2011) (quoting *United States v. Wright*, 625 F.3d 583, 591 (9th Cir. 2010)). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

The CAA's citizen suit provision states that "any person may commence a civil action on [its] own behalf . . . against the Administrator where there is alleged a failure of the Administrator

5

to perform any act or duty under this chapter which is not discretionary with the Administrator." 42 U.S.C. § 7604(a)(2). There is no dispute that the regulations at issue here created nondiscretionary duties for the Administrator. The parties disagree, however, over whether nondiscretionary duties in regulations constitute "dut[ies] under this chapter."

EPA argues that it "can only be ordered to perform a nondiscretionary duty" under the CAA's citizen suit provision where such a duty is spelled out in the text of the statute itself. MTD at 7. EPA relies heavily on *WildEarth Guardians v. McCarthy*, 772 F.3d 1179 (9th Cir. 2014), which EPA believes stands for the principle that duties "under this chapter" must be "'specific, unequivocal commands' that arise from the text of the statute." MTD at 7. EPA also relies on a First Circuit decision, *Maine v. Thomas*, 874 F.2d 883 (1st Cir. 1989), which EPA argues is "the only circuit court [case] to have directly addressed the question." MTD at 7–8. EPA believes that language from a footnote in *Maine* stands for the broad proposition that CAA's citizen suit provision "only authorizes suits to compel performance of acts or duties mandated by Congress in the CAA itself, not by the agency's regulations." *Id.*

Plaintiffs challenge EPA's reliance on *WildEarth*, arguing that the case stands only for the "undisputed proposition that a mandatory duty must be clear-cut and unambiguous to be actionable." MTD Opp. at 12. The Court agrees. Although *WildEarth* indicated that actionable nondiscretionary duties must be clear "from the statute," the only issue in that case on appeal was whether statutory language created a nondiscretionary duty. It is thus unsurprising that the Ninth Circuit demanded clear-cut language "from the statute." But *WildEarth* does not stand for the principle that nondiscretionary regulatory language can never authorize a lawsuit against an agency.

In further rebuttal of EPA's reliance on *WildEarth*, Plaintiffs note that the Ninth Circuit has—if anything—"shown a willingness to examine EPA's *regulations* for the existence of an actionable mandatory duty under the Clean Air Act." MTD Opp. at 11–12. Specifically, in *Farmers Union Central Exchange, Inc. v. Thomas*, 881 F.2d 757 (9th Cir. 1989), the Ninth Circuit reviewed whether EPA's CAA regulations contained a mandatory duty that would give rise to a suit under the same citizen suit provision at issue here. The district court there rejected EPA's

6

motion to dismiss for lack of jurisdiction, holding that "EPA [had] failed to follow its own adopted regulations." *Id.* at 759. The Ninth Circuit reversed, but only because it determined that the regulations failed to impose a mandatory duty, and not because mandatory acts under regulations cannot give rise to jurisdiction under the CAA's citizen suit provision. *Id.* at 760–61 ("We fail to see in what way EPA ignored its own regulations."). As Plaintiffs note, *WildEarth* approvingly cited this reasoning in *Farmers Union*. MTD Opp. at 12. Accordingly, while *Farmers Union* did not directly decide the question before the Court here, the Court finds that *Farmers Union* and *WildEarth* stand in harmony on the basic principle that actionable nondiscretionary duties must be clear-cut and unambiguous, whether articulated in the statute or in regulations duly promulgated under the statute.

As to the First Circuit opinion in *Maine v. Thomas*, the Plaintiffs note that EPA "raised the same argument" about *Maine*'s holdings in another case, *Sierra Club v. Leavitt*, 355 F. Supp. 2d 544 (D.D.C. 2005). MTD Opp. at 13. And as Plaintiffs point out, that court rejected EPA's reliance on "dicta in a footnote" to support the broad proposition that "regulations, such as the ones in this case, are not the proper basis for invoking the citizen suit provision in 42 U.S.C. § 7604." *Sierra Club*, 355 F. Supp. 2d at 554.

