1  XAVIER BECERRA
   Attorney General of California
2  GARY E. TAVETIAN
   DAVID A. ZONANA
3  Supervising Deputy Attorneys General
   TIMOTHY E. SULLIVAN, SBN 197054
4  ELIZABETH B. RUMSEY, SBN 257908
   JULIA K. FORGIE, SBN 304701
5  Deputy Attorneys General
     1515 Clay Street, 20th Floor
6    P.O. Box 70550
     Oakland, CA 94612-0550
7    Telephone: (510) 879-0860
     liz.rumsey@doj.ca.gov
8

9  *Attorneys for the State of California,*
   *by and through Attorney General Xavier*
   *Becerra   and the California Air Resources*
10 *Board*

11 *Additional counsel listed on signature page*

SUSANNAH L. WEAVER
Donahue, Goldberg & Weaver, LLP
1008 Pennsylvania Avenue SE
Washington, DC 20003
Telephone: (202) 569-3818
susannah@donahuegoldberg.com

PETER ZALZAL
RACHEL FULLMER
  Environmental Defense Fund
  2060 Broadway, Suite 300
  Boulder, CO 80302
  Telephone: (303) 447-7214
  pzalzal@edf.org
  rfullmer@edf.org

*Attorneys for Environmental Defense Fund*

12                IN THE UNITED STATES DISTRICT COURT

13            FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                         OAKLAND DIVISION

15

16 **STATE OF CALIFORNIA, *et al.*,**          Case No. 4:18-cv-03237-HSG

17                **Plaintiffs,**              **PLAINTIFFS' REPLY IN SUPPORT OF
                                               THEIR JOINT MOTION FOR SUMMARY**
18          **v.**                             **JUDGMENT**

19 **UNITED STATES ENVIRONMENTAL
   PROTECTION AGENCY, *et al.*,**
20
                                               Hearing Date: April 25, 2019
21                **Defendants**               Time:          2:00 p.m.
                                               Courtroom:     2, 4th Floor
22                                             Judge:         Hon. Haywood S. Gilliam, Jr.

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................................. 1

II.   ARGUMENT ................................................................................................... 1

      A.    Plaintiffs Have Standing to Bring this Citizen Suit ..................................... 1

            1.    State Plaintiffs Have Established Standing Based on
                  Climate Harms ................................................................................. 2

            2.    State Plaintiffs Have Established Standing Based on Harms
                  from Volatile Organic Compounds and Hazardous Air
                  Pollutants ......................................................................................... 6

            3.    EDF Has Established Associational Standing Based on
                  Injuries to Its Members .................................................................... 7

      B.    Plaintiffs Have Established Liability ........................................................... 11

      C.    The Court Should Order EPA to Implement the Emission
            Guidelines on the Schedule Proposed By Plaintiffs ...................................... 12

            1.    EPA Has Not Shown It Is "Impossible" to Meet Plaintiffs'
                  Proposed Timeline, and EPA's Request for More Time Is
                  Not Adequately Justified .................................................................. 12

            2.    EPA's Proposed Remedy, Which Seeks to Extend EPA's
                  Deadlines Well Beyond What the Regulation Permits, Is
                  Not Equitable ................................................................................... 13

            3.    This Court Should Require EPA to Respond to Future-
                  Submitted Plans within Two Months of Submission ...................... 14

III.  CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

Page

CASES

*1000 Friends of Maryland v. Browner*
265 F.3d 216 (4th Cir. 2001).................................................................................................9

*Alabama Power Co. v. Costle*
636 F.2d 323 (D.C. Cir. 1979)..............................................................................................12

*Alaska Center for the Environment v. Browner*
20 F.3d 981 (9th Cir. 1994)...............................................................................................9, 14

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*
458 U.S. 592 (1982)..............................................................................................................6

*American Rivers v. FERC*
201 F.3d 1186 (9th Cir. 1999)...............................................................................................6

*Arizona State Legislature v. Arizona Independent Redistricting Commission*
135 S. Ct. 2652 (2015)..........................................................................................................6

*Aziz v. Trump*
231 F. Supp. 3d 23 (E.D. Va. 2017)......................................................................................6

*California Communities Against Toxics v. Pruitt*
241 F. Supp. 3d 199 (D.D.C. 2017) .....................................................................................12

*Community In-Power & Development Association, Inc. v. Pruitt*
304 F. Supp. 3d 212 (D.D.C. 2018) .....................................................................................12

*Committee for a Better Arvin v. EPA*
786 F.3d 1169 (9th Cir. 2015)...............................................................................................7

*Center for Biological Diversity v. Abraham*
218 F. Supp. 2d 1143 (N.D. Cal. 2002) ...............................................................................10

*DaimlerChrysler Corp. v. Cuno*
547 U.S. 332 (2006).............................................................................................................11

*Earth Island Institute v. Ruthenbeck*
490 F.3d 687 (9th Cir. 2007)...............................................................................................11

*Ecological Rights Foundation v. Pacific Gas & Electric Co.*
874 F.3d 1083 (9th Cir. 2017)..............................................................................................10

*In re Ozone Designation Litigation*
286 F. Supp. 3d 1082 (N.D. Cal. 2018) ...............................................................................11

iii

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

3

4

*Linda R.S. v. Richard D.*
410 U.S. 614 (1973)...........................................................................................3

5

*Massachusetts v. EPA*
549 U.S. 497 (2007)...............................................................................1, 2, 3, 6

6

7

*Massachusetts v. Mellon*
262 U.S. 447 (1923)...........................................................................................6

8

9

*National Mining Association v. U.S. Army Corps of Engineers*
145 F.3d 1399 (D.C. Cir. 1998) .......................................................................11

10

*Natural Resources Defense Council v. EPA*
643 F.3d 311 (D.C. Cir. 2011) ...........................................................................9

11

12

*Natural Resources Defense Council v. EPA*
437 F. Supp. 2d 1137 (C.D. Cal. 2006) .........................................................9, 10

13

14

*Natural Resources Defense Council v. EPA*
542 F.3d 1235 (9th Cir. 2008)....................................................................3, 9, 10

15

*Natural Resources Defense Council v. Train*
510 F.2d 692 (D.C. Cir. 1974) .........................................................................12

16

17

*Oregon v. Legal Services Corp.*
552 F.3d 965 (9th Cir. 2009) ...........................................................................11

18

19

*Sierra Club v. Browner*
130 F. Supp. 2d 78 (D.D.C. 2001) ...................................................................14

20

*Sierra Club v. Chevron U.S.A., Inc.*
834 F.2d 1517 (9th Cir. 1987)..........................................................................11

