LESLIE M. HILL (D.C. Bar No. 476008)
Leslie.Hill@usdoj.gov
MARTHA C. MANN
Martha.Mann@usdoj.gov
United States Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
601 D Street N.W., Suite 8000
Washington D.C. 20004
Telephone (202) 514-0375
Facsimile (202) 514-8865

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA, *et al*.<br><br>Plaintiffs,<br><br>and<br><br>ENVIRONMENTAL DEFENSE FUND,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,<br><br>Defendants. | Case No. 4:18-cv-03237-HSG<br><br>**EPA'S REPLY IN SUPPORT OF EPA'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Date:   April 25, 2019<br>Time:   2:00 p.m.<br>Place:  2, 4th Floor, Oakland Courthouse |

# TABLE OF CONTENTS

I.    Injunctive Relief ..................................................................................................... 1

II.   Standing Analysis .................................................................................................. 8

III.  Conclusion ............................................................................................................ 12

# **TABLE OF AUTHORITIES**

**Cases**

*Alaska v. National Parks & Conservation Ass'n, Inc.*,
   Nos. 91-36297, 91-36299, 91-36303, 1992 WL 361253 (9th Cir. 1992) ..................... 10

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*,
   458 U.S. 592 (1982) ................................................................................................ 10

*Cal. Cmtys. Against Toxics v. Pruitt*,
   241 F. Supp. 3d 199 (D.D.C. 2017) .......................................................................... 4

*Communities for a Better Env't v. EPA*,
   No. C 07-03678 JSW, 2008 WL 1994898 (N.D. Cal. May 5, 2008) ............................. 4

*Council v. Bellon*,
   732 F.3d 1131 (9th Cir. 2013) .............................................................................. 8, 9

*Cronin v. Browner*,
   90 F. Supp. 2d 364 (S.D.N.Y. 2000) ........................................................................ 4

*Ctr. for Biological Diversity v. United States Dep't of Interior*,
   563 F.3d 466 (D.C. Cir. 2009) .................................................................................. 11

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) ................................................................................................ 11

*Dep't of Commerce v. U.S. House of Representatives*,
   525 U.S. 316 (1999) ................................................................................................ 10

*In re Ozone Designation Litig.*,
   286 F. Supp. 3d 1082 (N.D. Cal. 2018) ................................................................. 3, 4

*Lamb-Weston, Inc. v. McCain Foods, Ltd.*,
   941 F.2d 970 (9th Cir. 1991) .................................................................................. 11

*Massachusetts v. EPA*,
   549 U.S. 497 (2007) ........................................................................................ 8, 9, 10

*Massachusetts v. Mellon*,
   262 U.S. 447 (1923) .................................................................................................. 10
*Natural Res. Def. Council v. EPA*,
   966 F.2d 1292 (9th Cir. 1992) ..................................................................................... 3
*Natural Res. Def. Council, Inc. v. Train*,
   510 F.2d 692 (D.C. Cir. 1974) ................................................................................. 3, 4
*Nevada v. Burford*,
   918 F.2d 854 (9th Cir. 1990) ..................................................................................... 10
*Ozone Designation Litig.*,
   286 F.Supp.3d 1082 (N.D. Cal. 2018) ......................................................................... 3
*Sierra Club v. Browner*,
   130 F. Supp. 2d 78 (D.D.C. 2001) ........................................................................... 7, 8
*Sierra Club v. Johnson*,
   444 F.Supp.2d 46 (D.D.C. 2006) .............................................................................. 4, 6
*Sierra Club v. Thomas*,
   658 F.Supp. 165 (N.D. Cal. 1987) ............................................................................... 4
*Sierra Club v. Thomas*,
   828 F.2d 783 (D.C. Cir. 1987) ..................................................................................... 4
*Sierra Club v. Whitman*,
   268 F.3d 898 (9th Cir. 2001) ....................................................................................... 7
*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ....................................................................................................... 7
*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ................................................................................................... 12
*United Steelworkers of Am. v. Rubber Mfrs. Ass'n*,
   783 F.2d 1117 (D.C. Cir. 1986) ................................................................................... 4
*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982) ..................................................................................................... 3

