XAVIER BECERRA
Attorney General of California
GARY E. TAVETIAN
DAVID A. ZONANA
Supervising Deputy Attorneys General
TIMOTHY E. SULLIVAN, SBN 197054
ELIZABETH B. RUMSEY, SBN 257908
JULIA K. FORGIE, SBN 304701
Deputy Attorneys General
  1515 Clay Street, 20th Floor
  P.O. Box 70550
  Oakland, CA 94612-0550
  Telephone: (510) 879-0860
  liz.rumsey@doj.ca.gov

*Attorneys for the State of California,
by and through Attorney General Xavier Becerra,
and the California Air Resources Board*

*Additional counsel listed on signature page*

SUSANNAH L. WEAVER
Donahue, Goldberg & Weaver, LLP
  1008 Pennsylvania Avenue SE
  Washington, DC 20003
  Telephone: (202) 569-3818
  susannah@donahuegoldberg.com

PETER ZALZAL
RACHEL FULLMER
  Environmental Defense Fund
  2060 Broadway, Suite 300
  Boulder, CO 80302
  Telephone: (303) 447-7214
  pzalzal@edf.org
  rfullmer@edf.org

*Attorneys for Environmental Defense
Fund*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| **STATE OF CALIFORNIA, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; et al.,**<br><br>Defendants. | Case No. 4:18-cv-03237-HSG<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR RELIEF FROM JUDGMENT**<br><br>Judge: The Hon. Haywood S. Gilliam, Jr.<br><br>HEARING REQUESTED |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

LEGAL STANDARD............................................................................................................ 6

ARGUMENT ........................................................................................................................ 7

I.      The Court Retains Discretion To Enforce a November 6th Deadline
Notwithstanding That EPA Amended Its Own Deadline Regulations After
Entry of Final Judgment........................................................................................ 8

II.     EPA Did Not Carry Its Burden To Show That a November 6th Deadline Is
Inequitable........................................................................................................... 10

       A.      Revision of the judgment is not warranted by any changes in fact or
law.......................................................................................................... 10

              1.     New facts weigh in favor of maintaining the November 6th
deadline. ...................................................................................... 10

              2.     A change in law unilaterally effected by a losing party does
not, absent a change in relevant facts, entitle that party to
relief from judgment. ................................................................... 12

       B.      The modification is not suitably tailored to the changed
circumstances. ....................................................................................... 15

CONCLUSION ................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

CASES

*Agostini v. Felton*
    521 U.S. 203 (1997) .............................................................................................2, 13

*Am. Horse Prot. Ass'n, Inc. v. Watt*
    694 F.2d 1310 (D.C. Cir. 1982) ................................................................................15

*Bahr v. EPA*
    836 F.3d 1218 (9th Cir. 2016) ..................................................................................12

*Bellevue Manor Ass'ns. v. United States*
    165 F.3d 1249 (9th Cir. 1999) ............................................................................ *passim*

*Chem. Prods. & Distribs. Ass'n v. Helliker*
    463 F.3d 871 (9th Cir. 2006) ....................................................................................14

*Chicago & S. Air Lines v. Waterman S.S. Corp.*
    333 U.S. 103 (1948) ....................................................................................................9

*Class v. Norton*
    507 F.2d 1058 (2d Cir. 1974) ...................................................................................15

*Conservation Force v. Salazar*
    915 F. Supp. 2d 1 (D.D.C. 2013) ...............................................................................7

*Fed. Trade Comm'n v. Minneapolis-Honeywell Regulator Co.*
    344 U.S. 206 (1952) ....................................................................................................6

*Frew ex rel. Frew v. Hawkins*
    540 U.S. 431 (2004) ....................................................................................................8

*Horne v. Flores*
    557 U.S. 433 (2009) ...............................................................................................6, 13

*Marbury v. Madison*
    5 U.S. 137 (1803) ......................................................................................................13

*McGrath v. Potash*
    199 F.2d 166 (D.C. Cir. 1952) ..................................................................................14

*Nat. Res. Def. Council v. Pruitt*
    No.17-1157 (D.C. Cir. June 15, 2017) ...............................................................3, 4, 5

# TABLE OF AUTHORITIES
### (continued)

Page

*Peacock v. Thomas*
    516 U.S. 349 (1996) ............................................................................................8

*Pennsylvania v. Wheeling & Belmont Bridge Co.*
    59 U.S. 421 (1856) ..............................................................................................7

*Plaut v. Spendthrift Farm, Inc.*
    514 U.S. 211 (1995) ............................................................................................2

*Rivers v. Roadway Express, Inc.*
    511 U.S. 298 (1994) ..........................................................................................13

*Rufo v. Inmates of Suffolk Cty. Jail*
    502 U.S. 367 (1992) .............................................................................7, 10, 15

*Salazar v. Buono*
    559 U.S. 700 (2010) ..........................................................................................13

*Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*
    5 F.3d 1255 (9th Cir. 1993) .................................................................................6

*Sierra Club v. Thomas*
    658 F. Supp. 165 (N.D. Cal. 1987) ...................................................................13

*Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*
    364 U.S. 642 (1961) ........................................................................................6, 9

*Tallahassee Mem'l Reg'l Med. Ctr. v. Bowen*
    815 F.2d 1435 (11th Cir. 1987) .........................................................................14

*Taylor v. United States*
    181 F.3d 1017 (9th Cir. 1999) (en banc) .............................................................9

*Twelve John Does v. District of Columbia*
    841 F.2d 1133 (D.C. Cir. 1988) ..........................................................................7

*United States v. Oakland Cannabis Buyers' Co-op.*
    532 U.S. 483 (2001) ..........................................................................................13

*United States v. Providence Journal Co.*
    485 U.S. 693 (1988) ..........................................................................................14

*United States v. Swift & Co.*
    286 U.S. 106 (1932) ..........................................................................................13

iii

# TABLE OF AUTHORITIES
## (continued)

Page

*United States v. United Shoe Machinery Corp.*
    391 U.S. 244 (1968)................................................................................7, 12

STATUTES

28 U.S.C. § 1651........................................................................................................8

42 U.S. Code § 7604(a)(2).......................................................................................14

42 U.S.C. § 7607(b)(1).............................................................................................13

42 U.S.C. § 7607(d)...................................................................................................1

REGULATIONS

40 C.F.R. § 60.27...................................................................................................1, 3

40 C.F.R. § 60.30f(b)................................................................................................3

FEDERAL REGISTER

Standards of Performance for Greenhouse Gas Emissions for New Stationary
    Sources: Electric Utility Generating Units
    77 Fed. Reg. 22,392 (Apr. 13, 2012).................................................................16

Compliance Times for Municipal Solid Waste Landfills
    81 Fed. Reg. 59,276 (Aug. 29, 2016).............................................................1, 11

