LESLIE M. HILL (D.C. Bar No. 476008)
Leslie.Hill@usdoj.gov
MARTHA C. MANN
Martha.Mann@usdoj.gov
United States Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
4 Constitution Square
150 M St. N.E.
Suite 4.149
Washington D.C.  20002
Telephone (202) 514-0375
Facsimile (202) 514-8865

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| STATE OF CALIFORNIA, *et al*.<br><br>Plaintiffs,<br><br>and<br><br>ENVIRONMENTAL DEFENSE FUND,<br><br>Plaintiff-Intervenor,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,<br><br>Defendants. | Case No. 4:18-cv-03237-HSG<br><br>**MOTION FOR STAY PENDING APPEAL**<br><br>NO HEARING REQUESTED |

**Table of Contents**

I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................... 1

II.  LEGAL STANDARD ............................................................................................... 4

III. ARGUMENT ............................................................................................................. 5

    A.   EPA is Likely to Succeed on the Merits. ................................................... 5

    B.   EPA Will Suffer Irreparable Harm in the Absence of a Stay. .............................. 9

    C.   The Balance of the Equities Favors a Stay. ........................................................ 12

    D.   A Stay is in the Public Interest. ............................................................................. 12

IV.  CONCLUSION ........................................................................................................ 13

**Table of Authorities**

**Cases**

*Am. Horse Prot. Ass'n, Inc. v. Watt*,
　694 F.2d 1310 (D.C. Cir. 1982) .................................................................................................. 6

*Bellevue Manor Assocs. v. United States*,
　165 F.3d 1249 (9th Cir. 1999) ............................................................................................... 5, 6

*Britton v. Co-Op Banking Grp.*,
　916 F.2d 1405 (9th Cir. 1990) .................................................................................................. 4

*Cal. Dep't of Soc. Servs. v. Leavitt*,
　523 F.3d 1025 (9th Cir. 2008) .................................................................................................. 5

*Class v. Norton*,
　507 F.2d 1058 (2d Cir. 1974) .................................................................................................... 6

*Coal. for Econ. Equity v. Wilson*,
　122 F.3d 718 (9th Cir. 1997) .................................................................................................... 9

*Comm. for a Better Arvin v. EPA*,
　786 F.3d 1169 (9th Cir. 2015) ................................................................................................ 10

*Cornish v. Dudas*,
　540 F. Supp. 2d 61 (D.D.C. 2008) ............................................................................................ 9

*Drakes Bay Oyster Co. v. Jewell*,
　747 F.3d 1073 (9th Cir. 2014) .................................................................................................. 5

*Gen. Motors Corp. v. United States*,
　496 U.S. 530 (1990) ................................................................................................................ 10

*Horne v. Flores*,
　557 U.S. 433 (2009) .................................................................................................................. 5

*Jeff D. v. Kempthorne*,
　365 F.3d 844 (9th Cir. 2004) .................................................................................................... 5

*Lal v. State of California*,
　610 F.3d 518 (9th Cir. 2010) .................................................................................................... 5

*League of Wilderness Defs. v. Connaughton*,
　752 F.3d 755 (9th Cir. 2014) .................................................................................................... 5

*Lewis v. Hagstrom*,
   767 F.2d 1371 (9th Cir. 1985) .................................................................................................. 11

*Lopez v. Heckler*,
   713 F.2d 1432 (9th Cir. 1983) .................................................................................................... 4

*Maher v. Roe*,
   432 U.S. 464 (1977) .................................................................................................................. 11

*McGrath v. Potash*,
   199 F.2d 166 (D.C. Cir. 1952) .................................................................................................... 5

*Mont. Envtl. Info. Ctr. v. Thomas*,
   902 F.3d 971 (9th Cir. 2018) .................................................................................................... 10

*NAACP v. Donovan*,
   558 F. Supp. 218 (D.D.C. 1982) ................................................................................................. 7

*NAACP, Jefferson Cty. Branch v. Donovan*,
   737 F.2d 67 (D.C. Cir. 1984) ................................................................................................. 7, 8

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*,
   434 U.S. 1345 (1977) ............................................................................................................ 9, 12

*Nken v. Holder*,
   129 S. Ct. 1749 (2009) ...................................................................................................... 4, 5, 9

*Perez v. Mortg. Bankers Ass'n*,
   135 S. Ct. 1199 (2015) .............................................................................................................. 10

*Protectmarriage.com—Yes on 8 v. Bowen*,
   752 F.3d 827 (9th Cir. 2014) .................................................................................................... 11

*Rufo v. Inmates of Suffolk Cty. Jail,*
   502 U.S. 367 (1992) .................................................................................................................... 5

*Scripps-Howard Radio v. FCC*,
   316 U.S. 4 (1942) ........................................................................................................................ 4

*Seaside Civic League, Inc. v. HUD*,
   No. C-14-1823-RMW, 2014 WL 2192052 (N.D. Cal. May 23, 2014) ...................................... 9

