XAVIER BECERRA
Attorney General of California
GARY E. TAVETIAN
DAVID A. ZONANA
Supervising Deputy Attorneys General
TIMOTHY E. SULLIVAN, SBN 197054
ELIZABETH B. RUMSEY, SBN 257908
JULIA K. FORGIE, SBN 304701
Deputy Attorneys General
    1515 Clay Street, 20th Floor
    P.O. Box 70550
    Oakland, CA 94612-0550
    Telephone: (510) 879-0860
    liz.rumsey@doj.ca.gov

*Attorneys for the State of California,*
*by and through Attorney General Xavier Becerra*
*and the California Air Resources Board*

Additional counsel listed on signature page

SUSANNAH L. WEAVER
Donahue, Goldberg & Weaver, LLP
    1008 Pennsylvania Avenue SE
    Washington, DC 20003
    Telephone: (202) 569-3818
    susannah@donahuegoldberg.com

PETER ZALZAL
RACHEL FULLMER
    Environmental Defense Fund
    2060 Broadway, Suite 300
    Boulder, CO 80302
    Telephone: (303) 447-7214
    pzalzal@edf.org
    rfullmer@edf.org

*Attorneys for Environmental Defense*
*Fund*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| **STATE OF CALIFORNIA, *et al.*,**<br><br>   **Plaintiffs,**<br><br>   **v.**<br><br>**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,**<br><br>   **Defendants** | Case No. 4:18-cv-03237-HSG<br><br>**PLAINTIFFS' OPPOSITION TO EPA'S MOTION FOR STAY PENDING APPEAL**<br><br>Judge: The Hon. Haywood S. Gilliam, Jr. |

1

**TABLE OF CONTENTS**

2

**Page**

3   I.      INTRODUCTION ................................................................................................. 1

4   II.     LEGAL STANDARD........................................................................................... 2

    III.    ARGUMENT ....................................................................................................... 3

5           A.      EPA Is Not Likely to Succeed on the Merits of Any Appeal. ................... 3

6                   1.      This Court's Exercise of Its Broad Discretion to Deny
                            EPA's Rule 60(b) Motion Is Reviewed Under an Abuse of
7                           Discretion Standard.......................................................................... 3

8                   2.      The Circumstances of this Case Strongly Support the
                            Court's Decision to Deny EPA's Rule 60(b) Motion. ................... 4

9                   3.      EPA's Arguments Do Not Call Into Question the Validity of
                            This Court's Order. .......................................................................... 7

10          B.      EPA Will Not Be Irreparably Harmed. .................................................... 11

11          C.      A Stay Will Substantially Injure the Public. ............................................ 14

            D.      The Public Interest Weighs In Favor Of Denying A Stay. ...................... 15

12  IV.     CONCLUSION .................................................................................................. 17

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

i

1

# TABLE OF AUTHORITIES

2

Page

3

CASES

4

*Bellevue Manor Assocs. v. United States*
    165 F.3d 1249 (9th Cir. 1999) ....................................................................3, 4, 7, 11

5

6

*Chicago & S. Air Lines v. Waterman S.S. Corp.*
    333 U.S. 103 (1948) .................................................................................................8

7

*Class v. Norton*
    507 F.2d 1058 (2d Cir. 1974) ..................................................................................9

8

9

*De Saracho v. Custom Food Machinery, Inc.*
    206 F.3d 874 (9th Cir. 2000) ...................................................................................3

10

11

*Fed. Trade Comm'n v. Qualcomm Inc.*
    935 F.3d 752 (9th Cir. 2019) .................................................................................16

12

*Frew v. Hawkins*
    540 U.S. 431 (2004) .................................................................................................9

13

14

*Horne v. Flores*
    557 U.S. 433 (2009) .................................................................................................4

15

16

*In re Cmty. Voice*
    878 F.3d 779 (9th Cir. 2017) ...................................................................................6

17

*Innovation Law Lab v. McAleenan*
    924 F.3d 503 (9th Cir. 2019) .................................................................................16

18

19

*Jeff D. v. Kempthorne*
    365 F.3d 844 (9th Cir. 2004) ...............................................................................3, 9

20

21

*League of Wilderness Defenders/Blue Mtns. Biodiversity Project v. Connaughton*
    752 F.3d 755 (9th Cir. 2014) .................................................................................15

22

*League of Women Voters of United States v. Newby*
    838 F.3d 1 (D.C. Cir. 2016) ..................................................................................16

23

24

*Leiva-Perez v. Holder*
    640 F.3d 962 (9th Cir. 2011) ...................................................................................3

25

*McGrath v. Potash*
    199 F.2d 166 (D.C. Cir. 1952) ...............................................................................9

26

27

*NAACP, Jefferson County Branch v. Donovan*
    737 F.2d 67 (D.C. Cir. 1984) ...............................................................................10

28

ii

1

2

### TABLE OF AUTHORITIES
### (continued)

Page

3

*Nat. Res. Def. Council v. Winter*

4
    508 F.3d 885 (9th Cir. 2007) .................................................................................13

5

*Nken v. Holder*
    556 U.S. 418 (2009) ...................................................................................2, 3, 15

6

*Phelps v. Alameida*

7
    569 F.3d 1120 (9th Cir. 2009) .............................................................................15

8

*Plaut v. Spendthrift Farm, Inc.*
    514 U.S. 211 (1995) ...............................................................................................4

9

*Rufo v. Inmates of Suffolk Cty. Jail*

10
    502 U.S. 367 (1992) ...........................................................................4, 8, 9, 13

11

*Sierra Club v. Trump*

12
    929 F.3d 670 (9th Cir. 2019) ..........................................................................15, 16

13

*Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*

14
    364 U.S. 642 (1961) ...............................................................................................4

15

*Taylor v. United States*
    181 F.3d 1017 (9th Cir. 1999) (*en banc*) ...............................................................8

16

*Toussaint v. McCarthy*

17
    801 F.2d 1080 (9th Cir. 1986) ......................................................................7, 8, 9

18

*Trump v. Int'l Refugee Assistance Project*
    137 S. Ct. 2080 (2017) .........................................................................................15

19

*United States v. Aguilar*

20
    782 F.3d 1101 (9th Cir. 2015) ......................................................................3, 4, 11