The Court agrees with the reasoning and holding of *Sierra Club*. Unlike *WildEarth*, *Farmers Union*, and *Maine*, *Sierra Club* squarely addressed the issue before this Court: whether the phrase "under this chapter" as used in 42 U.S.C. § 7604(a)(2) waives sovereign immunity over EPA's failure to perform nondiscretionary duties mandated by regulations promulgated in furtherance of the CAA. The *Sierra Club* court concluded that "although the phrase 'under this chapter' as used in the [CAA] is not defined, its meaning is readily discernable through the application of traditional tools of statutory construction." *Id.* at 555. Specifically, the court looked at the phrase's use throughout the CAA, which repeatedly considers regulations as falling within the phrase "under this chapter." *Id.* at 555–56. For example, another subsection of the statutory provision at issue here, 42 U.S.C. § 7604(a)(1), provides for citizen suits against any person who violated "an emission standard or limitation under this chapter." And in 42 U.S.C. § 7604(f), "'emission standard or limitation under this chapter' is defined to include various

7

regulatory enactments." *Id.* Another example provided by *Sierra Club* is 42 U.S.C. § 7478, which states that "[u]ntil such time as an applicable implementation plan is in effect for any area . . . to prevent significant deterioration of air quality with respect to any air pollutant, *applicable regulations under this chapter* prior to August 7, 1977, shall remain in effect . . . ." *Id.* The *Sierra Club* court reasoned that "[a] literal reading of § 7478 demonstrates that Congress viewed earlier regulations as being considered 'under this chapter.'" *Id.*

As also noted by the *Sierra Club* court, the pervasive and consistent use of "under this chapter" throughout the CAA in a way that encompasses both statutory and regulatory obligations demonstrates that Congress meant for that phrase's use in the citizen suit provision to waive sovereign immunity for the EPA's failure to perform nondiscretionary duties mandated by regulations. *Id.* After all, "[t]he interrelationship and close proximity of these provisions of the statute presents a classic case for application of the 'normal rule of construction that identical words used in different parts of the same act are intended to have the same meaning.'" *Id.* (quoting *Comm'r of Internal Revenue v. Lundy*, 516 U.S. 235, 249–50 (1996)).

The Court finds *Sierra Club*'s well-reasoned conclusion persuasive, and thus holds that the phrase "under this chapter" as used in 42 U.S.C. § 7604(a)(2) waives sovereign immunity for EPA's failure to perform nondiscretionary duties mandated by regulations promulgated in furtherance of the CAA.[7] Accordingly, the Court need not determine whether the APA or mandamus would otherwise authorize jurisdiction, as those mechanisms only apply when there is no other adequate remedy at law. *See Bennett v. Spear*, 520 U.S. 154, 161–62 (1997) (providing that "the APA by its terms independently authorizes review only when 'there is no other adequate remedy in a court'"); *Kildare v. Saenz*, 325 F.3d 1078, 1084 (9th Cir. 2003) (providing that

---

[7] The Court notes that one of its colleagues in this District has considered some of these issues, and similarly sided with *Sierra Club*. *See Care v. EPA*, No. C 12-03987 JSW, 2013 WL 6327530 at *2 (N.D. Cal. Dec. 3, 2013) (rejecting *Maine*, accepting that EPA's failure to act as mandated by a regulation is actionable under 42 U.S.C. § 7604(a)(2), but ultimately ruling that it could not find a mandatory obligation). Indeed, in *Care* the EPA advanced the same arguments as it advances here. *See* Defendants' Cross-Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment at 12–13, *Care v. EPA*, No. C 12-03987 JSW, 2013 WL 6327530 (N.D. Cal. Dec. 3, 2013), Dkt. No. 41.

mandamus is only available where, among other things, "no other adequate remedy is available").

### B. Plaintiffs Adequately State a Claim

EPA next argues that "Plaintiffs' claim that EPA failed to promulgate federal plans must be dismissed" under Rule 12(b)(6), because Plaintiffs failed to identify any states that should have submitted plans that would have triggered its duty to act. *Id.* at 12.

#### i. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). On a motion to dismiss, the court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But the plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although the court generally is confined to assessing the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). A court "need not accept as true allegations contradicting documents that are referenced in the complaint." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

#### ii. Discussion

Plaintiffs' complaint alleges that "by November 30, 2017, EPA was legally required to impose a federal plan on noncomplying states," and that it "failed to do so." Compl. ¶ 4. In addition, the complaint alleges that some states chose "not to develop a plan, and to instead await EPA's federal plan." *Id.* ¶ 54. Furthermore, the complaint alleges that EPA admitted that it failed to issue a federal plan "for states that failed to submit a state plan." *Id.* ¶ 52. The factual inference from that admission is that there were states that failed to submit implementation plans.