21

22

*Sierra Club v. EPA*
774 F.3d 383 (7th Cir. 2015)..............................................................................9

23

24

*Summers v. Earth Island Institute*
555 U.S. 488 (2009) ...........................................................................................8

25

*Texas v. United States*
86 F. Supp. 3d 591 (S.D. Tex. 2015) ..................................................................6

26

27

*U.S. Department of Interior v. FERC*
952 F.2d 538 (D.C. Cir 1992) ............................................................................6

28

**TABLE OF AUTHORITIES**
(continued)

Page

*Washington Environmental Council v. Bellon*
  732 F.3d 1131 (9th Cir. 2013)....................................................................2, 3, 4, 5

*WildEarth Guardians v. Bureau of Land Management*
  8 F. Supp. 3d 17 (D.D.C. 2014) ..............................................................9

*WildEarth Guardians v. EPA*
  759 F.3d 1064 (9th Cir. 2014).................................................................9

STATUTES

42 United States Code § 7411 ................................................................3, 7

42 United States Code § 7604(a)(2) .........................................................3

OTHER AUTHORITIES

40 Code of Federal Regulations § 60.23 ..................................................13

62 Federal Register 44,127 (Aug. 19, 1997).............................................13

64 Federal Register 51,447 (Sept. 23, 1999)............................................13

77 Federal Register 22,392 (Apr. 13, 2012) .............................................5

81 Federal Register 59,276 (Aug. 29, 2016)........................................4, 7, 8, 15

*A Budget for a Better America: Fiscal Year 2020* (Mar. 11, 2019),
  https://www.whitehouse.gov/wp-content/uploads/2019/03/budget-fy2020.pdf.....................14

Andrew Freedman, *IPCC Report Contains 'Grave' Carbon Budget Message*,
  CLIMATE CENTRAL (Oct. 4, 2013), https://www.climatecentral.org/news/ipcc-
  climate-change-report-contains-grave-carbon-budget-message-16569 ...................5

IPCC, *Climate Change 2013: The Physical Science Basis*, Summary for
  Policymakers (2013) ...............................................................................5

IPCC, *Special Report on Global Warming of 1.5° C* ...............................2

United States Global Climate Research Program (USGCRP), *Fourth National
  Climate Assessment, Volume II: Impacts, Risks, and Adaptation in the United
  States* (Nov. 23, 2018)......................................................................2, 4, 5

Press Release, EPA FY 2020 Budget Proposal Released (Mar. 11, 2019),
  https://www.epa.gov/newsreleases/epa-fy-2020-budget-proposal-released .................14

v

## I.  INTRODUCTION

In response to Plaintiffs' Motion for Summary Judgment, EPA concedes that it violated its regulatory obligations under the Clean Air Act to protect Americans' health and welfare from landfill pollution. *See* EPA's Opp. to Joint Mot. for Summary Judgment at 2, Dkt. 92 (N.D. Cal. Feb. 19, 2019) (Opp.). But rather than comply with those obligations, EPA again attempts to avoid them—this time by contesting Plaintiffs' (including eight sovereign States') standing. That defense lacks merit. Plaintiffs plainly have Article III standing to bring this statutorily authorized citizen suit to enforce EPA's conceded obligations.

On the merits, EPA acknowledges that "[t]he Court may properly enter an order setting a deadline for EPA to perform an obligation for which it admits liability." Opp. at 6. But in its Cross Motion for Summary Judgment, on remedy, EPA asks this Court to reward the agency's intransigence by granting it even more time going forward than it had under the law in the first place. This Court should reject this latest maneuver and order EPA to act expeditiously to comply with its clear and long-overdue obligations.

## II.  ARGUMENT

### A.  Plaintiffs Have Standing to Bring this Citizen Suit

In Plaintiffs' Joint Motion for Summary Judgment and accompanying declarations, Plaintiffs established their standing to bring this action. Dkt. 85 (N.D. Cal. Jan. 22, 2019) (MSJ).

Consistent with *Massachusetts v. EPA*, 549 U.S. 497 (2007), State Plaintiffs are entitled to special solicitude in the standing analysis where their quasi-sovereign interests are threatened by the federal action they seek to challenge and Congress granted them a procedural right to sue. MSJ at 11-12. Especially given that special solicitude, State Plaintiffs easily satisfy the three prongs of the traditional standing analysis. EPA's only response is that the emissions at stake, though significant, are not significant enough. But where the emissions are significant enough to warrant promulgating a rule to address them, they are significant enough to hold the agency accountable for complying with its mandates under the Clean Air Act to implement the rule.

Likewise, Plaintiff-Intervenor EDF has associational standing to bring this action on behalf of its members. For example, EDF member Trisha Sheehan lives in close proximity to a covered

1  landfill, and her family is exposed to increased ozone and hazardous air pollutants *because of*

2  EPA's failure to implement the Landfill Emission Guidelines that would be reduced if EPA

3  implements the Guidelines. Indeed, the causal chain could not be more direct. Courts around the

4  country, including the Ninth Circuit, have found standing under similar circumstances.

5       **1.     State Plaintiffs Have Established Standing Based on Climate Harms**

6       In attacking State Plaintiffs' standing, EPA only argues that the "line of causation" between

7  EPA's inaction and the consequent climate-changing increase in greenhouse gases and the States'

8  injuries is too "attenuated." Opp. at 8. EPA's argument is narrow and unavailing. The agency

9  does not, and cannot, deny that greenhouse gases cause climate change or that climate change is

10  causing the harms identified by the States. *See Mass. v. EPA*, 549 U.S. at 523; MSJ Ex. 4,

11  USGCRP, *Fourth National Climate Assessment, Volume II: Impacts, Risks, and Adaptation in the*

12  *United States* 27, 1107-10 (Nov. 23, 2018) (National Assessment) (Executive Branch report

13  documenting climate harms, including specific harms to State Plaintiffs). Nor does EPA dispute

14  that there is a causal link between the agency inaction challenged in this lawsuit and a significant

15  increase in greenhouse gas emissions. Instead, EPA solely and inappropriately relies on

16  *Washington Environmental Council v. Bellon*, 732 F.3d 1131 (9th Cir. 2013), to assert that the

17  agency's inaction is not a significant enough cause of Plaintiffs' injury because the *quantity* of

18  greenhouse gases at issue (equivalent to approximately 7.3 million metric tons of $CO_2$, the

19  emissions of 1.5 million cars, MSJ at 11) will not "meaningful[ly] impact" the States. Opp. at 12.