EPA'S OPP. & CROSS-MOTION                     iii
CASE NO. 4:18-cv-03237-HSG

**Statutes**

5 U.S.C. § 553 .......................................................................................................................... 1
42 U.S.C. § 7410(a) ............................................................................................................. 2, 5
42 U.S.C. § 7604(a) ................................................................................................................ 7
42 U.S.C. § 7604(a)(2) ............................................................................................................ 8
42 U.S.C. § 7607(b)(1) ......................................................................................................... 10

**Regulations**

60 Fed. Reg. 9918 (Mar. 12, 1996) ........................................................................................ 6
64 Fed. Reg. 51,447 (Sept. 23, 1999) .................................................................................... 2
78 Fed. Reg. 41,850 (July 12, 2013) ...................................................................................... 3
81 Fed. Reg. 59,276 (Aug. 29, 2016) .................................................................................. 6, 7
82 Fed. Reg. 56,172 (Nov. 28, 2017) ..................................................................................... 3
83 Fed. Reg. 44,746 (Aug. 31, 2018) ..................................................................................... 5
83 Fed. Reg. 54,527 (Oct. 30, 2018) ...................................................................................... 5

Pursuant to Civil L.R. 7-3(a), Defendants, the United States Environmental Protection Agency and Andrew R. Wheeler, in his official capacity as Administrator of the United States Environmental Protection Agency (collectively, "EPA"), file this reply in support of EPA's cross-motion for summary judgment as to remedy (Dkt. No. 92, "EPA Br.").

## I.   Injunctive Relief

In its cross-motion for summary judgment, EPA presented the uncontroverted Declaration of Penny Lassiter, the Acting Director of the Sector Policies and Programs Division within EPA's Office of Air and Radiation, describing her "best estimates of the <u>minimum</u> times needed for" final action on the submitted state plans and promulgation of a federal plan in light of the available resources, the need for specialized expertise, the complexity of the municipal solid waste landfills source category, and on-going work under court-ordered deadlines. Lassiter Decl. ¶ 10-29 (Dkt. No. 92-1). Plaintiffs offer scant response to the detailed recitation of the various tasks required to complete these actions and the minimum timeframes necessary to complete each. Instead, Plaintiffs continue to demand their own, unsubstantiated time periods: thirty days for action on state plans and five months to promulgate a federal plan. Pls.' Reply at 12; *see* Pls.' Mot. at 19-21 (Dkt. No. 85).

Plaintiffs incorrectly allege that EPA's estimate of 8 weeks to issue a proposed rule prior to taking final action on state plans is unnecessary because, they assert, "EPA has regularly approved state plans via a 'direct final rule' that would automatically become 'effective . . . without requiring further notice.'" Pls.' Reply at 12-13 (Dkt. No. 93). While the direct final rule mechanism is within the agency's discretion, it is not clear that it is appropriate for the agency's action on any or all of the state plans at issue here and, in any event, the rulemaking process must comply with 5 U.S.C. § 553.[1]

---

[1] A Guide to the Rulemaking Process prepared by the Office of the Federal Register describes a direct final rule as "[w]hen an agency decides that a proposed rule is unnecessary because it would only relate to routine or uncontroversial matters, it may publish a direct final rule in the Federal Register." A Guide to the Rulemaking Process (Office of the Federal Register), *https://www.federalregister.gov/uploads/2011/01/the_rulemaking_process.pdf*.

When the agency takes action using a direct final rule, it must still send the rule to the Office of Federal Register for publication, which could take up to two weeks following signature of the rule.  Lassiter Decl. ¶ 20.  More importantly, what Plaintiffs omit from their argument and from the quote of the exemplary *Direct Final Rule*, 64 Fed. Reg. 51,447 (Sept. 23, 1999), Pls.' Reply at 13, is that a direct final rule can become effective after publication "without further notice, <u>unless EPA receives relevant adverse comments</u> by [a date certain after publication]."  64 Fed. Reg. at 51,447 (emphasis added).  However, "[i]f EPA receives such comments, then it will publish a timely withdrawal in the Federal Register informing the public that this rule will not take effect."  *Id*.  If a direct final rule is then withdrawn, the agency will either consider the comments in the context of a concurrent proposal, if one was issued, or start the process over by issuing a proposed rule and taking public comment as described in the Lassiter Declaration.  Lassiter Decl. ¶ 20.[2]