Stay of Standards of Performance for Municipal Solid Waste Landfills and Emission
    Guidelines and Compliance Times for Municipal Solid Waste Landfills
    82 Fed. Reg. 24,878 (May 31, 2017)..................................................................3

Adopting Subpart Ba Requirements in Emission Guidelines for Municipal Solid
    Waste Landfills
    83 Fed. Reg. 54,527 (Oct. 30, 2018)...................................................................4

Correction
    83 Fed. Reg. 56,015 (Nov. 9, 2018).....................................................................4

Federal Plan Requirements for Municipal Solid Waste Landfills That Commenced
    Construction On or Before July 17, 2014, and Have Not Been Modified or
    Reconstructed Since July 17, 2014
    84 Fed. Reg. 43,745 (Aug. 22, 2019)......................................................... *passim*

iv

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3    Adopting Requirements in Emission Guidelines for Municipal Solid Waste
         Landfills
4         84 Fed. Reg. 44,547 (Aug. 26, 2019)............................................................. *passim*

5    Approval and Promulgation of State Plans for Designated Facilities and Pollutants;
         New Mexico and Albuquerque-Bernalillo County; Municipal Solid Waste
6         Landfills
7         84 Fed. Reg. 47,899 (Sept. 11, 2019)..................................................................5

8    COURT RULES

9    Fed. R. Civ. P. 59(e)...........................................................................................1, 6

10   Fed. R. Civ. P. 60(b) .......................................................................................*passim*

11   OTHER AUTHORITIES

12   *Federal Plan Requirements for Municipal Solid Waste Landfills that Commenced
         Construction on or Before July 17, 2014, and Have Not Been Modified or
13        Reconstructed Since July 17, 2014, EPA-HQ-OAR-2019-0338,*
14        Regulations.gov....................................................................................................1

15   *Supporting & Related Material Issued by EPA to
         EPA Docket No. EPA-HQ-OAR-2018-0696-0003,* Regulations.gov..........................4
16

17   *Stay of Emission Guidelines and Compliance Times for Municipal Solid Waste
         Landfills,* Regulations.gov .................................................................................3
18

19   12 James Wm. Moore et al., *Moore's Federal Practice* § 60.22[5] (3d ed. 2008)..........................6

20   Science and Policy for People and Nature, Intergovernmental Science-Policy
         Platform on Biodiversity and Ecosystem Services (IPBES) Global Assessment
21        on Biodiversity and Ecosystem Services, Media Release (May 6, 2019)..........................11, 12

22   Cody Boteler, *EPA Offers Public Clarification on Timeline for NSPS, EG Landfill
         Rules Months After Stay Expires,* WASTE DIVE (Oct. 31, 2017) ..............................4

23

24

25

26

27

28

v

1

**INTRODUCTION**

2

On May 6, 2019, this Court entered a final order and judgment declaring EPA in violation

3

of "long-overdue nondiscretionary duties" under the Clean Air Act, Dkt. 98, at 1 ("Final Order"),

4

and directing the agency to issue, "no later than November 6, 2019," a federal plan to implement

5

its 2016 Landfill Emissions Guidelines[1] (Emission Guidelines) in every state that does not have

6

an approved implementation plan, *id.* at 16. EPA did not dispute that emissions from landfills

7

make a "meaningful contribution . . . to harmful pollution," and this Court determined that "there

8

is a causal connection between the lack of [a federal plan] and adverse environmental effects" that

9

harm Plaintiffs. *Id.* at 8 (citations omitted). To remedy EPA's violation at the earliest feasible

10

time, the Court set the November 6th deadline after concluding that EPA failed to establish in its

11

briefing, affidavits, or oral argument that it could not issue a federal plan by that date. *Id.* at 13–

12

14.

13

EPA declined its opportunity to revisit this Court's finding of harm, or the imposition of the

14

November 6th deadline, via either a timely motion to amend the judgment under Fed. R. Civ. P.

15

59(e) filed in this Court, or a timely appeal filed in the Ninth Circuit. Instead, consistent with this

16

Court's finding that November 6th is a feasible deadline, the agency issued a proposed federal

17

plan on August 22, 2019, that would "implement[ ] mandates specifically and explicitly set forth

18

in 40 C.F.R. 60.27," a task which EPA admits does not require "the exercise of any policy

19

discretion." Federal Plan Requirements for Municipal Solid Waste Landfills That Commenced

20

Construction On or Before July 17, 2014, and Have Not Been Modified or Reconstructed Since

21

July 17, 2014, 84 Fed. Reg. 43,745, 43,756 (Aug. 22, 2019) (Proposed Federal Plan). The

22

deadline to submit public comments on this nondiscretionary proposal is October 7, 2019, 30

23

days before EPA must finalize the plan, *id.* at 43,745; the agency has received only one, non-

24

substantive comment to date.[2] Meanwhile, consistent with this Court's injury finding, EPA's

25

[1] Compliance Times for Municipal Solid Waste Landfills, 81 Fed. Reg. 59,276 (Aug. 29, 2016)
(Emissions Guidelines).

26

[2] *See* 42 U.S.C. § 7607(d)(4)(B)(i) (requiring EPA to "[p]romptly" place comments in the
docket); *Federal Plan Requirements for Municipal Solid Waste Landfills that Commenced*

27

*Construction on or Before July 17, 2014, and Have Not Been Modified or Reconstructed Since
July 17, 2014, EPA-HQ-OAR-2019-0338*, Regulations.gov,

28

1    unlawful delay in implementing the Emission Guidelines has harmed and continues to harm State

2    Plaintiffs, Intervenor-Plaintiff Environmental Defense Fund, and the general public by

3    forestalling significant reductions in air-pollutant emissions across most of the Nation. In short,

4    no new facts since this Court entered final judgment call into question the importance or the

5    feasibility of EPA finalizing a federal plan by November 6th.

6         Nonetheless, EPA now asserts that the November 6th deadline "is no longer equitable" and

7    moves the Court for relief from the judgment under Federal Rule of Civil Procedure 60(b)(5). *See*

8    Dkt. 109, at 5–7 ("Mot."). The sole source of inequity that EPA proffers is the agency's unilateral

9    decision following judgment in this case to complete a separate rulemaking, Adopting

10   Requirements in Emission Guidelines for Municipal Solid Waste Landfills, 84 Fed. Reg. 44,547

11   (Aug. 26, 2019) (Delay Rule), specific to the Emission Guidelines, that purports to extend EPA's

12   deadline to finalize its federal plan until *at least* August 30, 2021—more than 21 months after the

13   court-ordered deadline. Mot. at 5. (Some states may not have an implementation plan until

14   February 2023.[3]) The Delay Rule is flawed in its own right, but even if it were not, a targeted

15   action by an Article II agency to alter the legal duties embodied in a judgment of an Article III

16   court would not entitle EPA to the relief it requests.