*Sharp v. Weston,*
   233 F.3d 1166 (9th Cir. 2000) .................................................................................................... 5

*Sierra Club v. Trump*,
   929 F.3d 670 (9th Cir. 2019) .............................................................................................. 4, 5, 12

*State of Texas v. EPA*,
   829 F.3d 405 (5th Cir. 2016) .................................................................................................... 11

*Toussaint v. McCarthy*,
   801 F.2d 1080 (9th Cir. 1986) .................................................................................................... 6

*United States v. Oakland Cannabis Buyers' Coop.*,
   532 U.S. 483 (2001) .................................................................................................................. 12

**Statutes**

42 U.S.C. § 7401(b)(1) ...................................................................................................................... 10

42 U.S.C. § 7411(c) ........................................................................................................................... 10

42 U.S.C. § 7411(d) ..................................................................................................................... 9, 10

42 U.S.C. § 7411(d)(1) ........................................................................................................................ 8

42 U.S.C. § 7604(a)(2) ..................................................................................................................... 2, 7

42 U.S.C. § 7607(b)(1) ........................................................................................................................ 8

**Rules**

Fed. R. Civ. P. 60(b)(5) ...................................................................................................................... 5

**Code of Federal Regulations**

40 C.F.R. Pt. 60, Subpt. B .................................................................................................................. 1

40 C.F.R. § 60.20a-60.29a .................................................................................................................. 3

40 C.F.R. § 60.27(c) ........................................................................................................................ 1, 2

40 C.F.R. § 60.27(d) ........................................................................................................................... 2

40 C.F.R. § 60.27a(c) .......................................................................................................................... 3

40 C.F.R. § 60.27a(c)(1) ................................................................................................................... 11

40 C.F.R. § 60.27a(d) .......................................................................................................................... 3

40 C.F.R. § 60.27a(g) ........................................................................................................................ 10

40 C.F.R. § 60.27a(g)(2) ................................................................................................................... 10

40 C.F.R. § 60.30f(a) ...................................................................................................................... 1, 3

40 C.F.R. § 60.30f(b) ............................................................................................................... 1, 2, 11

40 C.F.R. § 60.30f-60.41f ........................................................................................................... 1

**Federal Registers**
81 Fed. Reg. 59,276 (Aug. 29, 2016) .................................................................................... 1, 12

83 Fed. Reg. 54,527 (Oct. 30, 2018) ......................................................................................... 8

84 Fed. Reg. 32,520 (July 8, 2019) ........................................................................................... 3

84 Fed. Reg. 43,745 (Aug. 22, 2019) ...................................................................................... 12

84 Fed. Reg. 44,547 (Aug. 26, 2019) ................................................................................. 2, 3, 8

**Local Rules**
Civil L.R. 6-3 ............................................................................................................................ 1

Civil L.R. 7-2(a) ....................................................................................................................... 1

Pursuant to Civil L.R. 7-1(a)(1) and Federal Rule of Civil Procedure 62(d)-(e), Defendants United States Environmental Protection Agency and Andrew R. Wheeler, in his official capacity as Administrator of the Environmental Protection Agency (collectively, "EPA"), hereby move for a stay pending appeal of the Court's Order of November 5, 2019 (Dkt. No. 124), denying EPA's Motion to Amend Order and Judgment (Dkt. No. 109).

At this time, the United States Department of Justice's Office of the Solicitor General is determining whether to pursue an appeal in this case. *See* 28 C.F.R. § 0.20(b). Thus, to maintain the *status quo ante* and prevent irreparable harm, the United States respectfully requests that the Court continue the stay of its Order and Judgment requiring EPA to promulgate a federal plan for the pendency of any appeal of this Court's November 5, 2019 Order by EPA, if authorized by the Solicitor General of the United States.

EPA also concurrently files a motion for expedited briefing pursuant to Civil L.R. 6-3 that, if granted, would require Plaintiffs' response to this motion by December 2, 2019, and EPA's reply, if necessary, by December 4, 2019. EPA does not request a hearing.[1] EPA further requests a decision from this Court as soon as possible, and at the latest by December 9, 2019, to allow time for EPA to seek relief from the Ninth Circuit, if the Court denies this motion.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2016, EPA issued revised emission guidelines for emissions from existing municipal solid waste landfills, *Final Rule*, 81 Fed. Reg. 59,276 (Aug. 29, 2016), codified at 40 C.F.R. §§ 60.30f-60.41f (the "MSW Landfills Emission Guidelines"). Under the MSW Landfills Emission Guidelines, states "with one or more existing MSW landfills that commenced construction, modification, or reconstruction on or before July 17, 2014," were required to submit a state plan to EPA by May 30, 2017. 40 C.F.R. §§ 60.30f(a)-(b).