21

*United States v. United Shoe Machinery Corp.*

22
    391 U.S. 244 (1968) ...............................................................................................4

23

*Valdivia v. Schwarzenegger*
    599 F.3d 984 (9th Cir. 2010) .................................................................................4

24

*Wood v. Ryan*

25
    759 F.3d 1117 (9th Cir. 2014) ...............................................................................3

26

27

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

4

**STATUTES**

5

5 U.S.C. § 555(b) .................................................................................................................6

6

42 U.S.C.

7

§ 7401(b)(1) ............................................................................................................12

8

§ 7411 .......................................................................................................................2

9

§ 7604(a) ...................................................................................................................6

10

§ 7604(a)(2) ..............................................................................................................9

11

**COURT RULES**

12

Fed. R. Civ. P. 60(b) ................................................................................................... *passim*

13

**FEDERAL REGISTER**

14

*Emission Guidelines and Compliance Times for Municipal Solid Waste Landfills*
    81 Fed. Reg. 59,276 (Aug. 29, 2016) ...............................................................2, 14

15

16

*Federal Plan Requirements for Municipal Solid Waste Landfills That Commenced*
    *Construction On or Before July 17, 2014, and Have Not Been Modified or*
    *Reconstructed Since July 17, 2014*
    84 Fed. Reg. 43,745 (Aug. 22, 2019) ....................................................................13

17

18

19

*Adopting Requirements in Emission Guidelines for Municipal Solid Waste*
    *Landfills*
    84 Fed. Reg. 44,547 (Aug. 26, 2019) ......................................................................1

20

21

*Approval and Promulgation of State Plans for Designated Facilities and*
    *Pollutants: Virginia; Emission Standards for Existing Municipal Solid Waste*
    *Landfills*
    84 Fed. Reg. 57,839 (Oct. 29, 2019) .....................................................................13

22

23

24

25

26

27

28

iv

## I.    INTRODUCTION

The Environmental Protection Agency's ("EPA") motion for a stay pending a (possible) appeal should be denied. EPA is likely to fail on the merits of its appeal, and the equities tilt sharply in favor of rejecting EPA's bid to continue its years-long campaign to delay—without *any* persuasive rationale—implementing standards to protect human health and welfare. Indeed, if this Court grants EPA a stay pending appeal, the agency will have every incentive to appeal, to secure the precise delay it has sought all along.

Last May, this Court exercised its discretion to fashion an appropriate remedy through a final judgment for EPA's conceded and longstanding violation of its mandatory duty under the Clean Air Act to protect human health and welfare. Order Granting in Part and Denying in Part Plaintiffs' Motion for Summary Judgment and Denying Defendants' Motion for Summary Judgment ("Summary Judgment Order"), ECF No. 98. EPA did not appeal that ruling. Rather, it promulgated a regulation changing the deadlines[1] it failed to meet long ago and then moved for relief from this Court's final judgment under Federal Rule of Civil Procedure 60(b). This Court again exercised its broad discretion and declined to relieve EPA of its obligations under that final judgment when EPA failed to carry its burden to demonstrate that continued enforcement of the judgment was inequitable. Order Denying Defendants Rule 60(B) Motion to Alter Judgment ("Rule 60(b) Order"), ECF No. 124.

In its continued quest for delay, EPA now asks this Court to stay its earlier final judgment pending a (possible) appeal of the Court's Rule 60(b) Order.[2] Mot. for Stay Pending Appeal, ECF No. 129 ("Mot."). The equities continue to weigh heavily against EPA's attempts to delay. This Court's decision to deny EPA relief from the judgment under the circumstances was correct and certainly not an abuse of discretion. EPA does not point to a single individual or entity that will be practically harmed absent a stay, but argues instead that the Court's Rule 60(b) Order prevents

---

[1] *Adopting Requirements in Emission Guidelines for Municipal Solid Waste Landfills* ("Delay Rule"), 84 Fed. Reg. 44,547 (Aug. 26, 2019).

[2] In other words, EPA seeks not to maintain the status quo that existed before the November 5 Rule 60(b) Order it may appeal—a November 6, 2019 deadline for promulgation of a federal plan—but to alter that status quo by essentially nullifying the Court's valid final judgment that the agency did not even appeal.

1

it from "enforcing" its Delay Rule "consistent with Congressional direction." Mot. at 9, 13. But there is no direct conflict between this Court's Order and the Delay Rule, and it is EPA's actions here that are entirely inconsistent with Congressional direction, insofar as what the agency seeks is to further delay fulfilling its substantive mandate to reduce the emission of pollutants that endanger public health and welfare. 42 U.S.C. § 7411(b)(1)(A). EPA has never denied that the underlying Emission Guidelines[3] are in the public interest, nor disputed that EPA is poised to fulfill its long-overdue obligation by finalizing a federal plan implementing them.

This stay motion and EPA's Rule 60(b) motion for relief share a central element: both assert that EPA's bare regulatory change suffices to carry EPA's burden to show inequity warranting relief from final judgment under Rule 60(b) or, as here, irreparable harm and public interest warranting a stay. But in neither motion did EPA explain how its regulatory change reflects a shift in the public interest or why continued enforcement of this Court's final judgment actually harms anyone. EPA's muscular view of blind deference to executive acts is wrong in both instances. EPA's regulatory change does not constrain this Court's discretion to weigh the equities and the public interest in deciding whether to require EPA to perform its long-overdue duties. In contrast to EPA's failure to show harm if the stay is not granted, and as this Court has already concluded several times, Plaintiffs and the public at large will be harmed by the additional climate-destabilizing and health-harming pollution that EPA's continued delay causes. A stay is not warranted.

## II.   LEGAL STANDARD

"A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (internal quotation marks omitted) (explaining that the parties and the public are "entitled to the prompt execution of orders that the legislature has made final"). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433-34.

---

[3] *Emission Guidelines and Compliance Times for Municipal Solid Waste Landfills* ("Emissions Guidelines"), 81 Fed. Reg. 59,276 (Aug. 29, 2016).