9

1    EPA argues that Plaintiffs "fall[] woefully short of the pleading requirement of Rule 8(a)(2)," because they did not identify any particular state that failed to submit an implementation plan. MTD at 12. But Rule 8(a)(2) does not require that level of particularity; rather, it requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 555. And taken as a whole, the complaint provides EPA with more than fair notice of the claim and grounds for relief.

## III. MOTION TO STAY

On October 23, 2018—well after this litigation began and on the eve of the hearing on the motion to dismiss—EPA commenced proposed rulemaking that, in part, intends to amend the regulations at the heart of this dispute. *See* MTS at 2–5 (providing additional background); *see also Proposed Rule*, 83 Fed. Reg. 54,527 (Oct. 30, 2018). As is relevant here, EPA's proposal would (1) "extend the state plan submission deadline to August 29, 2019," (2) provide EPA a six-month period after the submission deadline to review submissions for completeness, (3) provide EPA a twelve-month period after the completeness review to approve or disapprove the submissions, and (4) "provide EPA with two years to promulgate a federal plan after finding that a state plan is incomplete or disapproving a state plan." MTS at 2–5. EPA is also taking comment on whether to compel states that already submitted plans "to resubmit their plans." *Id.* Alternatively, "EPA solicit[ed] comment on whether the Agency should not require the resubmission of state plans submitted prior to promulgation of these amendments, and, if not, whether the EPA should still evaluate the already-submitted plans for compliance with the proposed new completeness criteria." *Id.* (internal quotation omitted).

Shortly after initiating this proposed rulemaking, EPA filed the current motion to stay this action until April 30, 2019, pending the anticipated conclusion of the rulemaking procedures.

### A. Legal Standard

A district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for

10

itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). To determine whether a *Landis* stay is warranted, courts consider: (1) "the possible damage which may result from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254-55). "[I]f there is even a fair possibility that the stay for which [the requesting party] prays will work damage to [someone] else," then the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255. A district court's decision to grant or deny a *Landis* stay is a matter of discretion. *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).

**B.     Discussion**

Under *Landis*, the Court declines to exercise its discretion to stay the case pending conclusion of the rulemaking process currently underway. To start, the Court finds that Plaintiffs have made a credible assertion of possible harm that could result from a stay. Even if EPA exercises complete diligence in passing the proposed regulation, that diligence does not eliminate the ordinary uncertainty in the rulemaking process, which creates at least a "fair possibility" of harm. *See Landis*, 299 U.S. at 254–55. Given that Plaintiffs have demonstrated a "fair possibility" of harm that could result from a stay, EPA was required under *Landis* to "make out a clear case of hardship or inequity in being required to go forward." *Id.* The Court finds that EPA has not made that clear showing. Finally, even turning to the factor of judicial economy, given that the Court is now ruling on EPA's fully briefed and argued motion to dismiss, the Court finds that a stay would not enhance "the orderly course of justice." *See CMAX, Inc.*, 300 F.2d at 268.

//

//

//

//

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion to dismiss and motion to stay the proceedings.[8]

Having considered the parties' proposed schedule for summary judgment briefing as submitted on September 25, 2018, *see* Dkt. No. 57, the Court **SETS** the following deadlines pursuant to Federal Rule of Civil Procedure 16 and Civil Local Rule 16-10: Plaintiffs' motion for summary judgment on liability is due January 22, 2019; EPA's opposition to Plaintiffs' motion for summary judgment and cross-motion for summary judgment is due February 19, 2019; Plaintiffs' reply in support of Plaintiffs' motion for summary judgment and opposition to EPA's cross-motion for summary judgment is due March 19, 2019; EPA's reply in support of its cross-motion for summary judgment is due April 2, 2019; a hearing on the cross motions is set for April 25, 2019 at 2:00 p.m.

These dates may only be altered by order of the Court and only upon a showing of good cause. The parties are directed to review and comply with this Court's Civil Pretrial and Trial Standing Order.

**IT IS SO ORDERED.**

Dated: 12/21/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[8] This order renders moot Plaintiffs' motion to shorten time. *See* Dkt. No. 75.