20       EPA's standing objection is legally and factually wrong. As a legal matter, EPA ignores the

21  "special solicitude" owed State Plaintiffs.[1] The Ninth Circuit in *Bellon* specifically distinguished

22  the facts in that case from those in *Massachusetts v. EPA* and other cases finding standing based

23  on climate injuries because the suit in *Bellon* was brought by private citizens, *not* sovereign states.

24  732 F.3d at 1143-44 & n.6 (distinguishing *Connecticut v. American Electric Power*, which held

25  that the presence of state plaintiffs "permit[s] less strenuous levels of proof to achieve standing").

26  The *Bellon* distinction does not apply to the present case. When Plaintiff States entered the Union,

27       [1] EPA oddly attempts to dispense with the special solicitude owed State Plaintiffs by
asserting that Plaintiff States "do not contend that [it] … applies here." Opp. at 9 n.6. In fact,

28  Plaintiffs did, and do, so contend. *See* MSJ at 12.

2

they "surrender[ed] certain sovereign prerogatives" now "lodged in the Federal Government." *Mass. v. EPA*, 549 U.S. at 519. Congress "ordered EPA to protect" Plaintiff States by establishing and implementing Emission Guidelines for sources of pollution that endanger health and welfare. *Id.* at 519-20; *see* 42 U.S.C. § 7411(d). At the same time, Congress "recognized a concomitant procedural right" to challenge EPA's failure to perform its obligations. *Mass. v. EPA*, 549 U.S. at 520; *see* 42 U.S.C. § 7604(a)(2).[2] Consequently, State Plaintiffs must be accorded special solicitude when they try to protect their shorelines, forests, and infrastructure from harms contributed to by EPA's blatant failure to implement all facets of Congress's charge.

Relatedly, causation is strongly inferred by congressional action. "Where Congress has expressed the need for specific regulations relating to the environment, that expression supports an inference that there is a causal connection between the lack of those regulations and adverse environmental effects." *Natural Res. Def. Council v. EPA*, 542 F.3d 1235, 1248 (9th Cir. 2008) (*NRDC*). That is precisely the case here. Pursuant to its obligations under the Clean Air Act, EPA promulgated the Landfill Emission Guidelines to reduce emissions of greenhouse gases and other pollutants that EPA has found threaten human health and welfare. *See* 42 U.S.C. § 7411(b)(1)(A) (directing the EPA Administrator to identify stationary sources that "cause[], or contribute[] significantly to, air pollution which may reasonably be anticipated to endanger public health or welfare."); *id.* § 7411(d)(1) (directing the Administrator to "provide[] for the implementation and enforcement of … standards of performance" for such existing sources). EPA's unlawful failure to implement the Guidelines defies this statutory directive, thereby demonstrating a constitutionally sufficient "causal connection" between EPA's failure and Plaintiffs' injuries.[3]

---

[2] In *Massachusetts v. EPA*, the plaintiffs had a "right to challenge agency action unlawfully withheld." 549 U.S. at 517. That is, they were entitled to challenge the agency's decision not to regulate greenhouse gases because Congress granted them that right. Similarly, here, Congress granted Plaintiffs the right to challenge EPA's "failure … to perform" its nondiscretionary duties. 42 U.S.C. § 7604(a)(2). *See Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973) ("Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute.").

[3] In *Bellon*, the court declined to apply the rule set forth in *NRDC* to the facts before it, because *NRDC* stood for the proposition that there was a causal connection between the challenged action and "adverse environmental effects," but the plaintiffs there did not show how those adverse environmental effects injured *them*. 732 F.3d at 1144. Here, EPA does not dispute that adverse environmental effects to the States' environments are harm to the States, for all the

1    Moreover, contrary to EPA's assertion, *Bellon* does not impose a "substantive

2    quantification hurdle" that Plaintiffs here must overcome to establish causation. Opp. at 11. The

3    quantity of emissions was just one of several facts considered by the court, facts that were

4    substantially different from this case. For one, the court did not have to consider the "special

5    solicitude" to which State Plaintiffs are entitled here. *See Bellon*, 732 F.3d at 1143-44 & n.6.

6    Second, the harms about which plaintiffs in *Bellon* complained were purely "localized" climate

7    harms that, in the court's view, amounted to harms to the environment, not harms to the plaintiffs

8    themselves. *Id.* at 1144. Third, in *Bellon*, the mandate that the defendants were accused of

9    violating was not specifically designed to address the alleged source of plaintiffs' harms

10   (greenhouse gas emissions). *Id.* at 1137. None of those circumstances is present in this case.

11   In addition to being legally wrong, EPA's argument that the emissions at stake are too

12   insignificant to confer standing is factually wrong. Indeed, EPA's litigation position is undercut

13   by its own earlier findings that confirmed each link in the chain of causation: According to EPA's

14   own characterization, the Emission Guidelines "are expected to *significantly reduce* emissions of

15   [landfill gas] and its components … including methane …." 81 Fed. Reg. 59,276, 59,279 (Aug.

16   29, 2016) (Emission Guidelines) (emphasis added). EPA further explained that "[l]andfills are a

17   significant source of methane, which is a potent greenhouse gas pollutant. These avoided

18   emissions *will improve air quality and reduce the potential for public health and welfare effects*

19   associated with exposure to landfill gas emissions." *Id.* at 59,276 (emphasis added). EPA

20   estimated that the Guidelines will prevent $200 million to $1.2 billion in climate damages. *Id.* at

21   59,280.

22   As Plaintiffs explained in their Motion, there is overwhelming and growing evidence—*from*

23   *EPA* and other Executive Branch departments, among others—showing that immediate and

24   substantial greenhouse gas emissions reductions are necessary to avoid severe long-term climate-

25   change-related consequences, including specific consequences to State Plaintiffs. *See* MSJ at 7-8

26   (citing, *inter alia*, National Assessment). And in 2013, the Intergovernmental Panel on Climate

27   _____

reasons set forth in Plaintiffs' MSJ (at 6-10), and these are the very harms the Emission
Guidelines seek to prevent. *See, e.g.*, Emission Guidelines at 59,281 (discussing the myriad

28   climate and health benefits of reducing landfill gas emissions).

Change (IPCC) determined that, to avoid a dangerous increase in average global temperatures, the world could emit no more than a total "budget" of greenhouse gas emissions from anthropogenic sources, and that more than half of the budget had already been emitted by 2011.[4] The emissions at issue here affect that budget. EPA tellingly fails to address or even acknowledge these reports in its Opposition and ignores its own pronouncement that "[e]ach additional ton of greenhouse gases emitted commits us to further change and greater risks." 77 Fed. Reg. 22,392, 22,395 (Apr. 13, 2012) (citation and quotation marks omitted). Indeed, EPA's argument that the pollution caused by its inaction is insufficient to confer standing defies reason. Where the emissions are significant enough to warrant promulgating a rule to address them, they are significant enough to hold the agency accountable for complying with its mandates under the Clean Air Act to implement the rule.