The mere fact that states are required to subject their plans to notice and a hearing before submitting plans to EPA, Pls.' Reply at 13, does not indicate that the direct final rule approach will be appropriate for agency action on any of the state plans at issue here.  To the contrary, given the interest in municipal solid waste landfills generally, it is reasonable to anticipate comments on these state plans.[3]  It is also reasonable to anticipate adverse comments to state plans because many (if not all) direct final rules on state implementation plans ("SIPs") submitted under section 110(a), 42 U.S.C. § 7410(a), in the last several years had to be

---

[2] *Id*. ("In a direct final rule, the agency states that the rule will go into effect on a certain date, unless it gets substantive adverse comments during the comment period.  An agency may finalize this process by publishing in the Federal Register a confirmation that it received no adverse comments.  If adverse comments are submitted, the agency is required to withdraw the direct final rule before the effective date.  The agency may re-start the process by publishing a conventional proposed rule or decide to end the rulemaking process entirely.  The direct final rule process is a rulemaking.").

[3] Indeed, the existence of this litigation as well as the petitions directly challenging the Emission Guidelines, *see Natural Res. Def. Council v. Pruitt*, No. 17-1157 (D.C. Cir.) and *National Waste & Recycling Ass'n v. EPA*, No. 16-1371 (consolidated) (D.C. Cir.), suggest interest in future EPA action and the potential for significant public comments rather than Plaintiffs' speculation that no adverse comments will be received.

withdrawn because of adverse comments, despite a similar requirement that those plans be submitted to EPA after "reasonable notice and public hearings," *id*. § 7410(a)(1). *See, e.g.*, 78 Fed. Reg. 41,850 (July 12, 2013) (withdrawing a direct final rule related to a portion of a North Carolina SIP revision as a result of receiving a comment from a single commenter that could be viewed as adverse); 78 Fed. Reg. 41,851 (July 12, 2013) (same with regard to a Georgia SIP revision); 82 Fed. Reg. 56,172 (Nov. 28, 2017) (withdrawing a direct final rule to approve a SIP revision from Missouri for the 2008 Ozone National Ambient Air Quality Standard as a result of receiving negative comments). Thus, Plaintiffs have failed to substantiate that EPA could complete action on the state plans in less time than described in the Lassiter Declaration. *See* Lassiter Decl. ¶¶ 13, 17-22. The allusion to direct final rules is Plaintiffs' sole – and failed – attempt to contradict the detailed and substantiated Lassiter Declaration regarding the time required to take action on the state plans.[4] Plaintiffs make no effort to contradict the Declaration as to the time required for EPA to promulgate a federal plan.

As noted in EPA's opening brief, EPA Br. at 7, a district court has broad discretion to fashion equitable remedies. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-13 (1982). In a suit alleging violation of a congressionally mandated duty, the district court deploys its equitable authorities to fashion a remedy by considering whether "the official involved . . . has in good faith employed the utmost diligence in discharging his statutory responsibilities." *Natural Res. Def. Council, Inc. v. Train*, 510 F.2d 692, 713 (D.C. Cir. 1974) ("*Train*"). Plaintiffs posit that an inflexible, literal "impossibility" test should be used to determine whether EPA is entitled to the time it seeks to take final action on submitted state plans and to promulgate a federal plan. *See* Pls.' Reply at 12 (Dkt. No. 93). The Ninth Circuit has adopted

---

[4] *See In re Ozone Designation Litig.*, 286 F. Supp. 3d 1082, 1088 (N.D. Cal. 2018) (noting in deadline matter that EPA had "shown that it would be impracticable" and that plaintiffs failed to submit "sufficient factual evidence" to the contrary).

EPA'S REPLY
CASE NO. 4:18-cv-03237-HSG
3

no such strict test,[5] and Plaintiffs fail to account for the pragmatic application of this test in the courts that have adopted it. Indeed, this Court has noted that courts "recognize pragmatic considerations in tailoring the appropriate remedy for non-compliance." *In re Ozone Designation Litig.*, 286 F. Supp. 3d at 1087.