17        Rule 60(b) "authorizes discretionary judicial revision of judgments . . . whose enforcement

18   would work inequity," *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 233–34 (1995), "tak[ing] all

19   the circumstances into account," *Bellevue Manor Ass'ns. v. United States*, 165 F.3d 1249, 1256

20   (9th Cir. 1999). Courts have "recognize[d] subsequent changes in either statutory or decisional

21   law" as a ground for relief from judgment, *Agostini v. Felton*, 521 U.S. 203, 215 (1997), but EPA

22   cites no instance (and we are aware of none) in which a court granted an administrative agency

---

24   www.regulations.gov/docketBrowser?rpp
     =25&so=DESC&sb=commentDueDate&po=0&dct=PS&D=EPA-HQ-OAR-2019-0338 (last
     visited Sept. 16, 2019).

25   [3] Under the Delay Rule, EPA "will promulgate a federal plan within 2 years after . . . a state fails
     to submit a plan." Delay Rule, 84 Fed. Reg. at 44,549. For some states, that means August 30,

26   2021. For states that did submit a state plan, the Delay Rule gives EPA six months from the
     August 29, 2019, submission deadline, or until February 29, 2020, to conduct a "completeness

27   review" of a submitted plan, then 12 additional months, or until February 29, 2021, to approve or
     disapprove of that plan. *Id.* EPA would then have *two more years*, or until February 2023, to

28   "promulgate a federal plan," *id.*

2

relief from a judgment based on the agency's own post-judgment amendment to a regulation. The equities strongly disfavor such relief, and especially so here, where EPA's new rule is merely the latest in a long string of attempts by this agency both to delay implementing this vital pollution-reduction rule and to evade judicial review of that delay. Four months ago, this Court exercised its "broad equitable discretion to fix an appropriate deadline" for EPA to issue a federal plan after carefully considering the agency's views, Final Order at 4, and those views do not carry more equitable weight now that they appear in the Federal Register rather than a brief. The Delay Rule does not constitute changed circumstances warranting relief under Rule 60(b)(5). EPA's motion therefore should be denied.

## BACKGROUND

Issued in August 2016, the Emission Guidelines required EPA to either approve state plans or promulgate a federal plan to reduce air-pollutant emissions from existing municipal solid waste landfills by November 30, 2017. *See* 40 C.F.R. §§ 60.27(b) & (d), 60.30f(b). Instead, beginning with its failure almost two years ago to respond to timely-submitted state plans by September 30, 2017, *id.* §§ 60.27(b), 60.30f(b), EPA chose to violate the law.

EPA's crusade to avoid implementing the Emission Guidelines began well before the agency missed those deadlines and has been sustained for more than two years through a number of separate actions. In May 2017, one day after the deadline for states to submit plans to EPA, the agency purported to stay the Emission Guidelines for 90 days.[4] After that stay was challenged in the U.S. Court of Appeals for the District of Columbia Circuit, *see* Petition for Review, *Nat. Res. Def. Council v. Pruitt*, No.17-1157 (D.C. Cir. June 15, 2017), EPA submitted to the White House Office of Management and Budget (OMB) in July 2017 a proposed rule that would have stayed the Emission Guidelines even longer. EPA publicly announced that landfills "will not need to comply with these requirements while the stay is in effect."[5]

---

[4] Stay of Standards of Performance for Municipal Solid Waste Landfills and Emission Guidelines and Compliance Times for Municipal Solid Waste Landfills, 82 Fed. Reg. 24,878 (May 31, 2017).
[5] *See Stay of Emission Guidelines and Compliance Times for Municipal Solid Waste Landfills, RIN 2060-AT64*, Regulations.gov, https://reginfo.gov/public/do/eAgendaViewRule?pubId=201704&RIN=2060-AT64 (last visited Sept. 12, 2019).

3

1    EPA eventually abandoned any effort to lawfully suspend the Emission Guidelines and

2    decided simply to not implement them. In an October 31, 2017, statement made to Waste Dive,

3    an online news outlet for the waste industry, EPA broadcast to states and regulated entities that

4    "any states that fail to submit plans . . . 'are not subject to sanctions,'" and that the agency "do[es]

5    not plan to prioritize the review of [submitted] state plans," nor was EPA "working to issue a

6    Federal Plan for states that fail to submit a state plan."[6]

7    Plaintiffs filed this action on May 31, 2018, to compel EPA to perform its nondiscretionary

8    duty to implement the Emission Guidelines because Plaintiffs are harmed each day the agency

9    fails to take action. Dkt. 1. Despite having told the D.C. Circuit that the Clean Air Act provision

10   Plaintiffs relied upon in bringing this suit confers jurisdiction on the district courts to review a

11   failure to implement the Emission Guidelines, *see* Respondents' Initial Brief at 37, *NRDC v.*

12   *Pruitt*, No.17-1157 (D.C. Cir. Jan. 22, 2018), ECF No. 1714147, EPA moved to dismiss

13   Plaintiffs' complaint for want of jurisdiction, Dkt. 28. The briefing and disposition of that motion

14   (which this Court ultimately denied) took nearly seven months.

15   Meanwhile, two days before this Court's scheduled hearing on EPA's motion to dismiss—

16   and after a "very rushed" three-day OMB review process[7]—EPA Administrator Andrew Wheeler

17   signed a proposal to extend the deadlines for state planning and review under the Emission

18   Guidelines such that EPA would not need to issue a federal plan for states without an approved

19   state plan until the end of February 2023—effectively proposing to delay by more than five years

20   the implementation of rules *that should already have been implemented*.[8] On the basis of its

21

22   [6] Cody Boteler, *EPA Offers Public Clarification on Timeline for NSPS, EG Landfill Rules Months After Stay Expires*, WASTE DIVE (Oct. 31, 2017), https://www.wastedive.com/news/epa-offers-public-clarification-on-timeline-for-nsps-eg-landfill-rules-mon/508484/.

23   [7] Office of Management and Budget, Internal Email from Chad Whiteman, Interagency Discussion and EPA Responses Pertaining to Landfills Subpart Ba NPRM [2060-AU33] at 2

24   (Oct. 16, 2018), *Supporting & Related Material Issued by EPA to EPA Docket No. EPA-HQ-OAR-2018-0696-0003*, Regulations.gov, https://www.regulations.gov/document?D=EPA-HQ-

25   OAR-2018-0696-0003. The rushed review prevented Plaintiffs, Intervenor Environmental Defense Fund, and other interested parties from meeting with OMB regarding the proposal. The

26   resulting proposal did not even have the correct docket number. Correction, 83 Fed. Reg. 56,015 (Nov. 9, 2018).