---

[1] Civil L.R. 7-2(a) provides that "all motions must be filed, served and noticed in writing on the motion calendar of the assigned Judge", "[e]xcept as otherwise ordered or permitted by the assigned Judge." As provided in Judge Gilliam's scheduling notes, EPA has not noticed a hearing date for this motion. Judge Gilliam, Scheduling Notes ("parties do not need to reserve a hearing date"). Further, the "next available law and motion date is **January 16, 2020** (there are **no** dates available before this date)." *Id*.

At the time of the Court's May 6, 2019 Order and Judgment (Dkt. Nos. 98 & 99), EPA's implementing regulations for emission guidelines applied to the state submission of plans to EPA, EPA action on state plans, and promulgation of a federal plan in the absence of or disapproval of a state plan. 40 C.F.R. pt. 60, subpt. B. Specifically, 40 C.F.R. § 60.27(c) provided that EPA would propose regulations setting forth a plan or portion of a plan for a state if a state failed to submit a plan or revision within the time prescribed or if EPA disapproved a plan or revision. Section 60.27(d) then required that EPA:

> within six months *after the date required for submission of a plan* or plan revision, promulgate the regulations proposed under paragraph (c) of this section [*i.e.*, a federal plan] with such modifications as may be appropriate unless, prior to such promulgation, the State has adopted and submitted a plan or plan revision which the Administrator determines to be approvable.

40 C.F.R. § 60.27(d) (emphasis added).

Plaintiffs alleged that, pursuant to 40 C.F.R. § 60.27(c)-(d), EPA had a nondiscretionary duty "to promulgate a federal plan for states that did not timely submit state plans within six months of the submission deadline, that is, *by November 30, 2017*." Pls.' Compl. ¶ 64 (emphasis added) (Dkt. No. 1); *see also id.* ¶¶ 1, 4, 8, 24. 47. Plaintiffs brought this suit under Clean Air Act ("CAA" or the, "Act") section 304(a)(2), which authorizes citizen suits "against the [EPA] Administrator where there is alleged a failure of the [EPA] Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator." 42 U.S.C. § 7604(a)(2). EPA moved to dismiss, arguing that deadlines set forth solely in EPA regulations cannot constitute nondiscretionary acts or duties under the Act and thus, the Court lacked jurisdiction. EPA's Mot. to Dismiss at 6-7 (Dkt. No. 28). The Court denied EPA's motion to dismiss, holding that section 304(a)(2) applies not only to nondiscretionary duties imposed directly by the Clean Air Act, but also to duties created by EPA's regulations. Order at 5-9 (Dkt. No. 82) (denying EPA's motion to dismiss for lack of jurisdiction). The Court then granted summary judgment for Plaintiffs and ordered EPA "to promulgate regulations setting forth a federal plan, as required by 40 C.F.R. § 60.27(d), no later than November 6, 2019." Order at 16; *see also* Judgment (Dkt. No. 99).

Since the issuance of the Court's May 6, 2019 Order and Judgment, EPA's Administrator signed a final rule on August 16, 2019, that changed the submission deadline for state plans set forth at 40 C.F.R. § 60.30f(b) in the MSW Landfills Emission Guidelines from May 30, 2017, to August 29, 2019. *Final Rule*, 84 Fed. Reg. 44,547 (Aug. 26, 2019) (codified at 40 C.F.R. § 60.30f(b)) (hereinafter, the "MSW Landfills Subpart Ba Rule").

The MSW Landfills Subpart Ba Rule also amended the deadlines for EPA action on state-submitted plans and issuance of any federal plan. First, as part of another EPA action commonly referred to as the Affordable Clean Energy Rule ("ACE Rule"), EPA amended its emission guideline implementing regulations by promulgating a new 40 C.F.R. Part 60, Subpart Ba. *Final Rule*, 84 Fed. Reg. 32,520, 32,564-71 (July 8, 2019) (codified at 40 C.F.R. § 60.20a-60.29a). The new regulations at Subpart Ba require EPA to "promulgate, through notice-and-comment rulemaking, a federal plan, or portion thereof, at any time *within two years*" after EPA finds that a state failed to submit a plan, finds that a submitted plan does not satisfy certain minimum criteria, or disapproves a plan. 40 C.F.R. § 60.27a(c) (emphasis added). Second, in the MSW Landfills Subpart Ba Rule, EPA changed the cross-reference in the MSW Landfills Emission Guidelines to point to the new timing requirements in Subpart Ba instead of the prior timing requirements in Subpart B. 84 Fed. Reg. at 44,549 (codified at 40 C.F.R. § 60.30f(a)). Thus, for states that did not submit a plan to EPA by the new August 29, 2019 plan submission deadline, EPA must promulgate a federal plan within two years of the date on which EPA makes a finding that those states failed to submit plans, meaning the earliest that EPA could have a non-discretionary duty to promulgate a federal plan for any of those states would be August 30, 2021. 40 C.F.R. §§ 60.27a(d), (g)(1).