In determining whether to issue a stay pending appeal, a court considers the four traditional factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties' interest in the proceeding; and (4) where the public interest lies." *Id.* at 434. "The first two factors . . . are the most critical." *Id.*

With respect to the likelihood of success on the merits, the *Nken* Court stated, "[i]t is not enough that the chance of success on the merits be better than negligible." *Id.* (internal quotation marks omitted). The Ninth Circuit has "long required more on the 'likelihood of success' factor than what *Nken* rejected." *Leiva-Perez v. Holder*, 640 F.3d 962, 967 (9th Cir. 2011). Specifically, it requires "a *probability* of success on the merits . . . ." *Id.* (emphasis added). Similarly, for the second factor, the movant "must show that an irreparable injury is the *more probable* or likely outcome." *Id.* at 968 (emphasis added). Where those two factors are satisfied, the third and fourth factors come into play: the court assesses the harm to the opposing party and the public interest. EPA is wrong to suggest, Mot. at 5, 11–12, that because a federal agency is the party requesting a stay, the second and fourth factors—irreparable harm and the public interest—are necessarily coextensive. *See infra* pp. 16–17.

## III.   ARGUMENT

### A.   EPA Is Not Likely to Succeed on the Merits of Any Appeal.

#### 1.   This Court's Exercise of Its Broad Discretion to Deny EPA's Rule 60(b) Motion Is Reviewed Under an Abuse of Discretion Standard.

This Court's decision to deny EPA's motion for relief from final judgment will be reviewed on appeal under the "deferential abuse of discretion" standard, *Wood v. Ryan*, 759 F.3d 1117, 1119 (9th Cir. 2014), and the Court of Appeals "will reverse only upon a clear showing of abuse of discretion," *De Saracho v. Custom Food Machinery, Inc.*, 206 F.3d 874, 880 (9th Cir. 2000). *See also Jeff D. v. Kempthorne*, 365 F.3d 844, 850 (9th Cir. 2004); *Bellevue Manor Assocs. v. United States*, 165 F.3d 1249, 1252 (9th Cir. 1999). In applying the abuse of discretion test, the Court of Appeals first determines *de novo* whether the district court applied the correct legal standard. *United States v. Aguilar*, 782 F.3d 1101, 1105 (9th Cir. 2015). If it did, the Court of

3

1    Appeals will only overturn this Court's discretionary decision if it was "(1) 'illogical,'

2    (2) 'implausible,' or (3) 'without support in inferences that may be drawn from the facts in the

3    record.'" *Id.* (quoting *United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en

4    banc)). The Court of Appeals may not reverse "absent a definite and firm conviction that the

5    district court committed a clear error of judgment in the conclusion it reached upon a weighing of

6    relevant factors." *Valdivia v. Schwarzenegger*, 599 F.3d 984, 988 (9th Cir. 2010).

7           Pursuant to Federal Rule of Civil Procedure 60(b), "on . . . just terms, the court *may* relieve

8    a party . . . from a final judgment," if "applying it prospectively is no longer equitable." Fed. R.

9    Civ. P. 60(b) & (b)(6) (emphasis added). "[T]he Rule provides a means by which . . . to modify or

10   vacate a judgment . . . if a significant change either in factual conditions or in law renders

11   continued enforcement detrimental to the public interest." *Horne v. Flores*, 557 U.S. 433, 447

12   (2009) (internal quotation marks omitted); *see Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 233-

13   34 (1995) ("Rule 60(b) . . . authorizes discretionary judicial revision of judgments . . . whose

14   enforcement would work inequity."). In exercising its "wide discretion," under Rule 60(b), *Sys.*

15   *Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 648 (1961), a court must "take

16   all the circumstances into account, . . . because equity demands a flexible response to the unique

17   conditions of each case," *Bellevue Manor*, 165 F.3d at 1256 (internal quotation marks omitted).

18   The burdens of proof and persuasion lie with the party seeking relief from judgment, who must

19   establish both "that a significant change in facts or law warrants revision of the decree and that

20   the proposed modification is suitably tailored to the changed circumstances." *Rufo v. Inmates of*

21   *Suffolk Cty. Jail*, 502 U.S. 367, 393 (1992). Rule 60(b) relief should not be awarded "in the

22   interest of the defendants if the purposes of the litigation as incorporated in the decree . . . have

23   not been fully achieved." *United States v. United Shoe Machinery Corp.*, 391 U.S. 244, 248

24   (1968).

25           **2.      The Circumstances of this Case Strongly Support the Court's**
                       **Decision to Deny EPA's Rule 60(b) Motion.**

26           There is no question that, in ruling on EPA's Rule 60(b) motion, this Court applied the

27   correct standard. Far from being "illogical," "implausible," or "without support," *Aguilar*, 782

28

                                                    4

F.3d at 1105, the Court's decision to deny the motion is well-supported by the circumstances of this case.

First, this Court noted that "EPA undisputedly violated the [law]," and that EPA's action to change the law was not intended to "remedy its violation," but in effect to perpetuate it through further delay. Rule 60(b) Order at 4. Second, as this Court also found, that violation continues to harm Plaintiffs, and EPA has never disputed that implementing the Emission Guidelines is in the public interest—it has only disputed *when* it should implement them. *Id.* at 4 n. 4, 5, 6 ("EPA then enacted the new regulations, which only delay EPA's obligations, rather than changing them."); *see* Delay Rule, 84 Fed. Reg. at 44,554 (The Delay Rule "does not change the stringency of the emission reduction requirements promulgated in the [Emission Guidelines].").[4] As this Court noted at the Rule 60(b) hearing, "the Government is asserting the ability to erase the commitment it made before and extend the deadline to comply by a period of several years, *even while acknowledging that the harms that are the target of the rule are significant*." Transcript of Proceedings ("Tr."), ECF No. 122 (emphasis added).

Third, as this Court also found, after a long and unlawful delay, EPA is poised to comply fully with this Court's order to issue a federal plan, and has conceded that doing so "is not a significant regulatory action." Rule 60(b) Order at 5–6 (citing 84 Fed. Reg. at 43,755). The comment period closed on October 7, 2019—nearly two months ago—and the agency received only a few substantive comments. EPA need only publish the federal plan. This Court thus observed that there was "limited work remaining," *id*. at 6; EPA has not claimed it cannot meet this Court's deadline; and there is nothing in the record to support a conclusion that the deadline is no longer reasonable. Fourth, this Court correctly found that "[i]ssuing a final federal plan poses no obstacle to EPA's [Delay] Rule" as it "does not prevent states from submitting, and EPA from approving new state plans." *Id.*

---

[4] The Emission Guidelines are already being implemented in five states (Arizona, California, Delaware, New Mexico, and West Virginia), and the only question is when residents of the remaining 45 states will receive the same protections as the residents of these five states.