Moreover, in the six years since *Bellon* was decided, it has become even clearer that time is of the essence in reducing greenhouse gas emissions, and that to avoid the worst consequences of climate change, greenhouse gases must be cut from every sector now. *See* National Assessment at 36 (concluding that "the impacts of climate change are intensifying across the country, and … climate-related threats to Americans' physical, social, and economic well-being are rising"); MSJ Ex. 6, IPCC, *Special Report on Global Warming of 1.5° C* at 95 ("Limiting warming to 1.5° C implies reaching net zero $CO_2$ emissions globally around 2050 and concurrent deep reductions in emissions of non-$CO_2$ forcers, particularly methane.").[5] EPA does not address the emission reductions at issue here in the context of these reports' admonishments that more aggressive emission-reduction action is needed to avoid severe consequences to State Plaintiffs.

---

[4] IPCC, *Climate Change 2013: The Physical Science Basis*, Summary for Policymakers 27 (2013); *see also* Andrew Freedman, *IPCC Report Contains 'Grave' Carbon Budget Message*, CLIMATE CENTRAL (Oct. 4, 2013), https://www.climatecentral.org/news/ipcc-climate-change-report-contains-grave-carbon-budget-message-16569 (last visited Mar. 18, 2019).

[5] The United Nations Framework Convention on Climate Change 2015 Paris Agreement aims to hold "'the increase in the global average temperature to … 1.5° C above pre-industrial levels'" to avoid the most severe climate impacts. National Assessment at 1351.

1        **2.    State Plaintiffs Have Established Standing Based on Harms from**
              **Volatile Organic Compounds and Hazardous Air Pollutants**
2

3        In addition to their standing based on harms attributable to methane emissions, the States

4    also have standing on the basis of more localized harms attributable to volatile organic

5    compounds (VOCs) and hazardous air pollutants. EPA disputes this basis for standing solely by

6    citing a footnote in *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 610 n.16 (1982),

7    for the proposition that a "[s]tate does not have standing as *parens patriae* to bring an action on

8    behalf of its citizens against the Federal Government." Opp. at 9. EPA is incorrect. As an initial

9    matter, harm to the health of the States' citizens *is* harm to the States in the form of increased

10   costs to the States' healthcare systems and, ultimately, the States' treasuries.

11       Moreover, the footnote in *Snapp* is dicta and oversimplifies an earlier case, *Massachusetts*

12   *v. Mellon*, 262 U.S. 447, 485-86 (1923). A number of courts subsequent to *Mellon*, including the

13   U.S. Supreme Court, have clarified the contours of the *parens patriae* doctrine. Those courts

14   explain that *Mellon* prohibits only state *parens patriae* challenges to the constitutionality of

15   federal statutes. *See, e.g.*, *Mass. v. EPA*, 549 U.S. at 520 n.17 (rejecting the view that *Mellon* and

16   *Snapp* "cast significant doubt on a State's standing to assert a quasi-sovereign interest … against

17   the Federal Government" (alteration in original)).[6] Here, the State Plaintiffs do not make a

18   constitutional challenge. They are well within their rights to take action against the federal

19   government—including *to to protect the health of their citizens*—to prosecute an unlawful agency

20   action that harms those citizens. *See, e.g.*, *Texas v. United States*, 86 F. Supp. 3d 591, 625 (S.D.

21   Tex. 2015) *aff'd*, 809 F.3d 134 (5th Cir. 2015), *as revised* (Nov. 25, 2015) ("*Parens patriae*

22   permits a state to bring suit to protect the interests of its citizens, even if it cannot demonstrate a

23   direct injury to its separate interests as a sovereign entity." (citing *Snapp*, 458 U.S. at 601)).

24       ⁶ *See also Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2664
25   n.10, 2695 (2015) (describing, in both the majority opinion and a dissent, *Mellon* as applying to
     state challenges to *congressional* enactments); *U.S. Dep't of Interior v. FERC*, 952 F.2d 538, 544
26   n.4 (D.C. Cir 1992) (holding that state agencies had *parens patriae* standing under *Snapp* to
     challenge FERC actions that "violated the [FPA] statute and its own regulations"); *Am. Rivers v.*
27   *FERC*, 201 F.3d 1186, 1205 (9th Cir. 1999) (adopting the reasoning of *Dep't of Interior v. FERC*
     in "a case with a virtually identical procedural posture"); *Aziz v. Trump*, 231 F. Supp. 3d 23, 32
28   (E.D. Va. 2017) (distinguishing executive action from federal statutes and interpreting *Mellon*,
     *Snapp*, and *Mass. v. EPA* to allow *parens patriae* challenges to the former).

1   By failing to implement the Emission Guidelines, EPA is forgoing reductions of 1,810

2   megagrams per year (Mg/year) of VOCs and hazardous air pollutants. *See* Emission Guidelines at

3   59,280. The States' citizens who live near landfills or in ozone nonattainment areas suffer harms

4   from that pollution including increased risk of respiratory and cardiovascular disease, cancer, and

5   even death, *id.* at 59,281, and the States are authorized to take action against EPA on their

6   behalf.[7]

7   **3.    EDF Has Established Associational Standing Based on Injuries to Its**
    **Members**

8

9   EDF has likewise demonstrated its standing based upon injuries to its members from EPA's

10   violation of its legal obligations. EPA does not contest that EDF has established that at least one

11   of its members suffers an Article III injury-in-fact, or the other requirements of associational

12   standing; EPA only contests the causation and redressability prongs of the standing analysis.

13   Focusing on the injuries to EDF's members from VOC and hazardous air pollution, EDF

14   has established a constitutionally sufficient causal chain. It is undisputed that EPA's failure to

15   implement the Emission Guidelines directly and "significantly" increases emissions of VOC and

16   hazardous air pollutants from municipal solid waste landfills—by 1,810 Mg/year. Emission

17   Guidelines at 59,279-80. It is undisputed that VOCs react in sunlight to form ground-level ozone,

18   and that increased ozone levels increase the risk of adverse health effects, including premature

19   death, particularly in vulnerable populations. Decl. of Dr. Elena Craft ¶¶ 6, 7, 11, 15, 16; *see* MSJ

20   at 10 (citing EPA sources). It is undisputed that there is no safe threshold for exposure to many

21   hazardous air pollutants. Craft Decl. ¶ 18. And it is undisputed that people living in proximity to

22   landfills will be particularly affected by the VOC and hazardous air pollutant emissions from

23   those landfills. Craft Decl. ¶ 20; Emission Guidelines at 59,312 (noting that the impacts of these

24   _____

    [7] Even where a state implements its own regulations to address the problem that the Emission Guidelines were designed to address, those regulations would not be federally

25   enforceable. *See* 42 U.S.C. § 7411(c)(2), (d)(1)(B). Thus, EPA's inaction would still harm the States by depriving them of federal enforcement resources to tackle a serious matter of human

26   health and welfare and a uniform system enforceable by either the federal government or private citizens. *See Comm. for a Better Arvin v. EPA*, 786 F.3d 1169 (9th Cir. 2015) ("Having any state

27   law standards that are necessary for compliance with the federal law requirements incorporated as part of the [State Implementation Plan], so as to be directly enforceable by EPA and by citizens,

28   is a more safe and sensible system of enforcement ….").