In *Train*, the leading case on the subject of an agency's failure to meet statutory deadlines, the D.C. Circuit recognized two types of circumstances that might necessarily delay agency action and make it infeasible to comply with a particular deadline: (1) budgetary and manpower constraints, and (2) the need for an agency to have more time to sufficiently evaluate complex technical issues. 510 F.2d at 712-13. With respect to the former, courts can consider whether a statutory deadline would impose "budgetary commitments and manpower demands . . . [that are] beyond the agency's capacity or would unduly jeopardize the implementation of other essential programs[.]" *Id*. at 712. Even in *California Communities Against Toxics v. Pruitt*, one of the District Court for the District of Columbia cases cited by Plaintiffs in support of an "impossibility" test, the court acknowledged the agency's evidence did not demonstrate absolute, literal impossibility, but nonetheless found that the plaintiffs' timeline was "simply too compressed at this stage to afford any reasonable possibility of compliance." 241 F. Supp. 3d 199, 207 (D.D.C. 2017) (citing *Sierra Club v. Johnson*, 444 F.Supp.2d 46, 58 (D.D.C. 2006)). With respect to the latter, "[t]he public has a significant interest in ensuring that the government does not [act] via a process that emphasizes expediency over quality and accuracy." *Cronin v. Browner*, 90 F. Supp. 2d 364, 373 (S.D.N.Y. 2000). In setting deadlines, courts have also considered the agency's need for time to act in a manner that would withstand the scrutiny of subsequent challenge. *See, e.g.*, *Sierra Club v. Thomas*, 828 F.2d 783, 798-99 (D.C. Cir. 1987); *United Steelworkers of Am. v. Rubber Mfrs. Ass'n*, 783 F.2d 1117, 1120 (D.C. Cir. 1986) (holding that judicial imposition of overly hasty timetable on agency would ill serve the public interest); *Communities for a Better Env't v. EPA*, No. C 07-

---

[5] *See Natural Res. Def. Council, Inc. v. EPA*, 966 F.2d 1292, 1299-300 (9th Cir. 1992) (citing *Train* and describing *Train*'s approach that a "court may need to give agency some leeway due to budgetary commitments or technological problems").

03678 JSW, 2008 WL 1994898, at *3 (N.D. Cal. May 5, 2008) (stating that "courts should not impose an infeasible schedule upon an agency in order to punish the agency for its delinquency"); *Sierra Club v. Thomas*, 658 F.Supp. 165, 175 (N.D. Cal. 1987) ("Nevertheless, since the purpose of this order is to protect the public interest and not to punish EPA, the Court would extend EPA's time to compensate for its foot-dragging if it were convinced that doing so was necessary for the promulgation of workable regulations."). In short, even courts using the *Train* approach to establishing a remedy examine all relevant facts and circumstances and evaluate the timeframe identified by the agency as being necessary to make well-reasoned, scientifically supportable, and defensible decisions.

Plaintiffs also decry EPA's discretionary work on the proposed rule that would amend the emission guidelines at issue here, 81 Fed. Reg. 59,276 (Aug. 29, 2016) (codified at 40 C.F.R. §§ 60.30f-60.41f) ("Emission Guidelines"), by extending various deadlines, 83 Fed. Reg. 54,527 (Oct. 30, 2018) ("Landfills Proposal") as a discretionary rulemaking. Pls.' Reply at 14. As EPA stated in the Landfills Proposal, the agency believes the proposed changes are necessary to align the state plan submission and review process with the deadlines for action on state implementation plans under CAA section 110(a), 42 U.S.C. § 7410(a) and to account for the work, effort, and time required to prepare and review state plans and prepare a federal plan, *see* 83 Fed. Reg. at 54530, 44771-72. The Lassiter Declaration also describes the complexity of these rulemakings and the time necessary to complete them, which is why some of EPA's proposed timeframes exceed the time allowed under the present regulation.[6] Lassiter Decl. ¶¶ 9-12, 14, 30-32.