27   [8] Adopting Subpart Ba Requirements in Emission Guidelines for Municipal Solid Waste Landfills, 83 Fed. Reg. 54,527, 54,532 (Oct. 30, 2018) (as signed by Acting Administrator

28   Wheeler on Oct. 23, 2018).

4

1    proposed deadlines, EPA moved to stay this litigation, which motion the Court denied on

2    December 21, 2018. Dkt. 82. The Court concurrently denied EPA's motion to dismiss. *Id.* EPA

3    then moved two more times in January 2018 for this Court to stay or delay disposition of this case

4    based on a lapse of federal appropriations. *See* Dkts. 83, 88.

5        After all these delay tactics failed, EPA filed a motion for summary judgment that did not

6    contest its liability. Dkt. 92. Rather, EPA contested the standing of eight sovereign states—an

7    argument this Court determined was precluded by "clear[ly] applicabl[e]" law, Final Order at 7—

8    and sought a remedy that would double (to 12 months) the time afforded by the regulations to

9    finalize a federal plan, above and beyond EPA's admitted two-year delay.

10        After carefully considering the parties' briefs, EPA's factual averments, and the oral

11    argument, this Court concluded that six months from the date of its order was a "feasible" amount

12    of time for EPA to promulgate a federal plan. Final Order at 9, 14. Post-judgment events bear out

13    that assessment. On August 26, 2019—four days *before* publishing the Delay Rule—EPA

14    published a proposed federal plan. Proposed Federal Plan, 84 Fed. Reg. 43,745. The proposed

15    plan straightforwardly applies the standards that EPA had already "specifically and explicitly set

16    forth" in the Emissions Guidelines to those states that failed to submit state plans. *Id.* at 43,756.

17    No person requested a hearing on the federal plan, and the comment period closes October 7th,

18    one month before EPA's deadline to finalize the plan.[9]

19        EPA now moves for relief from judgment based on its finalization of the Delay Rule, which

20    took effect on September 6, 2019, and purports to (i) set a retroactive deadline of August 29,

21    2019, for States to submit plans, and (ii) extend EPA's deadline to promulgate a federal plan until

22    at least August 2021. *See* Delay Rule, 84 Fed. Reg. at 44,547, 44,549. EPA's "rationale" for the

23    Delay Rule's significant extension of the deadline for promulgating a federal plan is that "the

24    rulemaking requirements in CAA section 307(d)" "involve[ ] a number of *potentially* time-

25    _____

26    [9] The Court's order with respect to already-submitted state plans, which are not at issue here, also
     made a correct assessment of the time needed. EPA timely finalized its approval or disapproval of
27    those plans by this Court's September 6th deadline. *See, e.g.*, Approval and Promulgation of State
     Plans for Designated Facilities and Pollutants; New Mexico and Albuquerque-Bernalillo County;
     Municipal Solid Waste Landfills, 84 Fed. Reg. 47,899 (Sept. 11, 2019) (approving plans for New
28    Mexico).

5

1    consuming steps," for a plan that "*may be . . .* complex and time-intensive." *Id.* at 44,551

2    (emphases added). The preamble to the Delay Rule does not mention that EPA already had

3    proposed a federal plan based on a straightforward application of the Emission Guidelines. EPA,

4    however, "acknowledge[d] that, with respect to the deadline for a federal plan, there is now a

5    conflict between the EPA's regulations and the Court's order," and that the agency must comply

6    with the November 6th deadline absent seeking "appropriate relief from the Court." *Id.* at 44,550.

7                                                **LEGAL STANDARD**

8            EPA styles its motion as one "to amend the Order and Judgment entered by the Court,"

9    Mot. at 1, but the agency's deadline to file a motion to amend a judgment under Rule 59(e) was

10   June 3, 2019. This Court therefore must treat EPA's motion as one for relief from judgment under

11   Rule 60(b). *Cf. Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th

12   Cir. 1993) (articulating a more stringent standard of review for a Rule 60(b) motion than a Rule

13   59(e) motion). The only specific ground for relief invoked by EPA is Rule 60(b)(5). *See* Mot. at

14   3–4.

15          Rule 60(b)(5) provides that, "on . . . just terms, the court may relieve a party . . . from a

16   final judgment" if "applying it prospectively is no longer equitable." Fed. R. Civ. P 60(b)(5). The

17   Rule "provides a means by which . . . to modify or vacate a judgment . . . if 'a significant change

18   either in factual conditions or in law' renders continued enforcement 'detrimental to the public

19   interest.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (citation omitted). Traditional principles of

20   equity require courts considering Rule 60(b)(5) motions to "take all the circumstances into

21   account," *Bellevue*, 165 F.3d at 1256, and give due weight to finality: "the principle that litigation

22   must at some definite point be brought to an end," *Fed. Trade Comm'n v. Minneapolis-Honeywell*

23   *Regulator Co.*, 344 U.S. 206, 249 (1952). In exercising its "wide discretion" under the Rule, *Sys.*

24   *Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 648 (1961), a court "may

25   always consider whether the moving party has acted equitably," 12 James Wm. Moore et al.,

26   *Moore's Federal Practice* § 60.22[5] (3d ed. 2008).

27          The burdens of proof and persuasion lie with the party seeking relief from judgment, who

28   must establish both "that a significant change in facts or law warrants revision of the decree and

                                                        6

1    that the proposed modification is suitably tailored to the changed circumstances." *Rufo v. Inmates*

2    *of Suffolk Cty. Jail*, 502 U.S. 367, 393 (1992). Rule 60(b) relief should not be awarded "in the

3    interest of the defendants if the purposes of the litigation as incorporated in the decree . . . have

4    not been fully achieved." *United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 248

5    (1968).

6                                          **ARGUMENT**

7           Governing law required EPA to implement its Emission Guidelines nearly two years ago.

8    When the agency failed to act, this Court entered a final judgment concluding that EPA had

9    violated the law and mandating remedial action as soon as the Court deemed feasible, by

10   November 6, 2019.[10] Last month, EPA proposed a straightforward implementation plan that

11   applies the Emission Guidelines to every jurisdiction without an approved plan. Now, the agency

12   need only finalize that federal plan, which applies the standards set forth in the Emission

13   Guidelines to states and does not require "the exercise of any policy discretion," Proposed Federal

14   Plan, 84 Fed. Reg. at 43,756, within 30 days after the comment period closes—hardly an

15   imposing or unusual task.

16          But EPA contends that it *must* be afforded another *two years* to finalize its uncomplicated

17   proposal because courts may not interfere when a federal agency sets its own deadlines. *See* Mot.

18   at 5–6. Evincing contempt for the separation of powers, EPA argues that an administrative agency

19   may effectively withdraw a court's authority to enforce a final judgment merely by altering

20   applicable regulations. *Id.* No court has so held, and EPA's sweeping theory would open the door

21   to serial abuses of judicial and administrative processes by dilatory federal agencies.