EPA previously advised the Court of the potential for a change in these regulations early in this litigation, on October 23, 2018, (Dkt. No. 68), and moved the Court to stay the litigation pending finalization of the two rules described above (Dkt. No. 70). The Court denied EPA's motion to stay on December 21, 2018 (Dkt. No. 82). In light of the finalization of these two rules, EPA moved to amend the Court's Order by vacating the requirement that EPA promulgate a federal plan by November 6, 2019 (Dkt. No. 109). The Court denied EPA's

1  motion to amend on November 5, 2019 (Dkt. No. 124).  The Court also stayed the Order
2  requiring EPA to promulgate a federal plan for sixty days, i.e. until January 7, 2020.  *Id.*
3        At this time, the United States Department of Justice's Office of the Solicitor General is
4  determining whether to pursue an appeal in this case.  To maintain the *status quo ante* and
5  prevent irreparable harm, the United States respectfully requests that the Court continue the stay
6  of its Order and Judgment requiring EPA to promulgate a federal plan for the pendency of any
7  appeal of this Court's November 5, 2019 Order by EPA, if authorized by the Solicitor General
8  of the United States.  Counsel for Plaintiffs have informed EPA that Plaintiffs will oppose
9  EPA's request for a stay pending appeal.

10 **II.    LEGAL STANDARD**

11       It "has always been held . . . that as part of its traditional equipment for the
12 administration of justice, a federal court can stay the enforcement of a judgment pending the
13 outcome of an appeal."  *Scripps-Howard Radio v. FCC*, 316 U.S. 4, 9-10 (1942) (citation
14 omitted); *Britton v. Co-Op Banking Grp.*, 916 F.2d 1405, 1412 & n.8 (9th Cir. 1990).  This is
15 because "[i]t takes time to decide a case on appeal.  Sometimes a little; sometimes a lot.  No
16 court can make time stand still while it considers an appeal, and if a court takes the time it
17 needs, the court's decision may in some cases come too late for the party seeking review."
18 *Nken v. Holder*, 129 S. Ct. 1749, 1753 (2009) (quotation and citation omitted).  The granting of
19 a stay "does not make time stand still, but does hold a ruling in abeyance to allow an appellate
20 court the time necessary to review it."  *Id.*
21       "The standard for evaluating stays pending appeal is similar to that employed by district
22 courts in deciding whether to grant a preliminary injunction."  *Lopez v. Heckler*, 713 F.2d 1432,
23 1435 (9th Cir. 1983).  In *Nken v. Holder*, the Supreme Court set forth the four factors governing
24 issuance of a stay pending appeal:  "(1) whether the stay applicant has made a strong showing
25 that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured
26 absent a stay; (3) whether issuance of the stay will substantially injure the other parties
27 interested in the proceedings; and (4) where the public interest lies . . . ."  556 U.S. at 434;
28 *Sierra Club v. Trump*, 929 F.3d 670, 708 (9th Cir. 2019).

1     "The first two factors of the traditional standard are the most critical," and "[o]nce an
2 applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to
3 the opposing party and weighing the public interest."  *Nken*, 556 U.S. at 434-35.  "'[H]arm to
4 the opposing party and weighing the public interest . . . merge when the Government' is one of
5 the parties."  *Sierra Club v. Trump*, 929 F.3d at 708 (quoting *Nken*, 556 U.S. at 434); *Drakes*
6 *Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (same); *League of Wilderness*
7 *Defenders v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) (same).  In *Sierra Club v. Trump*,
8 the Ninth Circuit noted that *Nken* "involved an application for a stay of removal by a noncitizen
9 who was facing deportation.  In that case, the Defendants sought a stay, so the question of
10 'whether Defendants will be irreparably injured absent a stay may, in practical terms, merge
11 with consideration of the public interest.'"  929 F.3d 670 at 704-05.

## III.     ARGUMENT

### A.     EPA is Likely to Succeed on the Merits.

On appeal, the Ninth Circuit will review this Court's decision to deny EPA's Rule 60(b) motion for abuse of discretion.  *Lal v. California*, 610 F.3d 518, 523 (9th Cir. 2010) (citing *Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1031 (9th Cir. 2008)).  "[A]ny questions of law underlying the district court's decision" are reviewed *de novo*.  *Lal v. California*, 610 F.3d at 523 (quoting *Jeff D. v. Kempthorne*, 365 F.3d 844, 850-51 (9th Cir. 2004).