Fifth, as this Court also correctly concluded, the conditions of this case are unique because, among other reasons, it is the *losing party itself* that effected the post-judgment change in law. *Id.* at 4–5. Accordingly, "EPA's voluntary action here makes this case unlike those where subsequent changes in law were enacted by third parties, as opposed to by the very party subject to the Court's order." *Id.* That unique condition, where EPA is trying to be both a player and the referee, raises significant separation of powers concerns. This Court also correctly pointed out that EPA's post-judgment change of law "sidesteps the Court's order," and "presents a serious concern that . . . [the] agency can perpetually evade judicial review through amendment, even after a violation has been found." *Id.* at 5.

EPA claims that the availability of judicial review of regulatory changes in the D.C. Circuit would adequately safeguard the separation of powers. Mot. at 9. That is incorrect. By requiring a plaintiff to bring a new suit, which takes, on average, more than a year to resolve, EPA's proposed solution would grant the agency the delay it seeks. Moreover, even if the plaintiff won that suit, and the original deadlines were reinstated, EPA could still refuse to comply with its mandatory regulatory duty (as it has done here since 2017), forcing plaintiffs to pursue a third lawsuit to enforce those duties—at which time EPA could move the goalposts yet again by issuing another delay rule. That outcome, which is hardly far-fetched given EPA's actions over the past three years, is contrary not only to the public interest but also to the constitutional separation of powers. *Cf.* Rule 60(b) Order at 5.

EPA proves the point by admitting that it could not serially delay implementing its legal duties in this fashion if the agency had not established a date-certain deadline in the first place. In that case, plaintiffs could have filed a citizen suit to challenge EPA's failure to implement the Emission Guidelines "within a reasonable time." 5 U.S.C. § 555(b); *see also* 42 U.S.C. § 7604(a). Given that EPA has delayed implementation of the 2016 Emission Guidelines for multiple years, this Court very likely would have found unreasonable delay and ordered the agency to implement the Guidelines by a date-certain deadline. *See, e.g., In re Cmty. Voice*, 878 F.3d 779, 787-88 (9th Cir. 2017) (observing that courts often find that delays of many years are unreasonable). As EPA concedes, "[i]f a district court were to find that EPA had unreasonably delayed in carrying out its

6

statutory obligations and subsequently imposed a deadline, no change in the associated regulatory deadlines would provide grounds for alteration of that court ordered deadline." Mot. at 9 n.3. Yet EPA contends that this Court's deadline must yield to the Delay Rule *because the agency itself had recognized that implementing the Emission Guidelines was important enough to self-impose a date-certain deadline*. That reasoning is backwards. If an agency cannot use its regulatory powers to overturn judicial deadlines prompted by unreasonable delay, it should not be able to use them to overturn judicial deadlines prompted by noncompliance with date-certain deadlines.

Finally, while this Court need not consider the rationale for the Delay Rule in order to conclude that EPA has not met its burden, that rationale is contradicted by the record in this case. The preamble to the Delay Rule states that "the rulemaking requirements in CAA section 307(d)" "involve[] a number of *potentially* time-consuming steps," for a plan that "*may be* . . . complex and time-intensive." Delay Rule, 84 Fed. Reg. at 44,551 (emphases added). But that preamble does not even mention that EPA has already proposed a federal plan based on a straightforward application of the Emission Guidelines that EPA concedes does not require "the exercise of any policy discretion." *Id.* at 44,555.

In determining whether EPA met its burden to demonstrate that continued enforcement of this Court's final judgment would be inequitable, this Court must "take all the circumstances into account," *Bellevue Manor*, 165 F.3d at 1256; the Court may not blind itself to the facts, as EPA urges it to do. Given the circumstances here, and in light of the deferential standard applied on review, should EPA appeal this Court's denial of EPA's Rule 60(b) motion, the agency is very likely to fail on the merits.

### 3. EPA's Arguments Do Not Call Into Question the Validity of This Court's Order.

In addition to rehashing arguments that this Court already addressed in its Order, EPA cites *Toussaint v. McCarthy*, 801 F.2d 1080, 1090 (9th Cir. 1986), for the proposition that "[w]hen a change in the law authorizes what had previously been forbidden, it is an abuse of discretion for a court to refuse to modify an injunction founded on superseded law." Mot. at 6. This echoes the argument—already rejected by this Court, Rule 60(b) Order at 4, and which EPA abandoned at

7

the hearing, Tr. at 3:1-11—that the Court lacks jurisdiction to enforce its final judgment in light of the Delay Rule. *See also id.* at 8 ("[T]his Court *must* give effect to those new regulations." (emphasis added)). As set forth in earlier briefing on this issue, a change of law—even statutory law—does not "in and of itself[] provide a basis for modifying a decree . . . ." *Rufo*, 502 U.S. at 390; *Taylor v. United States*, 181 F.3d 1017, 1026 (9th Cir. 1999) (*en banc*). The plain language of Rule 60(b)—declaring that a court "*may*" grant relief—makes this clear. Fed. R. Civ. P. 60(b) (emphasis added). Indeed, relief from a judgment is never automatic—there may be Congressional changes that do not warrant relief,[5] just as there may be regulatory ones that do.

While a Congressional change would have presented a different set of factual circumstances, under Rule 60(b)'s discretionary inquiry, it would not have *required* modification of the final judgment without regard to any other factors. In one of the principal cases upon which EPA relies, *American Horse Protection Association v. Watt*, the D.C. Circuit did not stop its inquiry at the change of law. 694 F.2d 1310 (D.C. Cir. 1982). To the contrary, that court discussed in great detail, with citations to the legislative history, the factual changes that undergirded Congress's decision to amend the law, the goals of the new law, and the balance Congress had struck. *Id.* at 1316–19. Only "in light of the congressional purposes" was it inequitable to require the agency to abide by the final judgment. *Id.* at 1318. By contrast, rather than explain why its regulatory change is in the public interest, or why enforcement of this Court's final judgment would work inequity, EPA points *only* to a bare change in law. That is insufficient, regardless of whether the law is statutory or, as here, regulatory. *See Rufo*, 502 U.S. at 390; *Taylor*, 181 F.3d at 1026.