1    VOCs and hazardous air pollutants "can be felt many miles away" from the landfill).

2          Furthermore, it is undisputed that EDF has thousands of members living close to covered

3    landfills, including Trisha Sheehan. Indeed, EDF has approximately 47 members living *within a*

4    *quarter mile*, 1,413 members living within one mile, and 21,802 members living within three

5    miles of a covered landfill, along with 57,404 members who live in a county that is in

6    nonattainment for the ozone air quality standards and contains a covered landfill. Decl. of John

7    Stith ¶ 12. These EDF members live in close proximity to covered landfills in every state in the

8    country. Decl. of Steven Koller ¶ 6, Tab. 1. Accordingly, EPA cannot dispute (and has not

9    disputed) that these EDF members, including Trisha Sheehan, are exposed to additional VOC and

10   hazardous air pollution *because of* EPA's failure to implement the Emission Guidelines, and that

11   they would be exposed to *less* VOC and hazardous air pollution if this Court requires EPA to

12   implement the Guidelines. That is the essence of causation and redressability.[8]

13         Indeed, EPA recognized the very causal chain it now disputes when describing the benefits

14   the Emission Guidelines would confer: "[Landfill gas] can contain a variety of air pollutants,

15   including VOC and various organic [hazardous air pollutants]. VOC emissions are precursors to

16   both fine particulate matter (PM2.5) and ozone formation. These pollutants … are associated with

17   substantial health effects, welfare effects, and climate effects. The EPA expects that the reduced

18   emissions will result in improvements in air quality and lessen the potential for health effects

19   associated with exposure to air pollution related emissions …." Emission Guidelines at 59,280.

20         Under similar circumstances, courts have easily found that plaintiffs met all Article III

21   standing elements. For example, in the similar context of water pollution, the Ninth Circuit

22   _____

23   [8] EPA's reference to *Summers v. Earth Island Institute*'s rejection of standing based on statistical probability is inapposite. *See* Opp. at 14. In *Summers*, the majority rejected the dissent's

24   assertion that plaintiff Sierra Club had standing to challenge Forest Service regulations affecting small parcels of forest land because Sierra Club had 700,000 members nationwide, many of

25   whom recreated in a particular National Forest, and so it was "probable" that some member would visit one of the small parcels subject to the regulation and therefore be affected by it.

26   *Summers*, 555 U.S. 488, 497-98 (2009). Here, by contrast, EDF has established that tens of thousands of its members—including a specific member declarant—actually live in close

27   proximity to covered landfills or in ozone non-attainment areas that contain a covered landfill, and it is undisputed that if EPA does not implement the Emission Guidelines those members will

28   actually be exposed to greater levels of pollution than they would be if the Guidelines were implemented. There is nothing "probabilistic" about EDF's members' standing.

1    concluded that "declarations establishing that storm water discharge from the construction

2    industry is polluting the waterways [plaintiffs' members] use, the EPA's findings that such

3    discharge may consist of toxic and non-conventional pollutants, and Congress' determination that

4    [the regulations] reduce the risk of such pollution, are sufficient to establish 'traceability' and

5    'redressability.'" *NRDC*, 542 F.3d at 1238; *see also WildEarth Guardians v. EPA*, 759 F.3d 1064,

6    1071-72 (9th Cir. 2014) (noting "injury [was] fairly traceable to EPA's approval of the [Nevada

7    determination regarding allowable sulfur dioxide emissions] because $SO_2$ pollution from [the

8    plant] contributes to visibility impairment at the national parks she visits," and "if [the court]

9    ordered EPA to reject [the Nevada determination], it follows that EPA's [plan] would likely

10   impose stricter emissions controls on the plant").[9]

11        Against all of this precedent, EPA asserts that the "chain of causation from landfill

12   emissions of VOCs to ground-level ozone to EPA's inaction is too speculative" because EDF

13   "assumes that any decrease in VOC emissions from landfills would address alleged injuries from

14   ground-level ozone, a pollutant caused by emissions from many sources." Opp. at 16. EPA does

15   not point to any precedent (beyond *Bellon*, which did not address local pollution) for the novel

16   proposition that plaintiffs need show that the specific increases in pollution in their communities

---

[9] *See Alaska Ctr. for the Env't v. Browner*, 20 F.3d 981, 984-85 (9th Cir. 1994) (redressability demonstrated where Congress had determined the relief sought was the appropriate means of achieving the desired air quality); *see also Sierra Club v. EPA*, 774 F.3d 383, 392 (7th Cir. 2015) (finding standing where new rules "will be more lax than the rules currently in place"—even though "the *effect* of … new rules" was "speculative"—because the "probability that ozone levels will rise has, for standing purposes, sufficiently increased on account of the relaxed regulations"); *Natural Res. Def. Council v. EPA*, 643 F.3d 311, 318 (D.C. Cir. 2011) (causation and redressability demonstrated where EPA's actions would "delay[], at the very least, implementation" of regulations aimed at reducing ozone pollution, "which in turn delays the reduction of ambient ozone and harms [plaintiff's] members"); *1000 Friends of Maryland v. Browner*, 265 F.3d 216, 225-26 (4th Cir. 2001) (finding causation and redressability to challenge EPA's approval of a motor vehicle emissions budget that plaintiffs deemed too high to allow Baltimore to attain health-based ozone standards); *WildEarth Guardians v. Bureau of Land Mgmt.*, 8 F. Supp. 3d 17, 28-29 (D.D.C. 2014) ("[P]laintiffs can show causation because BLM concedes that development of the two lease tracts will result in increased emissions of certain air pollutants."); *Natural Res. Def. Council v. EPA*, 437 F. Supp. 2d 1137, 1147 (C.D. Cal. 2006) ("Because Congress determined that uniform [guidelines and standards] are the most effective means of reducing the risks associated with toxic and nonconventional discharges, and the Environmental Plaintiffs seek promulgation of such standards for an industry that currently lacks them, they have established that the risk of continued degradation to the waterbodies they enjoy is traceable to the EPA's inaction.").