Plaintiffs' hand-waving over the President's budget request for EPA for Fiscal Year

---

[6] Referring to the *Proposed Rule*, 83 Fed. Reg. 54,527 (Oct. 30, 2018), Plaintiffs incorrectly states that "EPA does not – and cannot – contend that the rulemaking (even if finalized) would erase EPA's past violations, nor this Court's authority to order to EPA to remedy those violations." Pls. Opp. at 14. Indeed, EPA has stated the opposite. If the Landfills Proposal and the predicate proposal creating a new Subpart Ba (general requirements for EPA action on state plans and promulgation of federal plans), *Proposed Rule*, 83 Fed. Reg. 44,746 (Aug. 31, 2018) (referred to as the "ACE Rule proposal"), are finalized, such action could moot the claims at issue in this litigation. EPA's Motion to Stay at 7 (Dkt. No. 70).

2020 (October 1, 2019 through September 30, 2020) is similarly unavailing. First, the budget request is just that: the Executive's request to Congress. The amount of the actual EPA appropriation is entirely speculative at this time. Second, the overall budget request is just that: the overall request for operations and maintenance of the entire agency, not the Natural Resources Group within the Sector Policies and Programs Division that undertakes work on municipal solid waste landfills or the Regional Offices with responsibility for action on state plans. In any event, the timeframes offered by EPA would commence from the date of the Court's order in this matter, ranging from four months to twelve months, meaning that much of the work under such an order would be complete within Fiscal Year 2019 (October 1, 2018 through September 30, 2019).

Plaintiffs also mistakenly allege that "EPA does not refute that state plans . . . at issue here are revisions, not new plans." Pls.' Reply at 12. First, Plaintiffs did not allege such in their opening brief, so it is unclear what Plaintiffs believe there was for EPA to "refute" in its cross-motion and response. Second, to the extent that Plaintiffs intend to suggest that the time required for EPA to act on the state plans is somehow less because the states submitted different plans under different emission guidelines many years ago, there is no evidence of that before the court. EPA last required states to submit state plans for municipal solid waste landfills over 20 years ago. *Final Rule*, 60 Fed. Reg. 9905 (Mar. 12, 1996). As explained in the Declaration of Penny Lassiter (and not refuted by Plaintiffs), the Emission Guidelines issued in 2016 are "far more complex" than the guidelines from "decades past." Lassiter Decl. ¶ 14. There also have been many changes in the industry since EPA published the 1996 emission guidelines, including "changes in landfill characteristics (i.e., size, ownership, age) and population; proliferation of landfill gas energy projects; the availability of more comprehensive data; the introduction of new techniques for monitoring landfill gas emissions; increased public opposition; increased cost of disposal; and changes in emission profiles and per landfill compliance costs." *Id*. at ¶ 11(e). EPA issued the new Emission Guidelines in 2016, in part, to "reflect changes to the population of landfills." 81 Fed. Reg. 59,276 (Aug. 29, 2016). For example, the Emission Guidelines reduced the nonmethane organic compounds emission threshold for the installation

CASE NO. 4:18-cv-03237-HSG

6

and removal of a gas collection and control system and made substantive changes to monitoring, recordkeeping, and recording requirements.  *See*, *e.g.*, *id*. at 59,278-79; 59,287-59,291.  Given the significant differences between the 1996 and 2016 Emission Guidelines, Plaintiffs' claim that states merely need to revise their old plans rings hollow.  This is particularly true when a state, such as California, submits its own state plan that it claims is at least as stringent, if not more stringent, as the Emission Guidelines.  California submitted its plan based on its landfill methane regulation that became effective in 2010.  *See* California's State Plan, Ex.12 (Dkt. No. 87-13) and Lassiter Decl. ¶ 16.  There are significant differences between California's plan and the Emission Guidelines.  For example, the standards for gas collection and control systems in the Emission Guidelines are based on reductions of nonmethane organic compounds, whereas California's plan is based on methane reductions.  *Cf.*, *e.g.,* 81 Fed. Reg. at 59,278-79 *with* California's State Plan, Ex.12 (Dkt. No. 87-13).  The California plan also has different reporting and recordkeeping requirements.  *Cf.*, *e.g.*, 81 Fed. Reg. at 59,288-59,291 *with* California's State Plan, Ex.12 (Dkt. No. 87-13).