22

23

---

24   [10] It is not even clear that the specific relief requested by EPA—vacatur of the November 6
     deadline to promulgate a federal plan—is "prospective" in nature so as to be within the scope of
25   Rule 60(b)(5), as the court-ordered deadline is a self-executing "present remedy for a past
     wrong." *Conservation Force v. Salazar*, 915 F. Supp. 2d 1, 4-5 (D.D.C. 2013) (citing 11 Charles
26   Alan Wright *et al.*, *Federal Practice and Procedure: Civil* § 2863 (2012) (unlike a "judgment that
     has prospective effect," "judgments that offer a *present remedy for a past wrong* do not fall
27   within the rule")); *see also Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138 (D.C.
     Cir. 1988) ("That a court's action has continuing consequences . . . does not necessarily mean that
28   it has 'prospective application' for the purposes of Rule 60(b)(5)."); *cf. Pennsylvania v. Wheeling*
     *& Belmont Bridge Co.*, 59 U.S. 421 (1856).

7

1    EPA's fallback position is that, even though Rule 60(b)(5) requires an equitable inquiry that

2    considers all circumstances, the only circumstance relevant here is that EPA—a party on the short

3    end of a final judgment—opted, in lieu of appealing the judgment, to issue a regulatory

4    amendment specifically aimed at frustrating the judgment. *See id.* at 7. But the agency cites no

5    case (and we are aware of none) in which a federal court has modified a final judgment based on

6    a "change in law" effected by the very party moving for relief from the judgment. This case

7    should not be the first. EPA has not carried in its motion, or in the preamble to its new regulatory

8    amendment, its burden to show that the November 6th deadline "is no longer equitable." Fed. R.

9    Civ. P. 60(b)(5). On the contrary, events postdating judgment have borne out this Court's finding

10   that EPA does not need more time to finalize its proposed federal plan than the judgment already

11   affords. EPA's motion for relief from final judgment should be denied.

12   **I.    THE COURT RETAINS DISCRETION TO ENFORCE A NOVEMBER 6TH DEADLINE
          NOTWITHSTANDING THAT EPA AMENDED ITS OWN DEADLINE REGULATIONS**

13   **AFTER ENTRY OF FINAL JUDGMENT**

14   EPA acknowledges that the Court's order, remedying its past violation, remains in force, as

15   it must. *See* Mot. at 6 n.5. Yet EPA principally contends that an amendment it unilaterally made

16   to its deadline regulations in the aftermath of the judgment (and years after it violated the law)

17   withdraws this Court's equitable discretion under Rule 60(b) and compels it to grant the agency's

18   motion and vacate the deadline in the judgment. *Id.* ("[I]t is EPA's position that the Court *lacks*

19   *jurisdiction* to enforce the portion of its Order and Judgment related to the federal plan"

20   (emphasis added)); *id.* at 7 (reciting principal argument that the Court is "*required* to vacate the

21   requirement to promulgate a federal plan in light of the change in EPA's regulations" (emphasis

22   added)). That contention is meritless and implicates serious separation-of-powers concerns.

23   This Court's final judgment "is a federal court order that springs from a federal dispute and

24   furthers the objectives of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 438 (2004).

25   A federal court's authority to enforce its own judgments inheres in the judicial power of Article

26   III. *Peacock v. Thomas*, 516 U.S. 349, 356 (1996) ("Without jurisdiction to enforce a judgment

27   entered by a federal court, 'the judicial power would be incomplete and entirely inadequate to the

28   purposes for which it was conferred by the Constitution.'"); *see also* 28 U.S.C. § 1651 (All Writs

8

Act, which states that "all courts established by Acts of Congress may issue all writs necessary and appropriate in aid of their respective jurisdictions"). To hold that an Executive Branch agency may circumscribe a federal court's jurisdiction to enforce a final judgment merely by altering a regulation would undermine "the integrity of a judgment and the independence of the judicial branch." *Taylor v. United States*, 181 F.3d 1017, 1026 (9th Cir. 1999) (en banc) (finding that while "a *court* may decide in its discretion to reopen and set aside a consent decree under Fed. R. Civ. P. 60(b)," even Congress cannot retroactively command a federal court to reopen a final judgment). The political branches may not, consistent with the separation of powers, require a district court to grant relief from a final judgment under legal standards not in existence when the judgment issued and became final. *Cf. Chicago & S. Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103, 113–14 (1948) ("It has also been the firm and unvarying practice of Constitutional Courts to render no judgments . . . subject to later review or alteration by administrative action.").

That bedrock constitutional principle is reflected in Rule 60(b)(5) itself, which provides that "a court *may*," "on just terms," grant relief from a final judgment whose prospective application "is no longer equitable." Fed. R. Civ. P. 60(b) (emphasis added); *see also* Fed. R. Civ. P. 60 advisory committee note to 1946 amendments (observing that the Rule codified "various kinds of relief from judgments that were permitted in the federal courts prior to [its] adoption"). A federal court is not stripped of its "wide discretion" to deny a Rule 60(b) motion, *Wright*, 364 U.S. at 648, simply because the party seeking relief has exercised delegated lawmaking authority related to the subject of the judgment. None of EPA's authorities stands for the proposition that a federal district court lacks discretion to deny a Rule 60(b) motion in the face of a change in law. To the contrary, the agency itself acknowledges precedent requiring that the court "take *all the circumstances* into account in determining whether to modify or vacate a prior injunction," *Bellevue*, 165 F.3d at 1256 (emphasis added). Mot. at 4. This Court plainly retains discretion to deny EPA the relief it seeks.

9

1

2

## II.   EPA DID NOT CARRY ITS BURDEN TO SHOW THAT A NOVEMBER 6TH DEADLINE IS INEQUITABLE

EPA has not come close to meeting its burden of showing that the equitable *Rufo* criteria
are met; in fact, it has not even tried. EPA ends its argument with a single, conclusory paragraph
positing that an amendment to a regulatory deadline made by the losing party post-judgment,
unaccompanied by any change in facts, "warrants revision of the decree"; and that vacatur of the
November 6th deadline "is suitably tailored to the changed circumstances" of the Delay Rule.
*Rufo*, 502 U.S. at 393; *see* Mot. at 7–8. This argument fails on both counts.

### A.   Revision of the judgment is not warranted by any changes in fact or law.

#### 1.   New facts weigh in favor of maintaining the November 6th deadline.

EPA does not allege that its request for relief is supported by a "significant change in
facts," *Rufo*, 502 U.S. at 393, presumably because any new facts that have emerged since the
judgment only confirm the reasonableness of the November 6th deadline for a federal plan
implementing the Emission Guidelines.