Federal Rule of Civil Procedure 60(b) permits a party to obtain relief from a judgment or order if "applying [the judgment or order] prospectively is no longer equitable."
Fed. R. Civ. P. 60(b)(5); *Horne v. Flores*, 557 U.S. 433, 454 (2009) (a party "may obtain relief if prospective enforcement of that order 'is no longer equitable'").  As set forth in *Rufo v. Inmates of Suffolk Cnty. Jail,* 502 U.S. 367, 368 (1992), a party seeking modification of an [order] bears the burden to show that a "significant change in facts or law warrants revision of the decree and that the proposed modification is suitably tailored to the changed circumstances."  *Id.* at 368; *see also Sharp v. Weston,* 233 F.3d 1166, 1170 (9th Cir. 2000) (same).  Applying this "flexible" Rule 60(b)(5) standard, the Ninth Circuit has directed courts to "take all the circumstances into account in determining whether to modify or vacate a prior

1  injunction or consent decree." *Bellevue Manor Assocs. v. United States*, 165 F.3d 1249, 1256
2  (9th Cir. 1999).
3        Courts routinely adjust or vacate injunctions when a subsequent change in statutory law
4  changes the obligation that formed the basis for the court's injunction. *See McGrath v. Potash*,
5  199 F.2d 166, 168 (D.C. Cir. 1952); *Am. Horse Prot. Ass'n, Inc. v. Watt*, 694 F.2d 1310, 1316
6  (D.C. Cir. 1982). In both *McGrath v. Potash* and *American Horse Protection Association, Inc.*
7  *v. Watt*, the D.C. Circuit Court of Appeals found that the failure to modify injunctions in light of
8  changes in law constituted an abuse of discretion by the district court. The Ninth Circuit agrees,
9  stating that "[w]hen a change in the law authorizes what had previously been forbidden, it is an
10 abuse of discretion for a court to refuse to modify an injunction founded on superseded law."
11 *Toussaint v. McCarthy*, 801 F.2d 1080, 1090 (9th Cir. 1986) (quoting *Am. Horse Prot. Ass'n,*
12 *Inc.*, 694 F.2d at 1316). Here, there can be no question that if the duty at issue was specified in
13 the Clean Air Act and Congress changed the deadline in the Act, this Court would have found
14 that a change in the timing of the duty would warrant modification of its Order. *See* Order at 4.
15 Failing to do so in such an instance would clearly be an abuse of discretion.
16       Even where the underlying injunction was based on a regulation that was changed after
17 issuance of an injunction, a subsequent regulatory change has resulted in a court modifying an
18 injunction. *Class v. Norton*, 507 F.2d 1058, 1062 (2d Cir. 1974). In *Class v. Norton*, the
19 Second Circuit found reversible error in the district court's refusal to modify an injunction
20 requiring a state agency to process applications in 30 days after the governing federal regulation
21 was changed to allow 45 days. *Id*. The court specifically considered the fact that the deadline
22 was found in a regulation and concluded that it made no difference, stating that "[t]he
23 regulations . . . have the presumptive force of law and we see no reason to accord lesser respect
24 to a change in regulation than to one in statute, . . . and thus regard this distinction as
25 immaterial." *Id.* at 1062 (internal citations omitted).
26       The only difference here is that EPA, using its inherent and undisputed authority to both
27 issue and amend the regulations in question, and not a third party, changed the deadline. The
28 Court incorrectly determined that vacatur of the Order requiring EPA to take action based on a

1  superseded regulatory deadline is not required solely because "the change in law was made by a
2  non-party." Order at 4-5.  The Court acknowledged that in the Ninth Circuit district courts must
3  apply a "flexible" Rule 60(b)(5) standard and "take *all the circumstances* into account in
4  determining whether to modify or vacate a prior injunction or consent decree," *Bellevue Manor*,
5  165 F.3d at 1256 (emphasis added).  *See* Order at 3.  Nonetheless, the Court fails to take into
6  account or even address the fundamental basis of EPA's motion to amend -- that the change in
7  EPA's regulations must be treated the same as a change in statutory law where the Court
8  asserted jurisdiction by holding that a deadline set forth in EPA's regulations constitutes an "act
9  or duty under this chapter," 42 U.S.C. § 7604(a)(2).  *See* EPA's Mot. at 4-5.  Giving due
10 consideration to the jurisdictional basis of this matter, the Court's reliance on the notion that
11 "EPA's voluntary action here makes this case unlike those where subsequent changes in the law
12 were enacted by third parties, as opposed to by the very party subject to the Court's order,"
13 Order at 4-5, is misplaced.  Indeed, in this case of first impression, this Court carves a new
14 exception to the general rule that subsequent changes in law are grounds for modification of a
15 court's order under Rule 60(b)(5).