*Toussaint* does nothing to aid EPA's case. The change in law at issue in *Toussaint* was the Supreme Court's finding that, in another case with analogous facts, inmates did *not* have a liberty

---

[5] *See Taylor*, 181 F.3d at 1024, 1026 (finding that while "a court may decide in its discretion to reopen and set aside a consent decree under Fed. R. Civ. P. 60(b)," even Congress cannot retroactively command a federal court to reopen a final judgment). The political branches may not, consistent with the separation of powers, require a district court to grant relief from a final judgment under legal standards not in existence when the judgment issued and became final. *Cf. Chicago & S. Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103, 113–14 (1948) ("It has also been the firm and unvarying practice of Constitutional Courts to render no judgments . . . subject to later review or alteration by administrative action.").

1    interest in remaining in the general population, whereas in *Toussaint*, the lower court had found

2    that they did (such that due process was required to administratively segregate an inmate from the

3    general population). 801 F.2d at 1092 ("Therefore, the . . . court's holding that the due process

4    clause creates a liberty interest in remaining in the general population is no longer correct."). In

5    short, the legal premise underpinning the lower court's decision—which did not correct a discrete

6    past violation, but applied to the prison's ongoing treatment of inmates—was deemed erroneous

7    by the Supreme Court. Here, in contrast, this Court's ruling is still correct. EPA failed to timely

8    perform a nondiscretionary duty, and its violation was consummated the day it missed the

9    deadlines. Thus, it is not the case that this Court erroneously deemed something "forbidden"

10   (here, a failure to timely issue a federal plan, among other things) that was actually "authorized"

11   all along. Moreover, unlike in *Toussaint,* the Court's decision not to vacate its final judgment here

12   does not put the Court in the position of ongoing supervision of the agency—a far greater

13   imposition of judicial authority. Rather, it requires one discrete act to remedy one past violation.[6]

14         EPA further asserts that because this Court concluded that EPA's regulations are

15   enforceable under the citizen-suit provision of the Clean Air Act, the Court must treat EPA's

16   regulatory change as it would a Congressional change. Mot. at 7. But the latter simply does not

17   flow from the former. Even putting to the side EPA's flawed assumption that a Congressional

18   change would always necessitate relief, *see supra* pp. 8–9, EPA's assertion does not make sense.

19   EPA provides no explanation for why the statutory interpretation question—whether Congress

20   considered a mandatory regulatory duty to be "any act or duty under this chapter," and thus

21   within the ambit of the citizen-suit provision, *see* 42 U.S.C. § 7604(a)(2)—has anything to do

---

22   [6] The other out-of-circuit cases on which EPA relies, all of which, like *American Horse* and
     *Toussaint*, preceded *Rufo*, are likewise distinguishable. *All* of them regarded injunctions of
23   ongoing actions indefinitely, such as the procedures for removal hearings going forward in
     *McGrath v. Potash*, 199 F.2d 166, 167–68 (D.C. Cir. 1952), or the deadlines for processing
24   welfare applications going forward in *Class v. Norton*, 507 F.2d 1058, 1059–60 (2d Cir. 1974).
     Here, what is at issue is a single long-consummated violation and an injunction that requires
25   one discrete act—*not* ongoing supervision of the agency. Contrary to the rule EPA seeks to
     draw from these cases, Ninth Circuit precedent makes clear that there need not be a continuing
26   violation for a final judgment to remain in effect because there is a "strong federal interest in
     ensuring that the judgments of federal courts are meaningful and enforceable." *Kempthorne*,
27   365 F.3d at 853; *see Frew v. Hawkins*, 540 U.S. 431, 438 (2004) (a court's final judgment "is a
     federal court order that springs from a federal dispute and furthers the objectives of federal
28   law").

9

1   with Rule 60(b)'s equitable standard for discretionary relief. The two questions are entirely

2   distinct. EPA does not automatically meet its burden of showing inequity by pointing to a bare

3   regulatory change simply because its regulatory duties are enforceable by citizens.

4          Finally, EPA once again relies heavily upon the D.C. Circuit's decision in *NAACP,*

5   *Jefferson County Branch v. Donovan*, 737 F.2d 67 (D.C. Cir. 1984) to support its argument that

6   the Court "must" give effect to EPA's Delay Rule. Mot. at 8. The Court correctly distinguished

7   that case. Rule 60(b) Order at 5. EPA's efforts to rehabilitate *NAACP* here are unavailing.

8   *NAACP* is not even a Rule 60(b) case; defendant Department of Labor was not seeking to amend

9   the court's final judgment. Rather, having prevailed on summary judgment in the earlier

10  proceeding, plaintiff NAACP brought another suit against the Department challenging the

11  validity of new regulations (which the agency had amended to address "defects" identified in an

12  earlier suit). The district court issued an interlocutory order enjoining implementation of those

13  new regulations. On review, the D.C. Circuit found that, in enjoining implementation of the

14  regulations (essentially issuing a stay pending review of the regulations), the district court failed

15  to apply the correct four-factor test and instead appeared to be guided by a desire to compel the

16  Department to comply with its earlier judgment.

17          Unlike in *NAACP*, the Court here did not enjoin EPA's Delay Rule. Rather, within its wide

18  discretion, this Court concluded that EPA did not meet its burden of demonstrating that it would

19  be inequitable for this Court to enforce a final judgment predating the Delay Rule. Further, EPA

20  took unilateral action following judgment not "to correct a prior rule which a court has found

21  defective," but to change a long-past deadline that the agency *conceded* it had violated. Rule

22  60(b) Order at 5 (quoting *NAACP*, 737 F.2d at 72). In *NAACP*, in contrast, the agency was not

23  asking the Court to overlook its final and long-consummated procedural violation; the agency was

24  changing the substantive law going forward.

25          In sum, EPA is highly unlikely to succeed on appeal. This Court's discretionary decision

26  applied the correct legal standard in looking at "all the circumstances of the case" to determine

27  whether EPA had met its burden to demonstrate inequity. And it correctly concluded that there is

28  no inequity in retaining the final judgment. Rule 60(b) Order at 4–6. All of the "unique conditions

10

of th[is] case," *Bellevue Manor*, 165 F.3d at 1256—including that EPA is poised to issue a federal plan to alleviate real harms to plaintiffs and points to nothing beyond a bare regulatory change it effected to excuse its long-past violation—demonstrate that it would be inequitable to grant relief. And EPA has raised no new arguments in its motion to stay that render this Court's discretionary decision to deny the agency's Rule 60(b) motion "illogical," "implausible," or "without support in inferences that may be drawn from the facts in the record." *Aguilar*, 782 F.3d at 1105.