9

1  will have a particular effect on their health that can be separated from other sources of pollution.

2  To the contrary, the Ninth Circuit has definitively held that "it is not necessary for a plaintiff

3  challenging violations of rules designed to reduce the *risk* of pollution to show the presence of

4  *actual* pollution"—which, incidentally, EDF has shown here—"in order to obtain standing."

5  *NRDC*, 542 F.3d at 1247 (emphasis in original). Nor must plaintiffs demonstrate that their injuries

6  are solely caused by a defendant's challenged conduct where "pollution is commingled." *Ctr. for*

7  *Biological Diversity v. Abraham*, 218 F. Supp. 2d 1143, 1155-56 (N.D. Cal. 2002). EPA's

8  attempt to fashion an "escalated standing requirement[]" requiring plaintiffs to show causation

9  "with absolute certainty" must be rejected. *Natural Res. Def. Council*, 437 F. Supp. 2d at 1147.

10  Moreover, EPA does not contest that ozone levels above the health-based air quality

11  standards cause adverse health effects nor that there is no safe threshold for many hazardous air

12  pollutants such that *any* increase in exposure risks adverse health effects. EDF member Trisha

13  Sheehan testified that she and her family live "approximately seven miles" from a covered

14  landfill in an area that is out of attainment, and that she "frequently drive[s] [her] kids to and from

15  sports activities and other events, which often bring[s] her in even closer proximity to this

16  landfill." Decl. of Trisha Sheehan ¶¶ 3, 7. She further testified that landfills release VOCs, which

17  form ozone, and "hazardous air pollutants … like Benzene, which is a known carcinogen," *id*.

18  ¶ 4, and that the Emission Guidelines "benefit my own health and the health of my three children

19  by reducing harmful landfill gas emissions (including methane, NMOCs, and HAPs)" from the

20  landfill near her home, *id.* ¶ 6. The limited objections EPA raises to contest Ms. Sheehan's

21  standing mischaracterize the facts set forth in her declaration. Opp. at 16 (arguing that Ms.

22  Sheehan "only describes impacts to her family from ground-level ozone," despite Ms. Sheehan's

23  specific statements about hazardous air pollutants). Ms. Sheehan easily satisfies the requirement

24  that "at least one [EDF] member have standing to sue in [her] own right." *Ecological Rights*

25  *Found. v. Pac. Gas & Elec. Co.*, 874 F.3d 1083, 1092 (9th Cir. 2017) (internal quotation omitted).

26  Finally, EDF need not provide a statement from a member living in proximity to every

27  regulated landfill, or from every state, to challenge EPA's failure to implement a nationally-

28  applicable rule. *Contra* Opp. at 16. EDF's standing declarants are representative of EDF's tens of

10

thousands of similarly-situated members harmed by EPA's inaction nationwide. *See* Craft Decl.

¶¶ 15, 20, 21, 22. Indeed, EDF has members living within 3 miles of (and thus exposed to

pollution from) *every* covered landfill nationwide. Koller Decl. ¶ 6 Tab. 1.

In challenges to national rulemakings, courts have routinely granted relief that is national in

scope even though an organization's declarations detail harms to individual members within

particular states. *See, e.g.*, *Earth Island Inst. v. Ruthenbeck*, 490 F.3d 687, 699 (9th Cir. 2007)

(citing cases), *aff'd in part, rev'd in part on other grounds*, *Summers*, 555 U.S. 488; *Nat'l Mining

Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998); *In re Ozone

Designation Litig.*, 286 F. Supp. 3d 1082, 1085 (N.D. Cal. 2018) (providing relief for "all areas of

the country" notwithstanding that plaintiffs did not provide declarations from every county in

which relief was ordered). Holding otherwise would undermine the "important public function"

that citizen suits serve in ensuring implementation and enforcement of the Clean Air Act's

requirements. *Sierra Club v. Chevron U.S.A., Inc.*, 834 F.2d 1517, 1525 (9th Cir. 1987).

EPA points to no case to the contrary. *Oregon v. Legal Services Corp.*, which EPA cites,

Opp. at 5, did not present this question. 552 F.3d 965, 969 (9th Cir. 2009). And *DaimlerChrysler

Corp. v. Cuno*, also cited, Opp. at 16, rejected an assertion that the Court had supplemental

jurisdiction to hear challenges to one tax because plaintiffs had standing to challenge a different

tax. That case simply acknowledged that plaintiffs need to establish standing for each claim and

form of relief. 547 U.S. 332, 353 (2006). Contrary to EPA's bald claim, Opp. at 5, EDF *has*

shown standing "for each claim [it] seeks to press"—EPA's unlawful failure to implement the

Emission Guidelines, Complaint at 17-18, Dkt. 1 (May 13, 2018)—and for "each form of relief

sought"—a declaration that EPA has violated the law and an injunction compelling EPA to

implement the Emission Guidelines, *id.* at 19. EPA has a mandatory duty to implement the

Emission Guidelines *nationwide*. That doing so may entail different actions with respect to

different states does not distinguish the Guidelines from other nationally-applicable rules.

**B.    Plaintiffs Have Established Liability**

EPA does not dispute that it is liable for the alleged violations. *See* Opp. at 2.

11

**C.   The Court Should Order EPA to Implement the Emission Guidelines on the Schedule Proposed By Plaintiffs**

    **1.   EPA Has Not Shown It Is "Impossible" to Meet Plaintiffs' Proposed Timeline, and EPA's Request for More Time Is Not Adequately Justified**

EPA acknowledges that this "Court may properly enter an order setting a deadline for EPA to perform an obligation for which it admits liability." Opp. at 6. It also admits that the time provided in the regulations is "presumptively reasonable." Opp. at 17. Yet in its Cross Motion, EPA requests double the time provided in the regulations—a year to issue a federal plan and to review California's plan—which, if the Court issues its ruling as soon as May 1, 2019, would mean EPA would not comply until *more than two years after* the deadlines mandated by the regulations. EPA further requests four months to review and approve or disapprove of the submitted state plans of New Mexico, Arizona, Delaware, and West Virginia.

| Requirement | Regulatory Deadline | Plaintiffs' Remedy | EPA's Remedy |
|---|---|---|---|
| Review State Plans | September 30, 2017 | June 1, 2019 | September 1, 2019 (for NM, AZ, DE & WV) May 1, 2020 (for CA) |
| Promulgate Federal Plan | November 30, 2017 | October 1, 2019 | May 1, 2020 |

To demonstrate that the remedial timeline is too strict, EPA must show that the "timeline is an impossibility." *See Cal. Communities Against Toxics v. Pruitt*, 241 F. Supp. 3d 199, 204 (D.D.C. 2017) (citing *Ala. Power Co. v. Costle*, 636 F.2d 323, 359 (D.C. Cir. 1979) and *Natural Res. Def. Council v. Train*, 510 F.2d 692 (D.C. Cir. 1974)); *see also Cmty. In-Power & Dev. Ass'n, Inc. v. Pruitt*, 304 F. Supp. 3d 212, 219-20 (D.D.C. 2018). EPA has not done so here. EPA does not refute that state plans are relatively short, that the plans at issue here are *revisions*, not new plans, or that the regulatory text of the Emission Guidelines sets out in detail the provisions that a plan, including a federal one, must include. Opp. at 8.