Finally, Plaintiffs maintain that the Court "should require EPA to respond to future-submitted plans within two months of submission."  Pls.' Reply. at 14; *see* Pls.' Mot. at 21.  To order relief, the Court must have jurisdiction over the claim.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (where subject matter jurisdiction does not exist, "the court cannot proceed at all in any cause"); *Sierra Club v. Whitman*, 268 F.3d 898, 901 (9th Cir. 2001) (holding that if there is no non-discretionary duty, the Court must dismiss the claim for lack of jurisdiction).  As to state plans that may be submitted in the future, EPA has not missed any deadline to take final action on such plans.  As EPA stated in its cross-motion, the district court's "limited statutory authority under [the citizen-suit provision] vests only *after* EPA has failed to undertake some mandatory action prior to a certain deadline," so this Court lacks statutory authority to grant relief.  *Sierra Club v. Browner*, 130 F. Supp. 2d 78, 93 (D.D.C. 2001) (stating that "in advance of a deadline's expiration, the agency has not yet failed to undertake its duty"); 42 U.S.C. § 7604(a).  Although referring to future, as-of-yet unsubmitted state plans, Plaintiffs nonetheless claim that "EPA *has* 'failed to take some mandatory action

1 prior to a certain deadline.'"  Pls.' Reply at 15.  While there are *some* present mandatory acts at

2 issue in this matter,[7] action on unsubmitted state plans is not among the acts that EPA has failed

3 to perform.  If and when additional states submit plans, mandatory duties will arise.  Any failure

4 to act on the plans within the required time would provide jurisdiction and a waiver of sovereign

5 immunity to suit.  But there is no present duty to act on hypothetical state plans submitted in the

6 future.  Plaintiffs do not address this jurisdictional defect; instead, Plaintiffs seem to suggest that

7 the Court should overlook the lack of jurisdiction because Plaintiffs believe that EPA

8 discouraged states from submitting plans.  *Id*.  Even if that were true, there is no exception to

9 the jurisdictional prerequisites for a mandatory duty claim.  The Court must deny this aspect of

10 Plaintiffs' requested relief.

## II.   Standing Analysis

In Plaintiffs' opening brief, the Plaintiff States did not contend that the "special solicitude" allowed to states in the standing analysis under *Massachusetts v. EPA*, 549 U.S. 497, 516-26 (2007), applies here; instead, Plaintiff States asserted only that the principle "strengthen[s] the conclusion that the States have standing to maintain this action."  Pls.' Mot. at 12.  Nor did Plaintiffs previously describe the rights at issue here as "procedural rights" that may be subject to a diminished showing demonstrate standing.  *See* Pls.' Reply at 1, 3.  Plaintiff States now concede that they lack standing unless a lower standard for causation and redressability applies.

Plaintiffs States argue that, if they are due special solicitude in the standing analysis, then the holding of *Washington Environmental. Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013) ("*Bellon*"), is wholly inapplicable here.  Pls.' Reply at 4.  Although in *Bellon*, the Ninth Circuit noted that the circumstances of that case did not involve the lowered threshold for causation and redressability, *id*. at 1145, nothing in the case suggests that, had the lower threshold applied, the plaintiffs simply could have alleged that agency inaction relating to any

---

[7] EPA maintains that its failure to act under the regulations at issue here is not failure "to perform any act or duty under this chapter which is not discretionary with the Administrator," under 42 U.S.C. § 7604(a)(2).  *See* EPA Mot. to Dismiss at 6-8 (Dkt. No. 28).

emission of greenhouse gases ("GHG") was sufficient to demonstrate standing. Indeed, the court emphasized that "even if [it] assume[d] that Plaintiffs' members are entitled to a comparable relaxed standard, the extension of *Massachusetts* to the present circumstances would not be tenable." *Id*. The circumstances identified by the court in *Bellon* – Plaintiffs "insist[ing] that any and all contribution of greenhouse gases must be curbed and that this justifies standing" – are the same here. *Id*. The court emphasized that:

> The Supreme Court, however, did not endorse such a position, even as it acknowledged that it is error to assume that "a small incremental step, because it is incremental, can never be attacked in a federal judicial forum." 549 U.S. at 524, 127 S.Ct. 1438. Rather, the Court observed that the GHG emission levels from motor vehicles were a "meaningful contribution" to global GHG concentrations, given that the U.S. motor-vehicle sector accounted for 6% of world-wide carbon dioxide emissions. Here, the GHG emissions are from five oil refineries in Washington, making up 5.9% of emissions in Washington. While this may be a significant portion of state emissions, Plaintiffs do not provide any evidence that places this statistic in national or global perspective to assess whether the refineries' emissions are a "meaningful contribution" to global GHG levels. Given the lack of evidence on this point and the fact that Plaintiffs are not sovereigns, we cannot logically apply the reasoning set forth in *Massachusetts* to this case.

*Id*. at 1145-46. The States' attenuated line of causation – alleging that implementation of the Emission Guidelines will reduce methane emissions, that methane is a greenhouse gas, and that GHGs cause a variety of climate-related injuries to their quasi-sovereign interests in their shorelines, forests, and roads, such as increased fires and sea-level rise – remains insufficient to establish causation and redressability. The States have failed to meet their burden.

Plaintiffs' opening brief also alleged that the States have a quasi-sovereign interest in direct health impacts to their citizens upon which they can bring suit against the United States. Pls.' Mot. at 12-13, 6-7. In their reply, Plaintiffs States partially recast that assertion of interest as an interest in "increased costs to the States' healthcare systems," rather than the health of states' citizens, borne by the states allegedly resulting from EPA's inaction. Pls.' Reply at 6. The causal chain between EPA's inaction and that interest is even more attenuated, and

Plaintiffs' mere suggestion of increased costs, without support, is insufficient to meet Plaintiffs' burden to demonstrate an injury in fact.[8]  *See Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 329 (1999) ("To prevail on a Federal Rule of Civil Procedure 56 motion for summary judgment—as opposed to a motion to dismiss—however, mere allegations of injury are insufficient.  Rather, a plaintiff must establish that there exists no genuine issue of material fact as to justiciability or the merits.").  Thus, alleged injury from increased healthcare costs cannot support the Plaintiff States' standing.  Further, as to the States' interest in the "health of their citizens," as EPA noted in its opening brief, EPA Mot. at 9, the Supreme Court made clear that a "State does not have standing as *parens patriae* to bring an action against the Federal Government."  *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 610 n.16 (1982) (citing *Massachusetts v. Mellon*, 262 U.S. 447, 485-86 (1923)) ("*Snapp*").  Plaintiffs argue that the statement in *Snapp* is dicta.  Pls.' Reply at 6.  That is incorrect.  Indeed, this is a settled issue.  *See Nevada v. Burford*, 918 F.2d 854, 858 (9th Cir. 1990) (relying on "the Supreme Court's clear statement in *Snapp*"); *accord Alaska v. National Parks & Conservation Ass'n, Inc.*, Nos. 91-36297, 91-36299, 91-36303, 1992 WL 361253, at *1 (9th Cir. 1992) (same).

Plaintiffs' reliance on *Massachusetts v. EPA*, 549 U.S. at 520 n.17, in support of their argument that they can bring suit in *parens patriae* based on their interest in the health of their citizens is misplaced.  In *Massachusetts v. EPA*, the Supreme Court opined that a state was entitled to "special solicitude" in the standing analysis because it had a procedural right (to challenge the rejection of a rulemaking petition) afforded by Congress in 42 U.S.C. § 7607(b)(1), and because it had a "stake in protecting its quasi-sovereign interests."  549 U.S. at 520.  While the opinion refers to the state's quasi-sovereign interests and references *parens patriae* standing, the Court ultimately held that Massachusetts established standing based on evidence establishing "a particularized injury [it suffered] in its capacity as a landowner."  *Id*. at

---

[8] *See* Declaration of Rupa Basu (Dkt. No. 87-14) (describing alleged health impacts from climate change, but presenting no evidence of increase costs to the state's healthcare system).