The Court imposed that deadline in May of this year after carefully considering EPA's
arguments and factual averments because it was unpersuaded that EPA needed 12 months from
judgment to issue a federal plan. The Court was correct in its assessment. EPA had submitted the
affidavit of an agency official who averred that 170 days was "the <u>minimum</u> time needed" to sign
proposed regulations. Dkt. 92-1, at 3 ("Lassiter Decl."); *see also id.* at 11–12. It turned out that
EPA completed this task in 100 days, slightly more than half the time it estimated. Proposed
Federal Plan, 84 Fed. Reg. at 43,757 (signature dated August 14, 2019).

EPA's deadline for finalizing these regulations is 30 days after the comment period closes,
which might be considered ambitious for a complex rulemaking. *See* Lassiter Decl. at 12, 14–15
(estimating an additional 135 days to finalize the rule after close of the comment period). Yet the
preamble to the agency's proposed regulations shows that this is not a concern. The federal plan
is, in EPA's own words, devoid of "the exercise of any policy discretion." Proposed Federal Plan,
84 Fed. Reg. at 43,756. This rule "is not a significant regulatory action . . . submitted to [OMB]
for review." *Id.* at 43,755. *But see* Lassiter Decl. 13–15 (including OMB review period in

10

1    estimated timeframe for finalizing the federal plan). In its 2016 rule, EPA already did the heavy

2    lifting of "specifically and explicitly" setting emission limits and technical requirements.

3    Proposed Federal Plan, 84 Fed. Reg. at 43,756. The task remaining is ministerial: to "implement

4    the emission limits as promulgated," *id.* at 43,751, save for a few "technical correction[s]," *id.* at

5    43,752. With only one public comment submitted to date, there is no reason to believe that EPA

6    will require more than 30 days after the comment period to publish a final federal plan.

7           Meanwhile, other post-judgment events have only heightened the need for EPA to finalize

8    its federal implementation plan posthaste. The agency's delayed deadline for submission of state

9    implementation plans was August 29, 2019, Delay Rule, 84 Fed. Reg. at 44,549, but Plaintiffs are

10   not aware of any additional states that have submitted plans. (In its August 7, 2019, status report

11   to this Court, EPA did not provide information regarding additional state plan submissions it had

12   received, Dkt. 108; nor was EPA willing to provide this information on request of Plaintiffs'

13   counsel.)[11] Thus, it is likely that the majority of States remain without a plan. Plaintiffs continue

14   to be injured by the excess emissions from covered landfills in these jurisdictions, and every

15   additional day of delay forestalls the relief they are due under this Court's final order. EPA itself

16   has recognized that the Guidelines must be implemented to "improve air quality and reduce the

17   potential for public health and welfare effects associated with exposure to landfill gas emissions."

18   Emission Guidelines, 81 Fed. Reg. at 59,276. And new evidence of the short- and long-term harm

19   of greenhouse gas emissions has emerged since final judgment, including a United Nations report

20   concluding that "the rate of species extinctions"—driven in significant part by climate change—

21   "is accelerating, with grave impacts on people around the world now likely."[12] The new report

22   notes that climate change "already impact[s] nature from the level of ecosystems to that of

23   genetics," and that such impacts, including their attendant impacts on humans, are expected to

24

25   [11] A final federal plan will not prevent states from submitting, and EPA from approving, any state
     plans that are submitted in the future. *See* Proposed Federal Plan, 84 Fed. Reg. at 43,749.

26   [12] *See* Media Release, Science and Policy for People and Nature, Intergovernmental Science-
     Policy Platform on Biodiversity and Ecosystem Services (IPBES), Global Assessment on

27   Biodiversity and Ecosystem Services, at 1 (May 6, 2019), https://games-
     cdn.washingtonpost.com/notes/prod/default/documents/1c572aca-fe3d-4b5f-94d9-

28   1885bfee7e7a/note/7561fdf9-27ed-4fa0-845c-dbef31bb3b0c.pdf#page=1.

1    increase over the coming decades, "in some cases surpassing the impact of land and sea use

2    change and other drivers" of change.[13]

3         In sum, new facts that have come to light since this Court entered judgment confirm the

4    Court's conclusion that November 6, 2019, is an equitable deadline for EPA to issue a federal

5    plan implementing its now three-year-old Emission Guidelines. Unless and until EPA issues that

6    federal plan, "the purposes of the litigation as incorporated in the decree . . . have not been fully

7    achieved." *United Shoe*, 391 U.S. at 248.

8              **2.    A change in law unilaterally effected by a losing party does not,**
                      **absent a change in relevant facts, entitle that party to relief from**
9                     **judgment.**

10        Where a final judgment is already in place, the party seeking relief from that judgment

11   bears the burden to show that its application is no longer equitable. EPA premises its request

12   entirely on its unilateral decision to change its regulations in an attempt to "fix" the long-past

13   violation that this Court recognized, and remedied, in its final order and judgment. While a

14   change in law is sometimes a basis for relief from judgment, it does not provide such a basis

15   under the circumstances presented here. This Court must consider all those circumstances, *see*

16   *Bellevue*, 165 F.3d at 1256, including that the change in law is a regulatory one unilaterally

17   effected by the losing party that is now seeking relief, and that it is based upon a rationale that is

18   contradicted by the record of this case.

19        Where the author of a regulatory change is seeking equitable relief from a judgment, it does

20   not carry its burden by merely presenting the new law to the court as if the regulation speaks for

21   itself. Put another way, Rule 60(b)(5)'s totality-of-the-circumstances test does not collapse to the

22   question of whether EPA's regulatory amendment would survive "highly deferential" arbitrary-

23   and-capricious review. *Bahr v. EPA*, 836 F.3d 1218, 1229 (9th Cir. 2016). And, while the legality

24   of EPA's Delay Rule is not before this Court, to the extent EPA relies on the Delay Rule as the

25   basis for its request here, the Court may consider the rationale underlying the Delay Rule as part

26   of the totality-of-the-circumstances inquiry. *Bellevue,* 165 F.3d at 1256. That rationale is wholly

27   unpersuasive: in the Delay Rule, EPA does not even acknowledge its August 2019 proposed

28   ─────────────
     [13] *Id.* at 2.

1   federal plan, much less explain why the agency needs at least two more years to finalize that

2   proposal, which the agency concedes does not entail the exercise of policy discretion. Proposed

3   Federal Plan, 84 Fed. Reg. at 43,756.[14] Rather, it claims that such a rulemaking is "potentially

4   time-consuming," and the plan "may be complex," *id.* at 44,551—assertions that are belied by the

5   record in this case. The Delay Rule fails to meet EPA's burden under Rule 60(b)(5), especially

6   where, pre-judgment, the agency has acted inequitably by "fail[ing] to demonstrate any diligence

7   whatever in discharging its . . . duty to promulgate regulations and has in fact ignored that duty

8   for several years." *Sierra Club v. Thomas*, 658 F. Supp. 165, 172 (N.D. Cal. 1987).