16       The Court's finding that relief is not warranted because EPA's new regulations were not
17 issued in response to this Court finding the old regulations defective is similarly misplaced.
18 Order at 5 (noting that the present situation is not one of an agency modifying a regulation
19 found to be deficient to address the deficiency identified by the court).  The Court incorrectly
20 concluded that *NAACP, Jefferson County Branch v. Donovan*, 737 F.2d 67 (D.C. Cir. 1984), is
21 distinguishable because the agency's subsequent regulation "sought to cure the deficiency
22 identified" by the district court. Order at 5.  In *NAACP v. Donovan*, the district court initially
23 found that the Department of Labor's "method for calculating minimum wage rates for migrant
24 farmworkers was contrary to [the Department's] own regulations," *not* that the regulations
25 themselves were defective.  *Id*. at 68; *see NAACP v. Donovan*, 558 F. Supp. 218, 223 (D.D.C.
26 1982) ("This suit requires determination of one basic issue—whether the DOL is complying
27 with its own regulations.").  Following the district court's determination that the Department of
28 Labor's method was inconsistent with its regulations, the Department amended one of the

regulations. 737 F.2d at 68. The district court enjoined the Department from implementing that regulation. *Id*. The district court based that order, in part, "on its conclusion 'that there is substantial doubt that defendants could supersede [the district court's] order simply by promulgating a new regulation without obtaining modification of that order.'" *Id*. at 71. On appeal, the D.C. Circuit reversed the district court, explaining that the district court's earlier orders were "premised on a finding that the Labor Department had violated its own regulations," and "the Labor Department was free to amend its regulations through proper rulemaking proceedings." *Id*. at 72.

Thus, in *NAACP v. Donovan*, the district court found that the Department had violated its own regulation, and in the present case, this Court found that EPA had failed to take action on the timeline required by its own regulation. Just as the Department did in *NAACP v. Donovan*, after the Court found that EPA had not complied with its own regulations, EPA amended two regulations through notice-and-comment rulemaking. Thus, *NAACP v. Donovan* remains directly relevant to the case at hand. And as the D.C. Circuit required in a *NAACP v. Donovan*, this Court must give effect to those new regulations. EPA is unaware of any other cases drawing a distinction between changes in law that address deadlines and those that address substantive aspects of the regulations found to be deficient by a court.

Further, EPA's new regulations are not, as the Court speculates, an effort to "sidestep[ ] the Court's order." Order at 5. First, in the ACE Rule, EPA amended its outdated 1975 emission guideline implementing regulations, consistent with Congressional direction to "prescribe regulations which shall establish a procedure similar to that provided by section [1]10," 42 U.S.C. § 7411(d)(1). 84 Fed. Reg. at 32,564. The new implementing regulations provide a framework under which states submit state plans and EPA takes action on those plans that more closely aligns with CAA section 110. *Id*. These regulations apply to all new emissions guidelines, not just those at issue in this litigation. Second, in the MSW Landfills Subpart Ba Rule, EPA simply amended the cross-references and deadline in the MSW Landfills Emission Guidelines to align with the new timing requirements in the implementing regulations. 84 Fed. Reg. at 44,547-49; *see also* 83 Fed. Reg. 54,529.

The speculative scenario posited by the Court, that EPA's valid and in-force regulatory changes simply "delay[ ] EPA's fulfillment of unchanged obligations with no guarantee that this precise situation will not occur again in two years' time," or that EPA could "perpetually evade judicial review," Order at 5, is unfounded and belied by the availability of judicial review under CAA section 307(b)(1), 42 U.S.C. § 7607(b)(1).  Pursuant to section 307(b)(1), both new regulations are challengeable and, indeed, are being challenged in the Court of Appeals for the District of Columbia by the Plaintiffs in this matter.[2]  The availability of judicial review obviates the Court's apparent concern that EPA could indefinitely adjust the state plan submission deadline and resulting deadline for promulgation of a federal plan.  That is, judicial review precludes the arbitrary resetting of the deadlines that the Court speculates could occur.[3] Thus, for this and the foregoing reasons, EPA has demonstrated that it is likely to succeed on the merits of an appeal.  *See Nken*, 556 U.S. at 434.

**B.    EPA Will Suffer Irreparable Harm in the Absence of a Stay.**

Failure to amend the Order in light of EPA's lawful changes to its regulations impermissibly erodes the separation of powers and irreparably harms the agency.  "[T]here is inherent harm to an agency in preventing it from enforcing regulations that Congress found it in the public interest to direct that agency to develop and enforce."  *Seaside Civic League, Inc. v. HUD*, No. C-14-1823-RMW, 2014 WL 2192052, at *3 (N.D. Cal. May 23, 2014) (quoting

---

[2] *See New York v. EPA*, Case No. 19-1140 (D.C. Cir.) (consolidated) (challenging the ACE Rule) (petitioners include Plaintiff States California, Rhode Island, Pennsylvania, Oregon, New Mexico, Vermont, Illinois, and Maryland); *Appalachian Mountain Club, et al. v. EPA*, Case No. 19-1140 (D.C. Cir.) (consolidated) (same) (petitioners include the Environmental Defense Fund ("EDF")); *California v. EPA*, Case No. 19-1227 (D.C. Cir.) (challenging the MSW Landfills Subpart Ba Rule); *EDF v. EPA*, Case No. 19-1222 (D.C. Cir.) (same).