## B.     EPA Will Not Be Irreparably Harmed.

EPA will not suffer harm, let alone "irreparable harm," if it is not granted a stay. All that EPA will be required to do is to publish the federal plan. In its motion, EPA nowhere claims that it would suffer harm from the expenditure of resources to comply with the Court's Order, presumably because it is true that only "limited work" remains. Rule 60(b) Order at 6.

Instead, EPA manufactures "irreparable harm" by trying to turn the separation of powers concern in its favor, claiming that there is "inherent harm in preventing it from enforcing regulations that Congress found it in the public interest to direct that agency to develop and enforce." Mot. at 9, 10 ("Refusing to give [the Delay Rule] effect is inconsistent with the Constitutional separation of powers and inherently imposes harm on the agency and the public."). EPA's argument on this point is brazen and disregards that there are *two* regulations at issue here: the Emission Guidelines promulgated by the agency pursuant to Congress's statutory mandate to reduce the emission of pollutants that endanger human health and welfare, and the Delay Rule, which seeks to delay enforcement of those substantive regulations. Through serial (and successful, if unlawful) attempts at delay, EPA has refused to enforce the substantive Emission Guidelines, despite the fact that the Guidelines are what "Congress found . . . in the public interest to direct the agency to develop and enforce." *See* Mot. at 9. It is ironic that EPA now complains it is being "prevented" from enforcing its regulations, when what is at the heart of this litigation is its steadfast and unlawful *refusal to enforce* them.

EPA's argument rings hollow for several other reasons. First, as this Court correctly concluded, retaining the final judgment "poses no obstacle to EPA's [Delay] Rule." Rule 60(b) Order at 6. Nor does it "prevent states from submitting, and EPA from reviewing, new state

11

1    plans" under its new regulations. *Id.* Notably, compliance with this Court's deadline offends no

2    provision of the Delay Rule, as nothing prohibits EPA from promulgating a federal plan in

3    advance of a regulatory deadline. Moreover, for state plans submitted after this Court's judgment,

4    EPA would be free to apply its new timing requirements to its decision whether to approve or

5    disapprove those plans. *See* Delay Rule, 84 Fed. Reg. at 44,549.

6        Second, while Congress did charge EPA with promulgating regulations regarding

7    enforcement of its emissions guidelines, there is no evidence that Congress intended the agency to

8    use this authority to extend a deadline that lapsed years ago, particularly given Congress's

9    foremost charge in the Clean Air Act "to promote the public health and welfare." 42 U.S.C.

10   § 7401(b)(1). This last point also distinguishes the Delay Rule from the ACE Rule, which amends

11   the timing requirements for future emissions guidelines. It is a very different thing for an agency

12   to change its rules going forward than to attempt to retroactively change a long-passed deadline.

13   EPA concedes that it could not accomplish its delay through ACE alone. Rather, it needed a

14   separate rule aimed solely at the timing of the landfill Emissions Guidelines, the precise issue that

15   was at stake in this case. Mot. at 8. It is also noteworthy that it has been two-and-one-half years

16   since the original deadline for state plan submissions; EPA has now had *more* than the two years

17   it would have under the Delay Rule to develop a federal plan.

18       EPA continues its attempt to develop a separation-of-powers argument by contending that

19   retaining the Court's final judgment "essentially nullifies EPA's valid regulatory actions." *Id.* at

20   10. Even accepting that proposition as true, *but see supra* pp. 8–9, it does not answer the

21   separation-of-powers question. That is because EPA's Delay Rule seeks essentially to nullify this

22   Court's final judgment. Neither separation-of-powers concerns nor Rule 60(b) dictate whether the

23   court's final judgment or the agency's post-judgment regulation should govern. Rather, Rule

24   60(b) places that question squarely within the discretion of the district judge, directing that the

25   district judge "*may*" relieve a party from final judgment where "applying it prospectively is no

26   longer equitable." Fed. R. Civ. P. 60(b). As this Court correctly concluded, retaining its final

27   judgment remains equitable.

28

12

1    Likewise, EPA's cooperative federalism argument falls flat. Though EPA touts the "shared

2    federal and state responsibility in CAA section 111," Mot. at 10, the agency omits several key

3    facts. First, the Delay Rule was published on August 26, 2019, with an effective date of

4    September 6, 2019, and set a new state plan-submission deadline of August 29, 2019. An agency

5    that was serious about the states' role in the process would not have given states three days'

6    notice of the new submission date. Second, despite the fact that EPA's new state plan submission

7    deadline granted states three days to submit plans, EPA represented at oral argument that "there

8    was *one* plan submitted on the [new] deadline." Tr. 9:23-24 (emphasis added). Accordingly, with

9    the exception of the state that submitted that plan,[7] all of the states subject to the federal plan are

10   similarly situated under either the new or old timing regulations—they have missed the deadline

11   to submit plans and must now be governed by a federal plan. The question, therefore, is not

12   *whether* states will be subject to a state or federal plan, but *when* they will be subject to a federal

13   plan. And under either this Court's judgment or the Delay Rule, states may continue to submit

14   plans and EPA may continue to review and approve or disapprove them. *Federal Plan*

15   *Requirements for Municipal Solid Waste Landfills That Commenced Construction On or Before*

16   *July 17, 2014, and Have Not Been Modified or Reconstructed Since July 17, 2014*, 84 Fed. Reg.

17   43,745, 43,754 (Aug. 22, 2019) (proposed federal plan encouraging states to continue submitting

18   plans after federal plan is promulgated). But the time *after* the state plan submission deadline is

19   not a grace period for late state plans—it is time for EPA to promulgate a federal plan, which it

20   has all but finished here. Third, the only States in this litigation are participating as Plaintiffs.