EPA has also overstated the need for and the time required to complete some tasks, incorporating into its explanatory timelines time-consuming steps it often does not take. For instance, EPA claims it needs eight weeks to complete a public notice and comment process

1    before taking final action to approve or disapprove of a state plan. *See* Opp. at 18-19. But in the

2    past, including with regard to California's plan for implementing the original landfill emission

3    guidelines, EPA has regularly approved state plans via a "direct final rule" that would

4    automatically become "effective … without requiring further notice." *See* 64 Fed. Reg. 51,447,

5    51,477, 51,449-50 (Sept. 23, 1999); *see also, e.g.*, 62 Fed. Reg. 44,127 (Aug. 19, 1997) (direct

6    final rule approving Iowa's plan). This is likely in recognition of the fact that the *states* are

7    required to provide notice and a hearing on proposed plans *before* submitting them to EPA. 40

8    C.F.R. §§ 60.23(c)(1), (d). Accordingly, the time periods EPA allocates to a proposed rule and

9    public comment period, summary of comments and response, and development of a final rule

10   package for approval of state plans may be significantly overstated; using a direct final rule would

11   decrease the time needed for EPA's review and approval of state plans by more than 50 percent.

12          **2.     EPA's Proposed Remedy, Which Seeks to Extend EPA's Deadlines
                     Well Beyond What the Regulation Permits, Is Not Equitable**

13

14          EPA was required to review timely submitted state plans nearly 18 months ago—by

15   September 30, 2017 (four months after receiving them)—and to promulgate a federal plan 16

16   months ago—by November 30, 2017 (six months after the state plan deadline). Rather than

17   comply, EPA has engaged in a series of delay tactics aimed at undermining those obligations. *See*

18   State Pls.' Opp. to EPA's Mot. to Stay Case, Dkt. 73 (Nov. 9, 2018) (Stay Opp.). This is simply

19   not a case in which the agency is doing its best on limited resources to comply with its conceded

20   obligations; rather, the agency has steadfastly refused to comply with its obligations for over two

21   years, instead diverting resources to serial attempts to *avoid* those obligations. In response to that

22   delay, Plaintiffs' suggested remedy balances the need for expediency with the practical

23   impossibility of meeting those long-passed deadlines. In contrast, EPA's suggested remedy asks

24   the Court to essentially ignore EPA's blatant and sustained violation and substantially *enlarge* the

25   time it would otherwise be afforded under the regulations. That time—the time allotted by the

26   regulations—is the outer bound of reasonableness here.

27

28

1    EPA's extraordinary request is improper and inequitable for two additional reasons. First,

2    EPA principally complains that it has inadequate staffing to timely implement the Emission

3    Guidelines and also other court-ordered deadlines. *E.g.*, Opp. at 20, 24; Decl. of Penny Lassiter

4    ¶¶ 8, 12. This complaint is belied by the President's FY2020 budget request, which asked

5    Congress to *reduce* EPA's funding *by 31 percent* from 2019 levels.[10] If EPA were truly

6    concerned about faithfully executing its statutory obligations but did not have the staffing to do

7    so, it would request an *increase* in funding and hire *more* employees. And if courts deem this

8    argument acceptable in the face of such budget requests and workforce reductions, EPA will have

9    no incentive to seek the resources it needs to carry out its duties, and will perpetually evade them.

10   Second, as this Court well knows, rather than implement the Emission Guidelines as it is required

11   to do, EPA has engaged in at least one discretionary rulemaking to extend the timelines by up to

12   five years.[11] The law requires EPA to reallocate its resources from such *discretionary* exercises

13   (like reviewing and responding to public comments, which EPA states is a time-consuming

14   process, *e.g.*, Opp. at 23), toward its *mandatory* compliance obligations.

### 3. This Court Should Require EPA to Respond to Future-Submitted Plans within Two Months of Submission

17   EPA opines that "[a] district court has broad discretion to fashion equitable remedies," Opp.

18   at 7—including, presumably, discretion to allow EPA far more time to fulfill its duties than the

---

19   [10] *A Budget for a Better America: Fiscal Year 2020* at 93 (Mar. 11, 2019),

20   https://www.whitehouse.gov/wp-content/uploads/2019/03/budget-fy2020.pdf; *see* also Press
     Release, EPA FY 2020 Budget Proposal Released (Mar. 11, 2019),

21   https://www.epa.gov/newsreleases/epa-fy-2020-budget-proposal-released (EPA Administrator
     Andrew Wheeler describing the budget request as "commonsense"). In fact, this Administration

22   has taken many steps to reduce EPA's workforce—including imposing a hiring freeze,
     https://www.whitehouse.gov/presidential-actions/presidential-memorandum-regarding-hiring-

23   freeze, and directing EPA (and other agencies) to "[b]egin taking immediate actions to achieve
     near-term workforce reductions," by offering early retirement or buyout options,

24   https://www.whitehouse.gov/sites/whitehouse.gov/files/omb/memoranda/2017/M-17-22.pdf—
     that have resulted in EPA losing eight percent of its workforce in the first 18 months of the

25   Administration, https://www.washingtonpost.com/national/health-science/with-a-shrinking-epa-
     trump-delivers-on-his-promise-to-cut-government/2018/09/08/6b058f9e-b143-11e8-a20b-

26   5f4f84429666_story.html?utm_term=.7f9297758a03.

27   [11] EPA refers to this rulemaking throughout its response, Opp. at 3, 4 n.5, 17, but EPA
     does not—and cannot—contend that the rulemaking (even if finalized) would erase EPA's *past*

28   violations, nor this Court's authority to order EPA to remedy those violations. Indeed, EPA
     specifically acknowledges its violation and this Court's authority to order a remedy. Opp. at 2, 6.