522. In short, the Supreme Court's holding was based on an injury to a state's proprietary interest and not injury to the health of its citizenry, an interest it cannot protect acting as *parens patriae*. *See Ctr. for Biological Diversity v. United States Dep't of Interior*, 563 F.3d 466, 475-79 (D.C. Cir. 2009) (reaching same conclusion).

As noted in EPA's opening brief, because the States and EDF have failed to demonstrate standing on the basis of alleged climate-related injuries, their remaining alleged injuries are limited to those from non-methane organic compounds, such as volatile organic compounds, and hazardous air pollutants emitted from landfills. EPA's Br. at 13 (*see* Pls.' Mot. at 13-14). Plaintiff States allege harm from direct injuries to their citizens. As explained above, the States cannot act as *parens patriae* for such alleged injuries. That leaves EDF's allegations to support standing on the basis of those injuries.

As EPA explained, even if the Court finds the declarations of two EDF members who live in New Jersey and New Mexico sufficient to confer standing, the limited scope of those alleged injuries limits the relief that the Court can order. EPA Br. at 16. "Injunctive relief, however, must be tailored to remedy the specific harm alleged." *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991); *see DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006) (limiting remedy "to the inadequacy that produced the injury in fact that the plaintiff has established"). Here, Plaintiffs seek a federal plan applicable to each state that has not submitted a state plan and, for those states that have submitted a plan, an order that EPA take action on each of those plans. In response, Plaintiffs argue not that remedy must be limited to the injury-in-fact that the plaintiff has established, but that "courts have routinely granted relief that is national in scope even though an organization's declarations detail harms to individual members within certain states." Pls.' Reply at 11. On the contrary, none of the cases cited by Plaintiffs holds that the requirement to tailor a remedy to the harm demonstrated is inapplicable in these circumstances; rather, in each of the cited cases, the issue of whether a plaintiff's standing demonstration must have the same breadth as the proposed relief does not appear to have been raised.

With regard to EDF's demonstration of injury, EDF again refers to statistics regarding

the proximity of its members to covered landfills. Declaration of Steven Koller (Dkt. No. 93-2). Plaintiffs' apparent argument is that, if the Court finds that one of EDF's members, see, e.g., Declaration of Trisha Sheehan, (Dkt. No. 87-19), demonstrates standing, then the Court should assume that it is probable that a member in each of the fifty states could demonstrate similar injury based on the number of members that allegedly live within one-quarter, one, or three miles of a covered landfill. Plaintiffs provide additional statistics breaking down these numbers on a state-by-state basis in the Koller Declaration, tbl. 1. However, Plaintiffs provide no explanation as to the implications of the statistics presented in the Koller Declaration on alleged injury or threatened injury to members at the various distances from covered landfills or that those members are even impacted in any way. More importantly, Plaintiffs' statistical proposition – that in addition to its declarants living in New Jersey and New Mexico, it has members living near covered landfills in each of the other 48 states -- is insufficient to demonstrate standing for the broad nationwide relief sought. The Supreme Court has held that standing cannot be established based on the "statistical probability that some of [plaintiff's] members are threatened with concrete injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009). Rather, Plaintiffs must independently demonstrate particularized harm to named members for each claim and form of relief, which it unquestionably has failed to do for members in states other than New Jersey and New Mexico. *See id*. at 493, 498-99. Plaintiffs bear the burden of established the breadth of injury that would support an equivalent breadth of injunctive relief and have not done so here.

**III.   CONCLUSION**

For the reasons presented above and in EPA's opening brief, the Court should deny Plaintiffs' motion, grant EPA's cross-motion, and enter EPA's proposed order.

//
//
//
//
//

Respectfully submitted,

Date: April 2, 2019

   /s/ Leslie M. Hill
LESLIE M. HILL (D.C. Bar No. 476008)
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
601 D Street N.W., Suite 8000
Washington D.C. 20004
Leslie.Hill@usdoj.gov
Telephone (202) 514-0375
Facsimile (202) 514-8865

*Attorneys for Defendant*

Of Counsel:

Karen Palmer
Matthew Marks
Office of General Counsel
United States Environmental Protection Agency

EPA'S REPLY
CASE NO. 4:18-cv-03237-HSG

13