9       To be sure, the Supreme Court and Ninth Circuit have long recognized that post-judgment

10   "changes in either statutory or decisional law" may supply a basis for relief under Rule 60(b)(5).

11   *Agostini*, 521 U.S. at 215. That makes sense because the ultimate question under this Rule is

12   whether continued enforcement of a decree is in the public interest. *See Horne*, 557 U.S. at 447.

13   Because Congress is assumed to legislate in the public interest, "[c]ourts of equity cannot, in their

14   discretion, reject the balance that Congress has struck in a statute." *United States v. Oakland*

15   *Cannabis Buyers' Co-op.*, 532 U.S. 483, 497 (2001); *see also Salazar v. Buono*, 559 U.S. 700,

16   717 (2010).

17       A change in decisional law, like a change in statutory law, is reasonably presumed to reflect

18   a change in the public interest. Whenever an impartial appellate court exercises its constitutional

19   prerogative to "say what the law is," *Marbury v. Madison*, 5 U.S. 137, 177 (1803), it "is the duty

20   of [lower] courts to respect that understanding of the governing rule of law," *Rivers v. Roadway*

21   *Express, Inc.*, 511 U.S. 298, 312 (1994), notwithstanding the strong public interest in finality of a

22   judgment. For a district court to prospectively enforce a judgment whose terms conflict with a

23   new and binding rule of decision risks turning the judgment "into an instrument of wrong,"

24   *United States v. Swift & Co.*, 286 U.S. 106, 115 (1932), absent relief under Rule 60(b).

25       But these considerations do not necessarily attend a post-judgment change in regulatory law

26   unilaterally effected by a party bound by the very judgment from which it seeks relief. Although

[14] The deadline for challenging EPA's Delay Rule as arbitrary and capricious is October 25, 2019. *See* 42 U.S.C. § 7607(b)(1); Delay Rule, 84 Fed. Reg. at 44,548.

13

1    an Executive Branch agency is ordinarily presumed to act in the public interest when it makes law

2    pursuant to authority delegated by Congress, the courts have recognized that agency action can in

3    certain cases elevate "the parochial interests of a particular agency" over "the common interests

4    of the Government and therefore of all the people." *United States v. Providence Journal Co.*, 485

5    U.S. 693, 706–07 (1988). There is no clearer example than the regulatory amendment that EPA

6    issued here after losing its case before this Court. Its sole purpose is to extend the agency's

7    deadline to take an action that is concededly in the public interest. To vacate the November 6th

8    deadline based only on EPA's parochial regulatory change would contravene Rule 60(b)(5)'s

9    demand for "equitable" results.

10         Notably, the Ninth Circuit has drawn an analogous distinction between statutory and

11    regulatory changes when considering whether a change in law renders a pending dispute moot.

12    The circuit follows a "near categorical rule of mootness [in] cases of statutory amendment" but

13    adopts a flexible, fact-specific approach in the case of "administrative agency repeal or

14    amendment." *Chem. Prods. & Distribs. Ass'n v. Helliker*, 463 F.3d 871, 878 (9th Cir. 2006). Like

15    Rule 60(b), that flexible approach to mootness permits the court to take account of the relative

16    ease of changing regulations and the unfortunate reality that agency defendants may act to evade

17    judicial review of their unlawful behavior. *See, e.g., Tallahassee Mem'l Reg'l Med. Ctr. v.

18    Bowen*, 815 F.2d 1435, 1451–52 (11th Cir. 1987) (holding that an agency did not moot a suit

19    challenging its regulations merely by issuing an amendment to the regulations in an effort to

20    avoid an adverse judgment).[15]

21         All of the cases on which EPA relies, Mot. at 5, concerned instances where the party

22    seeking relief passively *became subject* to a change in the law through no action of their own.

23    *See, e.g.*, *McGrath v. Potash*, 199 F.2d 166, 168 (D.C. Cir. 1952) (vacating injunction against

24    agency on the basis that Congress had removed the legal basis for the injunction); *Am. Horse

25    _____

26    [15] That Ninth Circuit law draws a distinction between statutory and regulatory changes in terms of
     the degree to which they reflect a shift in the public interest that must be taken into account by
27    courts exercising their equitable discretion is completely distinct from (and unrelated to) the
     statutory interpretation question of whether a regulation can impose a "duty under this chapter"
28    for the purposes of Clean Air Act section 304(a)(2) (42 U.S. Code § 7604(a)(2)).

14

1   *Prot. Ass'n, Inc. v. Watt*, 694 F.2d 1310, 1316 (D.C. Cir. 1982) (holding that a change in the

2   governing statute superseded the court instructions to agency); *Class v. Norton*, 507 F.2d 1058

3   (2d Cir. 1974) (granting the motion of a *state* agency for relief from judgment after a change in

4   generally applicable *federal* regulations).[16] EPA can point to no instance where a court has

5   granted relief under Rule 60(b)(5) to a party that had itself changed the law, to facilitate its own

6   release of liability under the judgment or order. Instead, courts have examined changes in fact or

7   law to determine whether there has been a significant change in underlying circumstances that are

8   generally beyond the parties' control such that "applying [the judgment] prospectively is no

9   longer equitable." Fed. R. Civ. P. 60(b)(5).

10       As EPA notes, Mot. at 4, the Court must "take all the circumstances into account."

11   *Bellevue*, 165 F.3d at 1256. Particularly given EPA's history of repeated delay and bad faith in

12   implementing its Emission Guidelines, and the fact that it was EPA itself that changed the law

13   based upon a rationale that is contradicted by the record of this case, EPA's new Delay Rule does

14   not constitute a "significant" change in law warranting relief from judgment.

15       **B.    The modification is not suitably tailored to the changed circumstances.**

16       For the reasons stated above, EPA is not entitled to any relief from judgment, and its

17   motion should be denied. But even if this Court were inclined to give EPA a modicum of relief,

18   the remedy that the agency proposes—vacatur of the November 6th deadline—is not suitably

19   tailored. *See Rufo*, 502 U.S. at 393. Contrary to EPA's assertion, Mot. at 4, the relief it seeks is

20   anything but "narrow"—EPA seeks to eviscerate this Court's order, significantly delaying the

21   vast quantity of emissions reductions that were the subject of this litigation. EPA's own

22   representation to this Court was that the agency would require 4.5 months after the public-

23   comment period closed to finalize a federal plan. *See* Lassiter Decl., *supra*, at 12, 14–15. That is a

24   far cry from the two additional years (or more) that EPA now argues that equity requires. There is

25   no basis whatsoever for the Court to grant EPA's request in light of EPA's concession that it is

26   _____

27   [16] It is worth noting that while the court in *Class v. Norton* found "no reason to accord lesser
    respect to a change in regulation than to one in statute." 5047 F 2d at 1062 there may be powerful
    reasons to do so here, where EPA's regulatory amendment was aimed specifically at this Court's

28   final judgment and was not based on a change in facts postdating the judgment.