[3] Moreover, citizens can seek to have district courts impose deadlines on EPA via a suit to compel action unreasonably delayed.  42 U.S.C. § 7604(a).  In its motion to dismiss, EPA recognized this potential remedy for a citizen dissatisfied with EPA's failure to undertake mandatory action for which the Clean Air Act provides no deadline.  EPA's Mot. to Dismiss at 4-5, 8-9 (Dkt. No. 28).  If a district court were to find that EPA had unreasonably delayed in carrying out its statutory obligations and subsequently imposed a deadline, no change in the associated regulatory deadlines would provide grounds for alteration of that court-ordered deadline.

*Cornish v. Dudas*, 540 F. Supp. 2d 61, 65 (D.D.C. 2008)) *aff'd sub nom*. *Cornish v. Doll*, 330 Fed. Appx. 919 (Fed. Cir. 2009) and citing *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers) (concluding that "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury")); *see also Coal. for Econ. Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997) (same).

Here, the Clean Air Act required EPA to promulgate regulations implementing section 111(d) of the Act, 42 U.S.C. § 7411(d), by "establish[ing] a procedure similar to that provided by section [1]10," but allowed the agency significant latitude in the specific details. Pursuant to that Congressional directive, EPA promulgated its initial implementing regulations in 1975 and amended those regulations this year to be more in accord with amendments Congress made to CAA section 110 in 1990. 84 Fed. Reg. at 32,521, 32,564. Similarly, EPA issued the MSW Landfills Emission Guidelines in 2016 and amended those guidelines this year to cross-reference the revised implementing regulations. 84 Fed. Reg. at 32,564, 44,549. These substantive regulations "have the force and effect of law," *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1219 (2015), but the Court's Order requiring EPA to issue a federal plan by January 7, 2020, before a federal plan is required under the new regulations, essentially nullifies EPA's valid regulatory actions. Refusing to give them effect is inconsistent with the Constitutional separation of powers and inherently imposes harm on the agency and the public.

Likewise, failure to amend the Order denigrates the principle of cooperative federalism which is central to the Clean Air Act. The Clean Air Act is intended to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare." 42 U.S.C. § 7401(b)(1). The Act "has established a uniquely important system of cooperative federalism in the quest for clean air," *Comm. for a Better Arvin v. EPA*, 786 F.3d 1169, 1173 (9th Cir. 2015), in which "the States and the Federal Government partner in the struggle against air pollution," *Mont. Envtl. Info. Ctr. v. Thomas*, 902 F.3d 971, 974 (9th Cir. 2018) (quoting *General Motors Corp. v. United States*, 496 U.S. 530, 532 (1990)). Relevant to this case is the shared federal and state responsibility in CAA section 111, which requires states to prepare and

MOTION FOR STAY PENDING APPEAL
AND [PROPOSED] ORDER
10

implement state plans and then, only if they fail to provide a state plan or submit an insufficient state plan, for EPA to prepare and implement a federal plan. 42 U.S.C. § 7411(c)-(d).

Under EPA's new implementing regulations, submitted state plans are first subject to a completeness review, followed by a substantive review to determine whether the plans are approvable. 40 C.F.R. § 60.27a(g). The completeness review ensures that submitted state plans meet each of the administrative criteria listed in 40 C.F.R. § 60.27a(g)(2). If EPA does not make a completeness determination, the plan becomes complete by operation of law. *Id*. § 60.27a(g)(1). Once found to be complete or deemed complete, EPA reviews the plan and determines whether to approve or disapprove the state plan. *Id*. § 60.27a(b). States that submit plans under Subpart Ba would not be subject to a federal plan unless and until EPA disapproved that state plan or found it incomplete. *Id*. § 60.27a(d). For states that fail to submit a state plan by the submission deadline in 40 C.F.R. § 60.30f(b), EPA is required to promulgate a federal plan within two years after EPA "[f]inds that a State fails to submit a required plan or plan revision." *Id*. § 60.27a(c)(1).

Under the Court's Order requiring issuance of a federal plan by January 7, 2019, upon expiration of the Court's stay, however, states that submit a plan that has not yet been approved or that fail to submit a plan would inappropriately be immediately subject to a federal plan. Immediate imposition of a federal plan, without the submission, review, and approval process in the regulations, particularly the opportunity to have state plans considered initially before EPA issues a federal plan, turns that bedrock principle on its head and irreparably injures EPA. *See, e.g.*, *Texas v. EPA*, 829 F.3d 405, 434 (5th Cir. 2016) (holding that institutional injury to Texas from the inversion of the federalism principles enshrined in the Clean Air Act may constitute irreparable injury).