21   EPA's alleged cooperative federalism harm is simply not present in this case.

---

22   [7] Although EPA has declined to apprise the Court of the status of state plan submissions, it
     appears that the one state referenced at oral argument is Virginia. EPA has already published a
23   proposed rule to approve Virginia's plan and the comment period closed on that proposal on
     November 29, 2019, *see Approval and Promulgation of State Plans for Designated Facilities*
24   *and Pollutants: Virginia; Emission Standards for Existing Municipal Solid Waste Landfills*, 84
     Fed. Reg. 57,839 (Oct. 29, 2019), Dkt. EPA-R03-OAR-2019-0537, with only two brief
25   supportive comments being filed, *see* Comment, Dkt. No. EPA-R03-OAR-2019-0537-0004;
     Comment, Dkt. No. EPA-R03-OAR-2019-0537-0005. Thus, EPA appears to be poised to
26   finalize its approval of Virginia's plan in short order. Even if it were not, EPA did not seek
     relief from this Court's judgment only with respect to Virginia, *see Rufo*, 502 U.S. at 393 (Rule
27   60(b) relief must be "suitably tailored to the changed circumstances"), and any relief in the form
     of a stay would have to be tailored to the injury, *Nat. Res. Def. Council v. Winter*, 508 F.3d 885,
28   886 (9th Cir. 2007) ("Injunctive relief must be tailored to remedy the specific harm alleged[.]").

13

Finally, EPA briefly argues that it might be irreparably harmed if its appeal is deemed moot after it promulgates a federal plan. But whether or not the case would be moot, EPA still cannot demonstrate irreparable harm sufficient to warrant a stay. EPA has not provided any actual evidence of harm—it does not dispute that the Emission Guidelines were developed pursuant to its duties under the Clean Air Act and remain in the public interest, or that it is poised to promulgate a federal plan.

At bottom, EPA is not irreparably harmed by not receiving discretionary relief from a final court judgment remedying a long consummated violation. The agency's inherent authority, cooperative federalism, and mootness arguments all crumble upon examination in light of the actual facts of this case.

## C.     A Stay Will Substantially Injure the Public.

There is abundant evidence, and this Court has already found, that further delay in implementing the Emission Guidelines will substantially injure Plaintiffs in this matter as well as the public generally. The Emission Guidelines were promulgated to "improve air quality and reduce the potential for public health and welfare effects associated with exposure to landfill gas emissions." 81 Fed. Reg. at 59,276. It is undisputed that they are estimated to reduce 1,810 megagrams of ozone-forming volatile organic compounds and toxic air pollutants, and 285,000 metric tons of the powerful greenhouse gas methane each year. *Id.* at 59,280. Accordingly, EPA's own evidence and regulations demonstrate the harm faced by Plaintiffs and the public at large. EPA now seeks to discount these harms in litigation, Mot. at 12, but it cannot dispute its own evidence and conclusions without any new facts or analysis.

In declarations submitted to this Court, Plaintiffs have explained how these emissions harm Plaintiffs as well as the public at large. *See* Decls. of Dr. Rupa Basu, ECF No. 87-14; Philip Mote, ECF No. 87-15; Glenn Patterson, ECF No 87-16; George S. Aburn, Jr., ECF No. 87-17; Trisha Sheehan, ECF No. 87-19; and Denise Fort, ECF No. 87-20. And this Court concluded, in a decision not appealed by EPA, that Plaintiffs had established injury from EPA's failure to implement the Emissions Guidelines. *See* Summary Judgment Order at 2, 8 (detailing the harms caused by EPA's failure to implement the Emission Guidelines); *see also* Rule 60(b) Order at 4 n.

14

4, 6 ("Plaintiffs established harm stemming from the EPA's failure to promulgate a federal plan by November 30, 2017."); Order Denying Defendants' Motion to Dismiss and Motion to Stay Case at 11, ECF No. 82 (similar). This factor tips decidedly in favor of denying a stay pending appeal.

### D.   The Public Interest Weighs In Favor Of Denying A Stay.

As set forth above, the public interest in avoiding serious climate damage and significant health harms—as well as the "strong public interest in the timeliness and finality of judgments," *Phelps v. Alameida*, 569 F.3d 1120, 1135 (9th Cir. 2009) (internal quotation marks and alterations omitted)—weigh in favor of denying a stay. EPA contends that the public interest necessarily lies in avoiding any irreparable harm to the agency itself. Mot. for Stay at 12 ("[T]he irreparable harm to EPA described above must also be considered to be contrary to the public interest."). But the authorities on which EPA relies do not support that sweeping proposition, which is particularly inapt in this case.

The Supreme Court has previously "merge[d]" its consideration of the third and fourth stay factors—the hardship to the opposing party and the public interest—"when the Government is the opposing party." *Nken*, 556 U.S. at 435 (2009). But here, EPA is the *moving* party. And, though a court's consideration of irreparable harm to federal interests "*may*, in practical terms, merge with consideration of the public interest," *Sierra Club v. Trump*, 929 F.3d 670, 705 (9th Cir. 2019) (emphasis added), "[p]ublic interest is a concept to be considered broadly," *id.*, and parochial interests of the government *qua* government are not a stand-in for all "the interests of the public at large," *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) (citation omitted). *See also League of Wilderness Defenders/Blue Mtns. Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014) (observing that "[t]he public interest inquiry [in the context of a motion for a preliminary injunction] primarily addresses impact on non-parties rather than parties" (citation omitted)). Indeed, in the principal case on which EPA relies for its theory of merger, the Ninth Circuit considered "the respective impacts" of a stay on not only the government itself but also "the general public." *Sierra Club*, 929 F.3d at 705 (emphasis added). The court then denied the motion for a stay solely because "[t]he public interest and the balance

15

of hardships" weighed against a stay, without regard to whether the government was irreparably harmed. *Id.* at 707; *see also Innovation Law Lab v. McAleenan*, 924 F.3d 503, 510 (9th Cir. 2019) (considering the public interest and irreparable harm to the government separately before awarding stay pending appeal). Moreover, there is no good reason to equate the public interest with EPA's interest as a stay movant in this case, given that numerous governmental parties are lined up in *opposition* to a stay. *Cf. Fed. Trade Comm'n v. Qualcomm Inc.*, 935 F.3d 752, 756 (9th Cir. 2019) (separately considering the public interest and hardship to the opposing governmental party where "the government itself is divided about the propriety of the judgment and its impact on the public interest").