1   regulations provide—but then turns around and argues that the Court is not authorized to order

2   EPA to respond to future-submitted state plans. *See* Opp. at 25 (citing *Sierra Club v. Browner*,

3   130 F. Supp. 2d 78, 93 (D.D.C. 2001), for the proposition that a district court's "limited statutory

4   authority under the citizen-suit provision vests only after EPA has failed to take some mandatory

5   action prior to a certain deadline"). But contrary to the situation in *Browner*, here EPA *has* "failed

6   to take some mandatory action prior to a certain deadline." Therefore, this Court has vested

7   authority to order EPA to perform its nondiscretionary duties. The regulations required EPA to

8   complete its review of state plans by September 30, 2017—four months after the May 30

9   submission deadline. The fact that EPA did not receive many state plans by that deadline

10  (because it actively discouraged states from timely submitting state plans, Stay Opp. at 5) does

11  not mean that EPA now has unlimited time to review future-submitted state plans. It is likely that,

12  absent EPA's actions, states would have timely submitted their state plans, and the Court can and

13  should ensure that EPA complies with its regulatory obligation to take final action on those plans,

14  once submitted, within a specific timeframe.

15      Moreover, there is a demonstrated need for close oversight in this matter. EPA has shown

16  that it has no intention of implementing the Emission Guidelines absent a specific court order,

17  that it will implement them only in the narrowest way required, *see* Opp. at 16 (asking that the

18  Court "limit relief at most to" New Jersey and New Mexico), and that it will only fulfill

19  additional mandatory obligations if it is hailed into court again, *see* Opp. at 3 n.4. It can readily be

20  anticipated, then, that where EPA receives additional state plan submissions, it will not likely

21  respond to them, unless and until it is specifically compelled to do so.

22  **III.   CONCLUSION**

23      For the foregoing reasons, Plaintiffs respectfully request that this Court grant Plaintiffs'

24  Motion for Summary Judgment, declare that EPA has violated the Clean Air Act, and order EPA

25  to implement the Emission Guidelines, 81 Fed. Reg. 59,276 (Aug. 29, 2016) by: (1) responding to

26  already submitted plans within thirty (30) days of this Court's order; (2) promulgating a federal

27  plan within five months of this Court's order; (3) responding to any future state plan submissions

28  within sixty (60) days after receiving them; and (4) filing status reports every sixty (60) days.

15

1   Dated:  March 19, 2019

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,
XAVIER BECERRA
Attorney General of California
GARY E. TAVETIAN
DAVID A. ZONANA
Supervising Deputy Attorneys General
TIMOTHY E. SULLIVAN
JULIA K. FORGIE

/s/ Elizabeth B. Rumsey
ELIZABETH B. RUMSEY
Deputy Attorneys General
*Attorneys for the State of California, by and through Attorney General Xavier Becerra and the California Air Resources Board*

TOMÁS CARBONELL*
Environmental Defense Fund
1875 Conn. Avenue, N.W. Suite 600
Washington, D.C. 20009
Telephone: (202) 572-3610
tcarbonell@edf.org

ALEX GEORGE HANAFI (CA SBN 200418)
Environmental Defense Fund
123 Mission Street
San Francisco, CA 94105
Telephone: (202) 572-3260
ahanafi@edf.org

/s/ Susannah L. Weaver
SUSANNAH L. WEAVER*
Donahue, Goldberg & Weaver, LLP
1008 Pennsylvania Avenue SE
Washington, DC 20003
Telephone: (202) 569-3818
susannah@donahuegoldberg.com

PETER ZALZAL*
RACHEL FULLMER*
Environmental Defense Fund
2060 Broadway, Suite 300
Boulder, CO 80302
Telephone: (303) 447-7214
pzalzal@edf.org
rfullmer@edf.org

*Attorneys for Environmental Defense Fund*

For the State of Illinois
KWAME RAOUL
Attorney General of Illinois
DANIEL I. ROTTENBERG*
Assistant Attorney General
Environmental Bureau
Illinois Attorney General's Office
69 W. Washington St., 18th Floor
Chicago, Illinois 60602
(312) 814-3816
DRottenberg@atg.state.il.us

For the State of Maryland
BRIAN E. FROSH
Attorney General of Maryland
LEAH J. TULIN*
Assistant Attorney General
200 St. Paul Place
Baltimore, Maryland 21202
(410) 576-6962
ltulin@oag.state.md.us

(*Continued on following page*)

16

| | | |
|---|---|---|
| 1 | For the State of New Mexico | For the State of Oregon |
| | HECTOR BALDERAS | ELLEN F. ROSENBLUM |
| 2 | Attorney General of New Mexico | Attorney General of Oregon |
| | BILL GRANTHAM* | PAUL GARRAHAN* |
| 3 | Assistant Attorney General | Attorney-in-Charge |
| | 201 Third Street NW, Suite 300 | Natural Resources Section |
| 4 | Albuquerque, New Mexico 87102 | Oregon Department of Justice |
| | (505) 717-3520 | 1162 Court Street, N.E. |
| 5 | wgrantham@nmag.gov | Salem, Oregon 97301-4096 |
| | | (503) 947-4342 |
| 6 | | paul.garrahan@doj.state.or.us |

For the State of New Mexico
HECTOR BALDERAS
Attorney General of New Mexico
BILL GRANTHAM*
Assistant Attorney General
201 Third Street NW, Suite 300
Albuquerque, New Mexico 87102
(505) 717-3520
wgrantham@nmag.gov

For the State of Oregon
ELLEN F. ROSENBLUM
Attorney General of Oregon
PAUL GARRAHAN*
Attorney-in-Charge
Natural Resources Section
Oregon Department of Justice
1162 Court Street, N.E.
Salem, Oregon 97301-4096
(503) 947-4342
paul.garrahan@doj.state.or.us

For the Commonwealth of Pennsylvania
JOSH SHAPIRO
Attorney General of Pennsylvania
MICHAEL J. FISCHER*
Chief Deputy Attorney General
ROBERT A. REILEY
Assistant Director, Pennsylvania Department
of Environmental Protection
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
(215) 560-2171
mfischer@attorneygeneral.gov

For the State of Rhode Island
PETER NERONHA
Attorney General of Rhode Island
GREGORY S. SCHULTZ
Special Assistant Attorney General
RI Office of Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400
gschultz@riag.ri.gov

For the State of Vermont
THOMAS J. DONOVAN, JR.
Attorney General of Vermont
NICHOLAS F. PERSAMPIERI*
Assistant Attorney General
Office of the Vermont Attorney General
109 State Street
Montpelier, Vermont 05609
(802) 828-3186
nick.persampieri@vermont.gov

*Admitted to practice *pro hac vice*