15

1    capable of issuing the plan much sooner and its own admonition that time is of the essence in

2    reducing greenhouse gas emissions. *See* Standards of Performance for Greenhouse Gas Emissions

3    for New Stationary Sources: Electric Utility Generating Units, 77 Fed. Reg. 22,392, 22,395 (Apr.

4    13, 2012) ("Each additional ton of greenhouse gases emitted commits us to further [climate]

5    change and greater risks.").

6           Nor would an order denying the requested relief conflict with EPA's Delay Rule. This

7    Court's order required EPA to promulgate a federal plan by November 6, 2019. Compliance with

8    this deadline offends no provision of the Delay Rule or any other statute or regulation; nothing

9    prohibits EPA from promulgating a federal plan in advance of a regulatory deadline. Nor does it

10   leave the Delay Rule without any effect; while any state that does not have an approved state plan

11   will be subject to the federal plan in the meantime, for state plans submitted after this Court's

12   judgment, EPA would be free to apply its new timing requirements to its decision whether to

13   approve or disapprove those plans. *See* Delay Rule, 84 Fed. Reg. 44,549. Plaintiffs do not contest

14   EPA's authority to reconsider its own regulations, *contra* Mot. at 6, only its attempt to

15   retroactively cure a past failure by upending a lawful final remedy issued by this Court.

16                                  **CONCLUSION**

17          For the foregoing reasons, this Court should deny EPA's Rule 60(b)(5) motion. Because the

18   relief requested by the agency would vacate the most critical part of this Court's final judgment,

19   State Plaintiffs and Intervenor-Plaintiff Environmental Defense Fund respectfully request that this

20   Court hold a hearing before entering any order that would grant EPA that relief.

21   //

22

23

24

25

26

27

28

1    Dated: September 16, 2019                    Respectfully Submitted,

2                                                 XAVIER BECERRA
                                                  Attorney General of California
3                                                 GARY E. TAVETIAN
                                                  DAVID A. ZONANA
4                                                 Supervising Deputy Attorneys General
                                                  TIMOTHY E. SULLIVAN
5                                                 JULIA K. FORGIE
                                                  Deputy Attorneys General
6
                                                  /s/ Elizabeth B. Rumsey
7                                                 ELIZABETH B. RUMSEY
                                                  Deputy Attorney General
8
                                                  Attorneys for the State of California, by and
9                                                 through Attorney General Xavier Becerra,
                                                  and the California Air Resources Board
10

11   TOMÁS CARBONELL*                             /s/ Susannah L. Weaver
     Environmental Defense Fund                   SUSANNAH L. WEAVER*
12   1875 Conn. Avenue, N.W. Suite 600            Donahue, Goldberg & Weaver, LLP
     Washington, D.C. 20009                       1008 Pennsylvania Avenue SE
13   Telephone: (202) 572-3610                    Washington, DC 20003
                                                  Telephone: (202) 569-3818
14   tcarbonell@edf.org                           susannah@donahuegoldberg.com

15   ALEX GEORGE HANAFI (CA SBN 200418)           PETER ZALZAL*
     Environmental Defense Fund                   RACHEL FULLMER*
16   123 Mission Street                           Environmental Defense Fund
     San Francisco, CA 94105                      2060 Broadway, Suite 300
17   Telephone: (202) 572-3260                    Boulder, CO 80302
     ahanafi@edf.org                              Telephone: (303) 447-7214
18                                                pzalzal@edf.org
                                                  rfullmer@edf.org
19
                                                  Attorneys for Environmental Defense Fund
20

21   For the State of Illinois                    For the State of Maryland
     KWAME RAOUL                                  BRIAN E. FROSH
22   Attorney General of Illinois                 Attorney General of Maryland
     DANIEL I. ROTTENBERG*                        LEAH J. TULIN*
23   Assistant Attorney General                   Assistant Attorney General
     Environmental Bureau                         200 St. Paul Place
24   Illinois Attorney General's Office           Baltimore, Maryland 21202
     69 W. Washington St., 18th Floor             (410) 576-6962
25   Chicago, Illinois 60602                      ltulin@oag.state.md.us
     (312) 814-3816
26    DRottenberg@atg.state.il.us

27    (Continued on following page)

28

                                      17

| | |
|---|---|
| 1 | For the State of New Mexico |
| | HECTOR BALDERAS |
| 2 | Attorney General of New Mexico |
| | ARI BIERNOFF (CA SBN 231818) |
| 3 | BILL GRANTHAM* |
| | Assistant Attorney General |
| 4 | 201 Third Street NW, Suite 300 |
| | Albuquerque, New Mexico 87102 |
| 5 | (505) 717-3520 |
| | wgrantham@nmag.gov |
| 6 | |

For the State of New Mexico
HECTOR BALDERAS
Attorney General of New Mexico
ARI BIERNOFF (CA SBN 231818)
BILL GRANTHAM*
Assistant Attorney General
201 Third Street NW, Suite 300
Albuquerque, New Mexico 87102
(505) 717-3520
  wgrantham@nmag.gov

For the State of Oregon
ELLEN F. ROSENBLUM
Attorney General of Oregon
PAUL GARRAHAN*
Attorney-in-Charge
Natural Resources Section
Oregon Department of Justice
1162 Court Street, N.E.
Salem, Oregon 97301-4096
(503) 947-4342
  paul.garrahan@doj.state.or.us

For the Commonwealth of Pennsylvania
JOSH SHAPIRO
Attorney General of Pennsylvania
MICHAEL J. FISCHER*
Chief Deputy Attorney General
ROBERT A. REILEY
Assistant Director, Pennsylvania Department of
Environmental Protection
Pennsylvania Office of Attorney General
Strawberry Square
Harrisburg, PA 17120
(215) 560-2171
  mfischer@attorneygeneral.gov

For the State of Rhode Island
PETER NERONHA
Attorney General of Rhode Island
GREGORY S. SCHULTZ
Special Assistant Attorney General
RI Office of Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400
  gschultz@riag.ri.gov

For the State of Vermont
THOMAS J. DONOVAN, JR.
Attorney General of Vermont
NICHOLAS F. PERSAMPIERI*
Assistant Attorney General
Office of the Vermont Attorney General
109 State Street
Montpelier, Vermont 05609
(802) 828-3186
  nick.persampieri@vermont.gov

  *Admitted to practice *pro hac vice*

18