Further, although it is EPA's position that its appeal would not become moot if the Court does not stay its Order and EPA is required to promulgate a federal plan,[4] Plaintiffs might argue that EPA's appeal is moot. Should Plaintiffs succeed in arguing that EPA's appeal is moot, that

---

[4] EPA does not agree that an appeal would be moot. *See Maher v. Roe*, 432 U.S. 464, 469 n.4 (1977); *Lewis v. Hagstrom*, 767 F.2d 1371, 1372 n.1 (9th Cir. 1985).

1 would cause irreparable harm to the agency because it would have no opportunity to vindicate its position on appeal. *See Protectmarriage.com—Yes on 8 v. Bowen*, 752 F.3d 827, 838 (9th Cir. 2014) (noting that "the utmost caution" should be used to avoid a situation in which the denial of the requested relief creates a "mootness Catch-22").

Thus, EPA has demonstrated irreparable injury sufficient to justify a stay pending appeal.

### C. The Balance of the Equities Favors a Stay.

As explained above, EPA will be irreparably harmed if the Court's Order is not stayed. EPA expects that Plaintiffs will allege harm from landfill emissions that are not being addressed during the pendency of an appeal. However, the number of landfills expected to be impacted by the MSW Landfill Emission Guidelines is small. In 2016, EPA estimated that there are 1,913 landfills that would potentially be covered by a federal plan because the federal plan applies to all existing landfills, regardless of their size and emissions. *Proposed Rule*, 84 Fed. Reg. 43,745, 43,750 (Aug. 22, 2019). However, of the 1,913 landfills potentially covered, only 93 would have to install controls pursuant to a federal plan as a result of the new lower non-methane organic compound emissions threshold. 81 Fed. Reg. 59,276, 59,305, tbl. 2. The vast majority of covered landfills have already installed controls under the older 1996 rules. 84 Fed. Reg. at 43,750.

Further, a myopic focus on the MSW Landfills Emission Guidelines fails to recognize that MSW landfills are currently subject to numerous other regulations including: New Source Performance Standards, 40 C.F.R. part 60, Subparts WWW and XXX; state plans under the prior emission guidelines, 40 C.F.R. part 60, Subpart Cc; the federal plan implementing the prior emission guidelines, 40 C.F.R. part 62, Subpart GGG; and the National Emission Standards for Hazardous Air Pollutants for MSW landfills, 40 C.F.R. part 63, Subpart AAAA. Thus, considered in comparison to the harms to EPA, the balance favors EPA.

### D. A Stay is in the Public Interest.

"[I]t is [the government] who seek a stay, so the question whether [the government] will be irreparably injured absent a stay may, in practical terms, merge with consideration of the

1   public interest." *Sierra Club v. Trump*, 929 F.3d 670, 704-05 (9th Cir. 2019).  Thus, the
2   irreparable harm to EPA described above must also be considered to be contrary to the public
3   interest.  An order failing to give meaning to duly promulgated regulatory amendments issued
4   by an Executive Branch agency inherently imposes harm on the public, by thwarting the legal
5   effect of the public's chosen representative.  *See*, *e.g.*, *New Motor Vehicle Bd. v. Orrin W. Fox
6   Co.*, 434 U.S. at 1351.  The new implementing regulation is consistent with Congressional
7   direction to "prescribe regulations which shall establish a procedure similar to that provided by
8   section [1]10," 42 U.S.C. § 7411(d)(1), as provide a framework under which states submit state
9   plans and EPA takes action on those plans that more closely aligns with CAA section 110.  84
10  Fed. Reg. at 32,564.  Thus, in assessing the public interest, a court must heed "the judgment of
11  Congress, deliberately expressed in legislation," and "the balance that Congress has struck."
12  *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 497 (2001).  As explained
13  above, absent a stay pending appeal, the full force and effect of EPA's regulatory changes will
14  not be realized, an outcome that is contrary to the public interest.

15  **IV.    CONCLUSION**

16          For the foregoing reasons, EPA respectfully requests that the Court stay its Order and
17  Judgment requiring EPA to "promulgate regulations setting forth a federal plan, as required by
18  40 C.F.R. § 60.27(d), no later than November 6, 2019," currently stayed until January 7, 2020,
19  pending any appeal of that Order by EPA to the United States Court of Appeals for the Ninth
20  Circuit.  Given the impending expiration of the stay on January 7, 2020, EPA requests a
21  decision from this Court as soon as possible, and at the latest by December 9, 2019, to allow
22  time to seek relief from the Ninth Circuit if necessary.
23  //
24  //
25  //
26  //
27  //
28  //

Respectfully submitted,

Date:  November 22, 2019

  /s/ Leslie M. Hill
LESLIE M. HILL (D.C. Bar No. 476008)
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
4 Constitution Square
150 M St. N.E.
Suite 4.149
Washington D.C.  20002
Leslie.Hill@usdoj.gov
Telephone (202) 514-0375
Facsimile (202) 514-8865

*Attorneys for Defendants*

Of Counsel:

    Karen Palmer
    Matthew Marks
    Office of General Counsel
    United States Environmental Protection Agency