EPA's conduct has demonstrably *not* been in the public interest. *See League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("There is generally no public interest in the perpetuation of unlawful agency action. . . . To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." (internal citations and quotations omitted)). EPA does not and cannot argue that violating the regulatory deadlines was in the public interest; its conduct was *contrary* to the public interest, for all the reasons this Court has recognized throughout this litigation. It is not in the public interest to permit EPA to perpetually refuse to implement valid public health regulations. Finally, even if the merger doctrine were to apply here to relieve EPA of the burden of articulating how a stay is in the public interest (something it has not done), it does not relieve EPA of the burden to establish irreparable injury, and for reasons discussed above, EPA cannot make such a showing here. It follows that EPA has satisfied neither the harm nor public interest elements of the stay inquiry.

The Emission Guidelines were promulgated pursuant to EPA's authority and obligation under the Clean Air Act to control emissions of dangerous pollutants from existing municipal solid waste landfills. EPA has not disputed that pollution emissions from landfills endanger the public health and welfare. It has not disputed that it had the authority to promulgate the Guidelines. And it has not disputed that implementing those Guidelines remains in the public interest. Nor has it argued that there is any public-interest benefit in delaying their

16

1   implementation. And EPA has not disputed that it is poised to finalize the federal plan to

2   implement the Guidelines. Allowing landfills to emit additional dangerous emissions of climate-

3   destabilizing and health-harming pollutants when EPA has all but finalized a plan that will reduce

4   those pollutants does not benefit anyone. As this Court has already concluded, Plaintiffs are

5   injured by EPA's continued delay. *See supra* pp. 15–16. For the same reasons, the public at large

6   is injured, too: The agency itself has determined that the excess emissions of methane, volatile

7   organic compounds, and toxic air pollution that EPA is poised to control present real harms to

8   public health and welfare. The public interest factor tips decisively in favor of denying a stay in

9   this case.

10  **IV.   CONCLUSION**

11          Should EPA appeal this Court's Order denying relief under Rule 60(b), at issue will be

12  whether this Court abused its discretion in finding as a matter of equity that its concededly valid

13  judgment may be prospectively enforced. For all the reasons set forth herein, EPA will fail on the

14  merits, and—as in other contexts in this litigation—the equities here tilt sharply in favor of

15  rejecting EPA's bid to further delay implementation of regulations the agency itself promulgated

16  to protect public health and welfare. A stay is not warranted and this Court should deny EPA's

17  motion.

18

19

20

21

22

23

24

25

26

27

28

1    Dated: December 5, 2019                    Respectfully submitted,

2                                               XAVIER BECERRA
                                                Attorney General of California
3                                               GARY E. TAVETIAN
                                                DAVID A. ZONANA
4    SUSANNAH L. WEAVER                         Supervising Deputy Attorneys General
     Donahue, Goldberg & Weaver, LLP            TIMOTHY E. SULLIVAN
5    1008 Pennsylvania Avenue SE                JULIA K. FORGIE
     Washington, DC 20003                       Deputy Attorneys General
6    Telephone: (202) 569-3818
     Email: susannah@donahuegoldberg.com         /s/ Elizabeth B. Rumsey
7                                               ELIZABETH B. RUMSEY
     PETER ZALZAL                               Deputy Attorney General
8    RACHEL FULLMER                             *Attorneys for the State of California, by and
     Environmental Defense Fund                 through Attorney General Xavier Becerra and
9    2060 Broadway, Suite 300                   the California Air Resources Board*
     Boulder, CO 80302
10   (303) 447-7214
     pzalzal@edf.org
11   rfullmer@edf.org
     *Attorneys for Environmental Defense Fund*
12

13   For the STATE OF ILLINOIS               For the STATE OF MARYLAND
     KWAME RAOUL                             BRIAN E. FROSH
14   Attorney General of Illinois           Attorney General of Maryland
     DANIEL I. ROTTENBERG*                   LEAH J. TULIN*
15   Assistant Attorney General            Assistant Attorney General
     Environmental Bureau                  200 St. Paul Place
16   Illinois Attorney General's Office    Baltimore, Maryland 21202
     69 W. Washington St., 18th Floor       (410) 576-6962
17   Chicago, Illinois 60602               ltulin@oag.state.md.us
     (312) 814-3816
18   DRottenberg@atg.state.il.us

19
     For the STATE OF NEW MEXICO            For the STATE OF OREGON
20   HECTOR BALDERAS                         ELLEN F. ROSENBLUM
     Attorney General of New Mexico        Attorney General of Oregon
21   BILL GRANTHAM*                          PAUL GARRAHAN*
     Assistant Attorney General            Attorney-in-Charge
22   201 Third Street NW, Suite 300        Natural Resources Section
     Albuquerque, New Mexico 87102         Oregon Department of Justice
23   (505) 717-3520                        1162 Court Street, N.E.
     wgrantham@nmag.gov                    Salem, Oregon 97301-4096
24                                          (503) 947-4342
                                            paul.garrahan@doj.state.or.us
25

26

27

28
                                        18

1    For the COMMONWEALTH OF PENNSYLVANIA      For the STATE OF RHODE ISLAND
     JOSH SHAPIRO                              PETER NERONHA
2    Attorney General of Pennsylvania          Attorney General of Rhode Island
     MICHAEL J. FISCHER*                       GREGORY S. SCHULTZ
3    Chief Deputy Attorney General             Special Assistant Attorney General
     ROBERT A. REILEY                          RI Office of Attorney General
4    Assistant Director, Pennsylvania Department 150 South Main Street
     of Environmental Protection               Providence, RI 02903
5    Pennsylvania Office of Attorney General    (401) 274-4400
     Strawberry Square                         gschultz@riag.ri.gov
6    Harrisburg, PA 17120
     (215) 560-2171
7    mfischer@attorneygeneral.gov

8
     For the STATE OF VERMONT
9    THOMAS J. DONOVAN, JR.
     Attorney General of Vermont
10   NICHOLAS F. PERSAMPIERI*
     Assistant Attorney General
11   Office of the Vermont Attorney General
     109 State Street
12   Montpelier, Vermont 05609
     (802) 828-3171
13   nick.persampieri@vermont.gov

14

15   *Admitted to practice *pro hac vice*.

16

17

18

19

20

21

22

23

24

25

26

27

28